**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
---------------------------------------------------------   x
In re:                                                      :   Chapter 11
                                                            :
CHAPARRAL ENERGY, INC., et al.,                             :   Case No. 16-_____ (_____)
                                                            :
                         Debtors.¹                          :   Joint Administration Pending
                                                            :
---------------------------------------------------------   x
```

**MOTION OF DEBTORS FOR ORDER UNDER 11 U.S.C. §§ 105(a), 345, 363, AND 364, FED. R.
BANKR. P. 6003, AND DEL. BANKR. L.R. 2015-2 (I) AUTHORIZING CONTINUED USE OF
EXISTING CASH MANAGEMENT SYSTEM, INCLUDING MAINTENANCE OF EXISTING
BANK ACCOUNTS, CHECKS, AND BUSINESS FORMS, (II) AUTHORIZING
CONTINUATION OF EXISTING DEPOSIT PRACTICES, (III) AUTHORIZING
CONTINUATION OF INTERCOMPANY TRANSACTIONS, AND (IV) GRANTING
SUPERPRIORITY STATUS TO POSTPETITION INTERCOMPANY CLAIMS**

The debtors and debtors in possession in the above-captioned cases (together, the

**"Debtors"**) hereby move (the **"Motion"**) for entry of interim and final orders substantially in the forms

attached hereto as <u>Exhibit A</u> and <u>Exhibit B</u> (respectively, the **"Interim Order"** and the **"Final Order"**),

under Sections 105(a), 345, 363, and 364 of title 11 of the United States Code (the **"Bankruptcy Code"**),

Rule 6003 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**), and Rule 2015-2 of

the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the **"Local Rules"**), (i) authorizing, but not directing, the Debtors to continue to

maintain and use their existing cash management system, including maintenance of existing bank

accounts, checks, and business forms; (ii) granting the Debtors a waiver of certain bank account and

related requirements of the Office of the United States Trustee for the District of Delaware (the **"U.S.**

**Trustee"**) to the extent that such requirements are inconsistent with the Debtors' practices under their

existing cash management system or other actions described herein; (iii) authorizing, but not directing, the

---

¹       The Debtors in these cases, along with the last four digits (or five digits, in cases in which multiple Debtors
have the same last four digits) of each Debtor's federal tax identification number, are: CEI Acquisition, L.L.C.
(1817); CEI Pipeline, L.L.C. (6877); Chaparral Biofuels, L.L.C. (1066); Chaparral $CO_2$, L.L.C. (1656); Chaparral
Energy, Inc. (90941); Chaparral Energy, L.L.C. (20941); Chaparral Exploration, L.L.C. (1968); Chaparral Real
Estate, L.L.C. (1655); Chaparral Resources, L.L.C. (1710); Green Country Supply, Inc. (2723); and Roadrunner
Drilling, L.L.C. (2399).  The Debtors' address is 701 Cedar Lake Blvd., Oklahoma City, OK 73114.

Debtors to continue to maintain and use their existing deposit practices notwithstanding the provisions of Bankruptcy Code Section 345(b); (iv) authorizing, but not directing, the Debtors to continue certain ordinary course intercompany transactions; (v) authorizing Debtors to open and close bank accounts; and (vi) according superpriority status to postpetition intercompany claims arising from certain of such transactions.  In support of the Motion, the Debtors rely upon the *Declaration of Mark A. Fischer, Chief Executive Officer of Chaparral Energy, Inc., in Support of Chapter 11 Petitions and First Day Pleadings*, filed with the Court concurrently herewith (the **"Fischer Declaration"**).  In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

**JURISDICTION**

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. **§§** 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding under 28 U.S.C. **§** 157(b).  Venue of these cases and this Motion in this district is proper under 28 U.S.C. **§§** 1408 and 1409.  The statutory predicates for the relief requested herein are Bankruptcy Code Sections 105(a), 345, 363, and 364, Bankruptcy Rule 6003, and Local Rule 2015-2.

**BACKGROUND**

2.      On May 9, 2016 (the **"Petition Date"**), the Debtors filed voluntary petitions in this Court commencing cases for relief under chapter 11 of the Bankruptcy Code (the **"Chapter 11 Cases"**).  The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the Fischer Declaration and fully incorporated herein by reference.

3.      The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code Sections 1107 and 1108.  No trustee or examiner has been requested in the Chapter 11 Cases and no committees have yet been appointed.

2

**RELIEF REQUESTED**

4.      By this Motion, the Debtors seek entry of Interim and Final Orders, substantially in the forms of Exhibit A and Exhibit B attached hereto, (i) authorizing, but not directing, the Debtors to continue to maintain and use their existing cash management system, including maintenance of existing bank accounts, checks, and business forms; (ii) granting the Debtors a waiver of certain bank account and related requirements of the U.S. Trustee to the extent that such requirements are inconsistent with the Debtors' practices under their existing cash management system or other actions described herein; (iii) authorizing, but not directing, the Debtors to continue to maintain and use their existing deposit practices notwithstanding the provisions of Bankruptcy Code Section 345(b); (iv) authorizing, but not directing, the Debtors to continue certain ordinary course intercompany transactions; and (v) according superpriority status to postpetition intercompany claims arising from certain of such transactions.  The Debtors also request that the Court authorize and direct all banks with which the Debtors maintain accounts to continue to maintain, service, and administer such accounts and authorize third-party payroll and benefits administrators and providers to prepare and issue checks on behalf of the Debtors.

**BASIS FOR RELIEF**

**A.      The Debtors' Cash Management System and the Bank Accounts.**

5.      In the ordinary course of their businesses, the Debtors maintain a complex cash management system (the "**Cash Management System**") that is integral to the operation and administration of their businesses.  The Cash Management System allows the Debtors to (i) monitor and control all of the Debtors' cash receipts and disbursements, (ii) identify the cash requirements of the Debtors, (iii) transfer cash as needed to respond to the cash requirements of the Debtors, and (iv) track intercompany cash transfers.

6.      The Cash Management System is managed by the Debtors at their headquarters in Oklahoma City, Oklahoma, where they oversee the administration of the various bank accounts to effect the collection, disbursement, and movement of cash.  The Debtors' supervision of the Cash

Management System enables the Debtors to, among other things, (i) accurately forecast and report their cash flow requirements and (ii) monitor the collection and disbursement of funds to and from the Debtor Bank Accounts (as defined below).

7.      The Cash Management System is organized in a way that respects the separate cash funding and operating needs of the Debtors.  A diagram depicting the Cash Management System is annexed hereto as <u>Attachment 1</u>.[2]  As of the Petition Date, the Debtors maintain 19 bank accounts (the "**Debtor Bank Accounts**").  Of the Debtor Bank Accounts, 16 are held in the name of Chaparral Energy, L.L.C. ("**Chaparral Energy**"), two are held in the name of Chaparral Real Estate, L.L.C. ("**Chaparral Real Estate**"), and one is held in the name of CEI Pipeline, L.L.C. ("**CEI Pipeline**").  A detailed schedule of the Debtor Bank Accounts is annexed hereto as <u>Attachment 2</u>,[3]  a summary of which is included in the chart below:

| Account Name[4] | Debtor Account Holder | Financial Institution | Account Number(s) |
|---|---|---|---|
| CEI Pipeline Main Operating Account | CEI Pipeline L.L.C. | JPMorgan Chase Bank, N.A. | 747496750 |
| Comerica Lock Box | Chaparral Energy, L.L.C. | Comerica Bank | 1881296030 |
| Deposit Account | Chaparral Energy, L.L.C. | Arvest Bank | 85847615 |
| Escrow Account | Chaparral Energy, L.L.C. | JPMorgan Chase Bank, N.A. | 17035462 |
| Escrow Account | Chaparral Energy, L.L.C. | JPMorgan Chase Bank, N.A. | 1564315727 |
| Escrow Account | Chaparral Energy, L.L.C. | JPMorgan Chase Bank, N.A. | 17044909 |
| Escrow Account | Chaparral Energy, L.L.C. | JPMorgan Chase Bank, N.A. | 1564316147 |
| Escrow Account | Chaparral Energy, L.L.C. | JPMorgan Chase Bank, N.A. | 1564315735 |

---

[2]     The Debtors also maintain a petty cash box at their headquarters in Oklahoma City, Oklahoma in which they hold approximately $1,000 primarily for the purpose of operating their on-site cafeteria.

[3]     The Debtors believe, and have undertaken reasonable efforts to ensure, that <u>Attachment 2</u> lists all of the bank accounts that comprise the Debtors' Cash Management System.  In the event that any bank account has been inadvertently omitted from <u>Attachment 2</u>, the Debtors request that the relief sought by this Motion be deemed to apply to such account.

[4]     Capitalized terms used in this column shall refer to the account referred to in the corresponding row.  The term "**Escrow Accounts**" shall refer to all Escrow Accounts.

| Account Name[4] | Debtor Account Holder | Financial Institution | Account Number(s) |
|---|---|---|---|
| Main Operating Account | Chaparral Energy, L.L.C. | JPMorgan Chase Bank, N.A. | 10200107 |
| Operating Disbursement Account | Chaparral Energy, L.L.C. | JPMorgan Chase Bank, N.A. | 789502929 |
| Payroll Account | Chaparral Energy, L.L.C. | JPMorgan Chase Bank, N.A. | 10215538 |
| Plugging Escrow Account[5] | Chaparral Energy, L.L.C. | American Bank and Trust Company, N.A. | 20417057 |
| Real Estate Account | Chaparral Real Estate L.L.C. | Arvest Bank | 48438993 |
| Real Estate Sweep Account | Chaparral Real Estate L.L.C. | Arvest Bank | 9990001657 |
| Repo Sweep Account | Chaparral Energy, L.L.C. | Arvest Bank | 60085847628 |
| Revenue Account | Chaparral Energy, L.L.C. | JPMorgan Chase Bank, N.A. | 10200115 |
| Revenue Disbursement Account | Chaparral Energy, L.L.C. | JPMorgan Chase Bank, N.A. | 789502903 |
| Treasury Bill Account | Chaparral Energy, L.L.C. | Arvest Asset Management | 80988947 |
| U.S. Bank Lock Box | Chaparral Energy, L.L.C. | U.S. Bank National Association | 103690278694 |

8.    <u>Cash Collection and Distribution Process</u>.  As described in the Fischer Declaration, the Debtors are involved in the acquisition, exploration, development, production and operation of oil and natural gas properties primarily in Oklahoma and Texas.  The Debtors generate their cash deposits primarily through (i) their operations on oil and natural gas properties and (ii) through their rights under joint operating agreements, pooling agreements, unitization agreements, or similar agreements (collectively, **"Joint Operating Agreements"**).[6]  Typically, the Debtors' Joint Operating Agreements will designate one party as the operator (an **"Operator"**), who conducts the day-to-day

---

[5]        The Plugging Escrow Account is an escrow account holding a small amount of funds, which cannot be distributed to the Debtors' other accounts until certain plugging and abandonment actions have been taken by the Debtors.  The Debtors do not anticipate that any amounts will be distributed to or from the Plugging Escrow Account during these Chapter 11 Cases.

[6]        A more fulsome description of the Debtors' operations, revenues, and disbursements can be found in the Fischer Declaration and the *Motion of Debtors for Order Under 11 U.S.C. §§ 105(A), 363(B), 506(B), 1107(A), and 1108 and Fed. R. Bankr. P. 6003 Authorizing Payment of Certain (I) Operating Expenditures, (II) Joint Interest Billings, (III) Warehousemen Claims, And (IV) 503(B)(9) Claims* filed contemporaneously herewith and fully incorporated herein by reference.

business of producing oil and gas at the site and initially covers the expenses incurred (the "**Operating Expenditures**") on behalf of itself and the other parties to a particular Joint Operating Agreement (the "**Non-Operators**" and each a "**Non-Operator**").

9.    The Debtors receive payments on account of their operations on oil and natural gas properties into either the U.S. Bank Lock Box, if the payment is by check, or the Revenue Account, if the payment is received by an electronic transfer.  If the balance in the U.S. Bank Lock Box exceeds a certain minimum balance, the amount exceeding that minimum balance will be swept into the Revenue Account each week.

10.    The Debtors also receive revenues on account of the Debtors' *pro rata* share of revenues under Joint Operating Agreements in which the Debtors are Non-Operators into either the Comerica Lock Box, if the payment is by check, or the Main Operating Account, if the payment is by electronic transfer.  If the balance in the Comerica Lock Box exceeds a certain minimum balance, the amount exceeding that minimum balance will be swept into the Main Operating Account each week.

11.    Funds from the Revenue Account are distributed as necessary in the following manner:

(a)  *Revenue Disbursement Account*: Revenue Account funds are swept on a daily basis into the Revenue Disbursement Account.  The Revenue Disbursement Account is used to make payments to owners of mineral interests and working interests for units[7] which the Debtors serve as Operator for their each party's share of oil and gas produced by the Debtors.

(b)  *Transfer to Operating Disbursement Account*: To the extent that additional funds are needed that would normally be drawn from the Main Operating Account, such funds are provided by the Debtors from the Revenue Account to the Operating Disbursement Account, the Payroll Account, or to make other payments that would otherwise normally be paid from the Main Operating Account.

12.    Most other cash deposits generated by the Debtors' businesses, including (i) reimbursements of Operating Expenditures from Non-Operators and (ii) amounts received from the Debtors' oil and gas swap counterparties, are deposited into the Main Operating Account.  Operating

---

[7]    A "unit" is a number of acres established by a state agency governing oil and gas exploration and production, which can be embraced by an oil or gas well.

Expenditure reimbursements received by the Debtors from Non-Operators by check are deposited into the Comerica Lock Box.

13. Funds from the Main Operating Account are distributed as necessary in the following manner:

(a) *Payroll Account*:  Certain funds are deposited in the Payroll Account.  The Payroll Account is used to pay Automatic Data Processing, Inc. ("**ADP**") for the purpose of distributing money to the Debtors' employees.

(b) *Operating Disbursement Account:* Main Operating Account funds are swept on a daily basis into the Operating Disbursement Account.  The Operating Disbursement Account is used to pay Operating Expenditures in which the Debtors serve as Operator, to pay a variety of expenses of the Debtors including, without limitation, capital expenditures, payments on account of employee benefits, insurance and bonding payments, debt service payments, and payments on account of authorized costs and expenses charged JPMorgan credit cards issued to the Debtors' employees, and to make lease payments to Chaparral Real Estate, which owns the Debtors' corporate and field offices and surface acreage.

14. In some instances in which the Debtors serve as Operator, the Debtors require Non-Operators to prepay the Debtors for certain capital expenditures or other expenses.  Such prepayments are normally deposited into an escrow account.  Currently, the Debtors have five escrow accounts at JP Morgan Chase Bank, N.A. (the "**Escrow Accounts**").  Funds in the Escrow Accounts are then used to make payments on account of such capital expenditures and other expenses.[8]

15. Chaparral Real Estate receives payments on account of its leases of property to Chaparral Energy which are deposited into the Real Estate Account, which Chaparral Real Estate then uses to make mortgage payments for certain real property subject to mortgages.  Chaparral Real Estate also maintains a Real Estate Sweep Account, which is swept as needed to replenish the Real Estate Account so that it maintains a minimum balance of $30,000 at all times.

16. CEI Pipeline earns revenues on account of gas gathering fees charged to third-parties with respect to pipes owned by CEI Pipeline.  These revenues are deposited into CEI Pipeline Main Operating Account.  From time to time, the Debtors transfer excess funds from the CEI Pipeline

---

[8]     The Escrow Accounts are not traditional escrow accounts over which the Debtors are not able to exercise control.  The Debtors control the Escrow Accounts and do not require any third-party approvals or authority to use funds deposited in the Escrow Accounts to pay for capital expenditures for which the deposits into the Escrow Accounts were made.

Main Operating Account to the Main Operating Account and account for such intercompany transfers in their books and records.

17.     The Debtors (other than Chaparral Biofuels, L.L.C.) are parties to that certain Eighth Restated Credit Agreement dated April 12, 2010, which is a revolving credit facility (the **"Credit Facility"**) provided by certain lender parties thereto.  Availability of funds under the Credit Facility is subject to a borrowing base, which is currently $550,000,000.  On February 11, 2016, the Debtors borrowed approximately $141,000,000 under the Credit Facility, which represented substantially all the remaining undrawn amount that was available under the Credit Facility at that time, which funds were thereafter deposited into the Deposit Account maintained by the Debtors at Arvest Bank.  To the extent that additional funds are needed in the Main Operating Account to fund the Debtors' business operations, such funds are transferred by the Debtors from the Deposit Account to the Main Operating Account.  The Debtors also transfer excess funds held in the Deposit Account to the Treasury Bill Account for the purpose of purchasing treasury bills.  Interest earned by the Debtors on account of treasury bills are deposited into the Treasury Bill Account, and subsequently reinvested into new treasury bills or transferred into the Repo Sweep Account.  The purpose of the Repo Sweep Account is to earn interest nightly as the Deposit Account is not an interest bearing account.  As of the Petition Date, the cash balance in the Deposit Account with Arvest Bank was approximately $51,600,000, and the cash balance in the Treasury Bill Account with Arvest Bank was approximately $101,000,000.

**B.     The Debtors Should Be Authorized to Continue to Use Their Existing Cash Management System and the Debtor Bank Accounts.**

18.     The Cash Management System is an ordinary course, customary and essential business practice, the continued use of which is essential to the Debtors' business operations during the Chapter 11 Cases and their goal of maximizing value for the benefit of all parties in interest.  To require the Debtors to adopt a new cash management system at this early and critical stage would be expensive, impose needless administrative burdens, and cause undue disruption.  Any disruption in the collection of funds as currently implemented would adversely (and perhaps irreparably) affect the Debtors' ability to

8

maximize estate value.  Moreover, such a disruption would be wholly unnecessary because the Cash

Management System provides a valuable and efficient means for the Debtors to address their cash

management requirements and, to the best of the Debtors' knowledge, the majority of the Debtor Bank

Accounts are held at financially stable institutions insured by the Federal Deposit Insurance Corporation

("**FDIC**").  For the aforementioned reasons, maintaining the existing Cash Management System without

disruption is in the best interests of the Debtors, their estates, and all interested parties.  Accordingly, the

Debtors request that they be allowed to maintain and continue to use the Cash Management System,

including maintenance of their existing Debtor Bank Accounts.

19.     As part of the relief requested herein, and to ensure that their transition into

Chapter 11 is as smooth as possible, the Debtors seek an order authorizing the Debtors to (i) maintain and

continue to use the Debtor Bank Accounts, including but not limited to those accounts listed on

Attachment 2 hereto, in the same manner and with the same account numbers, styles, and document forms

as are currently employed; (ii) deposit funds in and withdraw funds from the Debtor Bank Accounts in the

ordinary course by all usual means, including checks, wire transfers, ACH transfers, drafts, and electronic

fund transfers or other items presented, issued, or drawn on the Debtor Bank Accounts; (iii) pay ordinary

course bank fees in connection with the Debtor Bank Accounts, including prepetition fees; (iv) perform

their obligations under the documents and agreements governing the Debtor Bank Accounts; and (v) for

all purposes, treat the Debtor Bank Accounts as accounts of the Debtors in their capacities as debtors in

possession.

20.     If the relief requested herein is granted, the Debtors will implement appropriate

mechanisms to ensure that no payments will be made on any debts incurred by the Debtors prior to the

Petition Date, other than those authorized by this Court.  To prevent the possible inadvertent payment of

prepetition claims against the Debtors, except those otherwise authorized by the Court, the Debtors will

work closely with the banks at which the Debtor Bank Accounts are maintained (each a "**Bank**" and,

collectively, the "**Banks**") to ensure appropriate procedures are in place to prevent checks issued by the

Debtors prepetition from being honored absent this Court's approval and to ensure that no third-party with automatic debit capabilities is able to debit amounts attributable to the Debtors' prepetition obligations.

21.    The Debtors request that no Bank that implements such handling procedures and then honors a prepetition check or other item drawn on any account that is the subject of this Motion (a) at the direction of the Debtors to honor such prepetition check or item, (b) in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as a result of a good faith error made despite implementation of reasonable item handling procedures, be deemed to be liable to the Debtors or to their estates on account of such prepetition check or other item being honored postpetition. The Debtors believe that such flexibility accorded the Banks is necessary to induce the Banks to continue providing cash management services to the Debtors.

22.    The Debtors further request that the Banks be authorized to deduct from the appropriate Debtor Bank Accounts the Banks' fees and expenses (the **"Bank Fees and Expenses"**), and that no liens on any Debtor Bank Accounts take priority over the Bank Fees and Expenses except as set forth in any deposit agreements between the Debtors and the Banks.

23.    Additionally, in each instance in which the Debtors hold one or more accounts at a bank that is a party to a Uniform Depository Agreement with the U.S. Trustee, within fifteen (15) days of the date of entry of an Interim or Final Order granting this Motion, the Debtors will (i) contact such bank, (ii) provide such bank with the Debtors' employer identification numbers, and (iii) identify each of their accounts held at such bank as held by a debtor in possession in a bankruptcy case.  Where the Debtors hold one or more accounts at a bank that is not a party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors will use their good faith efforts to cause such bank to execute a Uniform Depository Agreement in a form prescribed by the Office of the U.S. Trustee within forty-five (45) days of the date of entry of an Interim or Final Order granting this Motion.

24.     In the interest of maintaining the continued and efficient operation of the Cash Management System during the pendency of the Chapter 11 Cases, the Debtors request that all Banks be authorized and directed to continue to administer, service, and maintain the Debtor Bank Accounts as such accounts were administered, serviced, and maintained prepetition, without interruption and in the ordinary course (including making deductions for Bank Fees and Expenses), and, when requested by the Debtors in their sole discretion, to honor any and all checks, drafts, wires, ACH transfers, electronic fund transfers, or other items presented, issued, or drawn on the Debtor Bank Accounts on account of a claim against the Debtors arising on or after the Petition Date.

25.     The Debtors further request that they be authorized to implement such reasonable changes to the Cash Management System as the Debtors may deem necessary or appropriate, including, without limitation, closing any of the Debtor Bank Accounts and opening any additional bank accounts following the Petition Date (the "**New Accounts**") wherever the Debtors deem that such accounts are needed or appropriate and whether or not the banks in which the accounts are opened are designated approved depositories in the District of Delaware.  Notwithstanding the foregoing, any New Accounts that the Debtors open will be at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at such banks that are willing to immediately execute such an agreement, and any New Account that the Debtors open will be (i) at one of the existing Banks or with a bank that is organized under the laws of the United States of America or any state therein and that is insured by the FDIC or the Federal Savings and Loan Insurance Corporation and (ii) designated a "**Debtor in Possession**" account by the relevant bank.  The Debtors request that the relief sought by this Motion extend to any New Accounts and that any order approving this Motion provide that the New Accounts are deemed to be Debtor Bank Accounts that are similarly subject to the rights, obligations, and relief granted in such order.  The Debtors will provide the U.S. Trustee with prompt notice of any Debtor Bank Accounts that they close or New Accounts that they open.  In furtherance of the foregoing, the Debtors also request that the relevant

banks be authorized to honor the Debtors' requests to open or close (as the case may be) such Debtor

Bank Account(s) or New Account(s).

**C.      The Debtors Should Be Granted Authority to Continue to Use Existing Checks and Business Forms.**

26.      Local Rule 2015-2(a) provides:

> Where the debtor uses pre-printed checks, upon motion of the debtor, the Court may, without notice and hearing, permit the debtor to use its existing checks without the designation "Debtor-in-Possession" and use its existing bank accounts.  However, once the debtor's existing checks have been used, the debtor shall, when reordering checks, require the designation "Debtor-in-Possession" and the corresponding bankruptcy number on all such checks.

Del. Bankr. L.R. 2015-2(a).

27.      To minimize expenses to their estates, the Debtors seek authorization to continue using all checks substantially in the forms existing immediately prior to the Petition Date, without reference to the Debtors' status as debtors in possession; provided, however, that in the event the Debtors generate new checks during the pendency of the Chapter 11 Cases other than from their existing stock of checks, such checks will include a legend referring to the Debtors as "Debtor in Possession".  The Debtors also seek authority to use all correspondence and other business forms (including, without limitation, letterhead, purchase orders, and invoices) without reference to the Debtors' status as debtors in possession.[9]

28.      Changing the Debtors' existing checks, correspondence, and other business forms would be expensive, unnecessary, and burdensome to the Debtors' estates.  Further, such changes would disrupt the Debtors' business operations and would not confer any benefit upon parties that deal with the Debtors.  For these reasons, the Debtors request that they be authorized to use their existing check stock, correspondence, and other business forms without being required to place the label "Debtor in Possession" on any of the foregoing.

---

[9]      Although the operating guidelines established for debtors in possession by the U.S. Trustee would require the Debtors to obtain and use new checks bearing the "Debtor in Possession" designation, the Debtors do not believe that such guidelines impose any limitation on the Debtors' other correspondence and business forms.  Nevertheless, out of an abundance of caution, the Debtors seek explicit authority to continue using their existing correspondence and business forms without reference to the Debtors' status as debtors in possession.

**D.**     **The Debtors Should Be Granted a Waiver of Certain Requirements of the U.S. Trustee.**

29.     The Debtors further request, pursuant to Bankruptcy Code Sections 105(a) and 363, that this Court grant a waiver of certain bank account and related requirements of the U.S. Trustee to the extent that such requirements are inconsistent with (i) the Debtors' existing practices under the Cash Management System or (ii) any action taken by the Debtors in accordance with any order granting this Motion or any other order entered in the Chapter 11 Cases.  To supervise the administration of chapter 11 cases, the U.S. Trustee has established certain operating guidelines for debtors in possession.  These requirements (the "**UST Requirements**") require chapter 11 debtors to, among other things: (i) close all existing bank accounts and open new debtor in possession bank accounts; (ii) establish one debtor in possession account for all estate monies required for the payment of taxes, including payroll taxes; (iii) maintain a separate debtor in possession account for cash collateral; and (iv) obtain checks for all debtor in possession accounts that bear (a) the designation "Debtor In Possession," (b) the bankruptcy case number, and (c) the type of account.  The UST Requirements are designed to demarcate clearly prepetition transactions and operations from postpetition transactions and operations, and to prevent the inadvertent postpetition payment of prepetition claims.  As set forth above, the Debtors submit that (i) they are able to work with the Banks to ensure that this goal of separation between the prepetition and postpetition periods is observed and (ii) enforcement of certain of these UST Requirements would disrupt the Debtors' operations and impose a financial burden on the Debtors' estates.

30.     In light of the complexity of the Cash Management System, it would be onerous for the Debtors to meet the UST Requirement to close all existing bank accounts and open new debtor in possession accounts.  Indeed, this requirement would unnecessarily inconvenience the Debtors.

31.     Further, it would be unnecessary and inefficient to require the Debtors to abide by the UST Requirement to establish specific debtor in possession accounts for tax payments (including payroll taxes) and to deposit to such accounts sufficient funds to pay any tax liability (when incurred) associated with the Debtors' payroll and other tax obligations.  The Debtors can pay their tax obligations

most efficiently from their existing accounts at JPMorgan in accordance with their existing practices, and the U.S. Trustee will have wide latitude to monitor the flow of funds into and out of such accounts. The creation of new debtor in possession accounts designated solely for tax obligations would be unnecessarily burdensome.

32.    In addition, it is unnecessary to require the Debtors to abide by the UST Requirement to establish specific debtor in possession accounts for cash collateral. As set forth in the Debtors' motion for authority to use cash collateral filed contemporaneously herewith, the Debtors have provided significant safeguards (negotiated in good faith with parties in interest) to ensure that parties with security interests in the Debtors' cash are adequately protected and that such parties have been provided with notice of the proposed use of such cash collateral.

**E.    The Debtors Should Be Authorized to Continue Their Deposit Practices.**

33.    As part of the Cash Management System, the Debtors routinely deposit funds into the Debtor Bank Accounts (the **"Deposit Practices"**). The Debtors request (i) authorization to continue to deposit funds in accordance with existing practices under the Cash Management System, subject to any reasonable changes the Debtors may implement to the Cash Management System, and (ii) a waiver of the deposit requirements of Bankruptcy Code Section 345(b), on an interim basis, to the extent that such requirements are inconsistent with the Deposit Practices. For the avoidance of doubt, to the extent any of the Debtor Bank Accounts may be classified as investment accounts, or to the extent any of the Debtors' routine deposits into Debtor Bank Accounts may be regarded as investment activity, the Debtors hereby seek authorization to continue to deposit funds into such Debtor Bank Accounts in accordance with existing practices, notwithstanding the requirements of Bankruptcy Code Section 345(b).

**F.    The Debtors Should Be Authorized to Maintain and Continue Ordinary Course Intercompany Transactions and Postpetition Intercompany Claims Should Be Accorded Superpriority Status.**

34.    As described in further detail in the Fischer Declaration, certain of the Debtors periodically transfer funds to accounts held by Chaparral Energy to pay expenses incurred by the Debtors.

14

For that reason, during the daily operation of the Debtors' businesses, funds are moved within the Cash Management System. There may be intercompany claims owing among the Debtors at any given time. Specifically, certain of the Debtors sometimes directly use funds held in the name of Chaparral Energy[10] or participate in transactions with other Debtors, including payment of their expenses and operating costs (the "**_Intercompany Transactions_**"). As a result of the Intercompany Transactions, the Debtors' books and records reflect prepetition obligations among the Debtors. Before the commencement of these Chapter 11 Cases, the Debtors engaged in Intercompany Transactions in the ordinary course of business including, but not limited to, the following:

> (a) _Payment of Expenses_: Expenses paid by a Debtor on behalf of other Debtors (for example, payment of invoices for essential goods, tax and audit services, insurance), which are allocated among the beneficiaries of such payments. Such transfers are recorded on intercompany accounts.

> (b) _Lease Payments_: Lease payments made by Chaparral Energy to Chaparral Real Estate, which owns the Debtors' corporate and field offices and surface acreage. Such payments are deposited into the Real Estate Account from the Disbursement Account.

> (c) _Transfer of Excess Funds to Main Operating Account_: Ordinary course transactions, involving the Debtors transferring cash to pay general operation and administrative expenses and other expenses. Such transfers are recorded on intercompany accounts.

35. By this Motion, the Debtors seek authority to pay for or otherwise reconcile prepetition Intercompany Transactions if the Debtors, in their sole discretion, deem such payment or reconciliation necessary and in the best interests of the Debtors' estates and other parties in interest. Additionally, the Debtors seek authority to set off prepetition obligations arising out of the Intercompany Transactions. Finally, the Debtors seek authority, in their sole discretion, to continue to engage in

---

[10]    Certain Debtors also make or receive payments directly from the Main Operating Account, which is held in the name of Chaparral Energy, because such Debtors do not hold any accounts in their own name. As noted above, the Bank Accounts are only held in the names of Chaparral Energy, Chaparral Real Estate, and CEI Pipeline. Therefore, all deposits and expenditures on account of accounts receivables and accounts payable for each other Debtor are paid from the Main Operating Account. Because a significant portion of the Debtors' cash is deposited in the Main Operating Account, the Debtors' cash in the Main Operating Account is commingled. All payments and deposits are reflected on the books and records of the Debtor making such payments or receiving such deposits. The Debtors, however, do not view such payments from and deposits into the Main Operating Account as intercompany transfers because each Debtor generally only uses cash that would be available to such Debtor if such Debtor maintained a separate account. Accordingly, no intercompany obligations arise pursuant to each Debtor's use of the funds in the Main Operating Account. Accordingly, the Debtors request authority to continue to allow all Debtors to use the Main Operating Account to operate their businesses in the ordinary course.

Intercompany Transactions postpetition in the ordinary course of business.  All Intercompany Transactions and payments will only be effectuated in accordance with all applicable strictures established in the Debtors' cash collateral order and documentation, including, without limitation, budgetary restrictions.

36.    The Debtors maintain records of all fund transfers and can ascertain, trace, and account for Intercompany Transactions.  At the same time, if the Intercompany Transactions were to be discontinued, the Cash Management System and the related administrative controls would be disrupted to the Debtors' detriment.

37.    To ensure that each individual Debtor will not fund the operations of another entity at the expense of such Debtor's creditors, the Debtors request that all postpetition claims against a Debtor by another Debtor arising from Intercompany Transactions (the **"Intercompany Claims"**) be accorded superpriority administrative claim status, subject and subordinate only to other superpriority administrative claims granted pursuant to order of the Bankruptcy Court regarding the use of cash collateral.  If postpetition Intercompany Claims are accorded superpriority administrative claim status, then each individual Debtor on whose behalf another Debtor has utilized funds or incurred expenses will continue to bear ultimate repayment responsibility, thereby protecting the interests of each individual Debtor's creditors.[11]  Accordingly, the Court should grant superpriority status to postpetition Intercompany Claims.

## APPLICABLE AUTHORITY

**A.    The Bankruptcy Code Permits the Debtors to Continue to Use the Cash Management System and the Debtor Bank Accounts.**

38.    Bankruptcy Code Section 363(c)(1) authorizes a debtor in possession to **"**use property of the estate in the ordinary course of business without notice or a hearing.**"**  11 U.S.C. § 363(c)(1).  The authority granted by Bankruptcy Code Section 363(c)(1) extends to a debtor in

---

[11]    Nothing herein constitutes a request to validate the nature or amount of any Intercompany Transaction or Intercompany Claim, whether arising prepetition or postpetition.

possession's continued use of its customary cash management system and, thus, supports the relief requested.  See, e.g., Charter Co. v. Prudential Ins. Co. Am. (In re Charter Co.), 778 F.2d 617, 621 (11th Cir. 1985) (indicating that an order authorizing the debtor to employ a cash management system that was "usual and customary in the past" was "entirely consistent" with Section 363(c)(1)).  Moreover, Bankruptcy Code Section 364(a) authorizes a debtor in possession to obtain unsecured credit and incur unsecured debt in the ordinary course of business without notice and a hearing.  See 11 U.S.C. § 364(a). This provision further supports the relief requested, and provides the Debtors with the ability, to the extent necessary, to obtain unsecured credit and incur unsecured debt in the ordinary operation of the Cash Management System.

39.    Bankruptcy Code Section 105(a) also authorizes this Court to permit the Debtors to continue to use the Cash Management System, including maintenance of their existing Debtor Bank Accounts.  Section 105(a) vests in this Court the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  The continuation of the Cash Management System, including the continued use of the Debtor Bank Accounts, is essential to the efficient administration of the Chapter 11 Cases and to the Debtors' efforts to maximize estate value for all parties in interest.  Indeed, one court, in another context, has recognized that a centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash."  In re Columbia Gas Sys., Inc., 136 B.R. 930, 934 (Bankr. D. Del. 1992), aff'd in part and rev'd in part, 997 F.2d 1039 (3d Cir. 1993).  Therefore, the relief requested is appropriate under Bankruptcy Code Section 105(a).

40.    In addition, numerous courts, including this Court, in other large chapter 11 cases have authorized debtors to continue to use their existing cash management systems.  See, e.g., In re OnCure Holdings, Inc., Case No. 13-11540 (KG) (Bankr. D. Del. July 24, 2013); In re Penson Worldwide, Inc., Case No. 13-10061 (PJW) (Bankr. D. Del. Jan. 15, 2013); In re B456 Sys., Inc., Case No. 12-12859 (KJC) (Bankr. D. Del. Dec. 11, 2012); In re Vertis Holdings, Inc., Case No. 12-12821 (CSS) (Bankr. D.

17

Del. Nov. 1, 2012); In re Graceway Pharm., LLC, Case No. 11-13036 (MFW) (Bankr. D. Del. Sept. 30,

2011); In re Appleseed's Intermediate Holdings LLC, Case No. 11-10160 (KG) (Bankr. D. Del. Jan. 20,

2011).  Indeed, bankruptcy courts have routinely permitted chapter 11 debtors to continue to use their

existing cash management systems, generally treating requests for such relief as a relatively "simple

matter."  In re Baldwin-United Corp., 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987); see also In re Columbia

Gas Sys., Inc., 136 B.R. at 934.

**B.      This Court Should Waive the UST Requirements to Permit the Debtors to Continue to Use
the Cash Management System.**

41.     The continuation of the Cash Management System, as requested in this Motion,

is consistent with the Debtors' authority to use property of the estate in the ordinary course of business

pursuant to Bankruptcy Code Section 363(c)(1).  Accordingly, this Court should grant the Debtors a

waiver of the UST Requirements to the extent that such requirements conflict with the Debtors' existing

practices under the Cash Management System or any action taken by the Debtors in accordance with any

order granting this Motion or any other order entered in the Chapter 11 Cases.

42.     Moreover, compelling the Debtors to alter their current cash management

practices and to modify the Cash Management System to comply with the UST Requirements would risk

severe disruption to the Debtors' businesses and jeopardize the Debtors' ability to maximize value for all

parties in interest.  Cf. In re Gaylord Container Corp., 1993 WL 188671, at *3, 13 (E.D. La. 1993)

(adopting the bankruptcy court's findings of fact and conclusions of law, which included a finding that

the banking requirements of the Office of the United States Trustee for the District of Louisiana

"represent a substantial burden on any debtor and, in this case, resulted in the incurrence of extraordinary

unquantifiable costs by [the debtor] associated with the confusion engendered by the implementation of

new policies and procedures to comply with such rules, and due to the substantial restrictions that such

rules placed on the debtor's treasury functions").  This factor alone justifies the relief that the Debtors are

seeking.  See 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary

or appropriate to carry out the provisions of this title.").

**C.**      **This Court Has the Authority to Permit the Debtors to Continue Their Deposit Practices.**

43.      Bankruptcy Code Section 345(a) authorizes a debtor in possession to make deposits of estate money in a manner "as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit." 11 U.S.C. § 345(a).  If a deposit is not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," Bankruptcy Code Section 345(b) provides that the debtor must require that the entity with which the deposit is made obtain a bond in favor of the United States that is secured by the undertaking of an adequate corporate surety.  See 11 U.S.C. § 345(b).

44.      This Court has discretion to waive the Bankruptcy Code Section 345(b) requirements "for cause."  11 U.S.C. § 345(b).  In re Service Merchandise Co., Inc., the court indicated that the existence of "cause" should be determined based upon the totality of the circumstances taking account of factors such as: (i) the sophistication of the debtor's business; (ii) the size of the debtor's business; (iii) the amount of investments involved; (iv) the ratings of the financial institutions at which the debtor's funds are held; (v) the complexity of the case; (vi) the safeguards in place within the debtor's own business to ensure the safety of funds; (vii) the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions; (viii) the benefit to the debtor; (ix) the harm, if any, to the estate; and (x) the reasonableness of the debtor's request for relief from the Section 345(b) requirements in light of the overall circumstances of the case.  240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

45.      The Debtors respectfully request that this Court (i) authorize the Debtors to continue to make deposits in accordance with the Deposit Practices and (ii) exercise its discretion to waive the requirements of Bankruptcy Code Section 345(b), on an interim basis, to the extent that such requirements are inconsistent with the Deposit Practices.  The Debtors submit that the circumstances of the Chapter 11 Cases warrant such relief.

46.      The Debtors are large, sophisticated entities with a complex Cash Management System that relies on the Debtor Bank Accounts on a daily basis.  The majority of the Debtor Bank

Accounts are held at stable financial institutions that are insured by the FDIC and, thus, the Debtors' funds are safe (up to applicable FDIC limits).  Furthermore, in light of the regular deposits to, and sweeps of, the various Debtor Bank Accounts and the "as needed" funding structure of the overall system, it would be especially disruptive, unnecessary, and wasteful to require the posting of a bond to the extent that the balances of the Debtor Bank Accounts exceed FDIC insurance limits at a given time.

47.     This Court and other courts have granted requests to approve the use of deposit practices that do not comply strictly with Bankruptcy Code Section 345(b).  See, e.g., In re Paragon Offshore PLC, Case No. 16-10383 (CSS) (Bankr. D. Del. April 6, 2016); In re Verso Corporation, Case No. 16-10163 (KG) (Bankr. D. Del. Feb. 23, 2016); In re Samson Resources Corporation, Case No. 15-11934 (CSS) (Bankr. D. Del. Sept. 22, 2015); In re Quicksilver, Inc., Case No. 15-11880 (BLS) (Bankr. D. Del. July 7, 2015); In re Energy Future Holdings Corp., No 14-10979 (CSS) (Bankr. D. Del. June 4, 2014); In re OnCure Holdings, Inc., Case No. 13-11540 (KG) (Bankr. D. Del. July 24, 2013); In re B456 Sys., Inc., Case No. 12-12859 (KJC) (Bankr. D. Del. Dec. 11, 2012).  Accordingly, the Court should authorize the Debtors to continue to deposit funds in accordance with the Deposit Practices and grant a waiver of the requirements of Bankruptcy Code Section 345(b) on an interim basis to the extent that the requirements are inconsistent with the Deposit Practices.

**D.     The Bankruptcy Code Permits the Debtors to Continue to Engage in the Intercompany Transactions.**

48.     As noted above, the Debtors routinely engaged in the Intercompany Transactions prior to the Petition Date.  Thus, court approval of these transactions is not required pursuant to Bankruptcy Code Section 363(c)(1).  Nevertheless, out of an abundance of caution, the Debtors seek court approval of the relief requested herein, in the event this Court finds that the Intercompany Transactions are outside the ordinary course of business.

49.     Bankruptcy Code Section 363(b)(1) authorizes a debtor in possession to use property of the estate other than in the ordinary course of business after notice and a hearing.  Courts have held that there must be some articulated business justification for using, selling, or leasing property out of

the ordinary course of business before the bankruptcy judge may order such disposition under Section 363(b).  See, e.g., The Dai-Ici Kangyo Bank Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate . . . courts require the debtor to show that a sound business purpose justifies such actions").  In the event an order permitting the Debtors to continue to engage in the Intercompany Transactions is necessary, the Debtors believe that their business judgment to continue the Intercompany Transactions is sound because, among other reasons discussed herein, the Intercompany Transactions reduce the administrative costs of certain of the Debtors, facilitate the satisfaction of the Debtors' obligations, and are integral to the Debtors' daily operations.  Thus, the Debtors submit that continuation of the Intercompany Transactions is in the best interests of the Debtors' estates and the Debtors' creditors.

50.    Courts frequently have authorized debtors to continue their prepetition intercompany practices after commencement of chapter 11 cases.  See, e.g., In re Paragon Offshore PLC, Case No. 16-10383 (CSS) (Bankr. D. Del. April 6, 2016); In re Verso Corporation, Case No. 16-10163 (KG) (Bankr. D. Del. Feb. 23, 2016); In re Samson Resources Corporation, Case No. 15-11934 (CSS) (Bankr. D. Del. Sept. 22, 2015); In re Quicksilver, Inc., Case No. 15-11880 (BLS) (Bankr. D. Del. July 7, 2015); In re Energy Future Holdings Corp., No 14-10979 (CSS) (Bankr. D. Del. June 4, 2014); In re OnCure Holdings, Inc., Case No. 13-11540 (KG) (Bankr. D. Del. July 24, 2013); In re Otelco Inc., Case No. 13-10593 (MFW) (Bankr. D. Del. Mar. 26, 2013); In re Penson Worldwide, Inc., Case No. 13-10061 (PJW) (Bankr. D. Del. Jan. 15, 2013); In re B456 Sys., Inc., Case No. 12-12859 (KJC) (Bankr. D. Del. Dec. 11, 2012).

51.    In addition, this Court has granted superpriority status to postpetition intercompany claims in other large chapter 11 cases.  See, e.g., In re Paragon Offshore PLC, Case No. 16-10383 (CSS) (Bankr. D. Del. April 6, 2016); In re Verso Corporation, Case No. 16-10163 (KG) (Bankr. D. Del. Feb. 23, 2016); In re Samson Resources Corporation, Case No. 15-11934 (CSS) (Bankr. D. Del.

Sept. 22, 2015); In re Energy Future Holdings Corp., No 14-10979 (CSS) (Bankr. D. Del. June 4, 2014);

In re OnCure Holdings, Inc., Case No. 13-11540 (KG) (Bankr. D. Del. July 24, 2013); In re B456 Sys.,

Inc., Case No. 12-12859 (KJC) (Bankr. D. Del. Dec. 11, 2012).

**E.      Bankruptcy Rule 6003 Has Been Satisfied and Bankruptcy Rule 6004 Should Be Waived.**

52.      Certain isolated aspects of the relief requested herein may, if granted, be subject

to Bankruptcy Rule 6003.  Pursuant to Bankruptcy Rule 6003, a court may grant such relief if it is

necessary to avoid immediate and irreparable harm.  The Debtors submit that facts set forth herein

demonstrate that the relief requested is necessary to avoid immediate and irreparable harm to the Debtors

and, thus, Bankruptcy Rule 6003 has been satisfied.

53.      Additionally, to the extent that any aspect of the relief sought herein constitutes a

use of property under Bankruptcy Code Section 363(b), the Debtors seek a waiver of the fourteen-day

stay under Bankruptcy Rule 6004(h).  As described above, the relief that the Debtors seek in this Motion

is immediately necessary in order for the Debtors to be able to continue to operate their businesses and

preserve the value of their estates.  The Debtors thus submit that the requested waiver of the fourteen-day

stay imposed by Bankruptcy Rule 6004(h) is appropriate.

**BANKRUPTCY RULE 6003 HAS BEEN SATISFIED AND
BANKRUPTCY RULE 6004 SHOULD BE WAIVED**

54.      Pursuant to Bankruptcy Rule 6003, the Court may grant relief regarding a motion

to pay all or part of a prepetition claim within twenty one (21) days after the Petition Date if the relief is

necessary to avoid immediate and irreparable harm.  See Fed. R. Bankr. P. 6003(b).  Based on the

foregoing, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003(b)

because the relief set forth in Exhibit A and Exhibit B is necessary to avoid immediate and irreparable

harm.

55.      To the extent that any aspect of the relief sought herein constitutes a use of

property under Bankruptcy Code Section 363(b), the Debtors request a waiver of the notice requirements

under Bankruptcy Rule 6004(a) and the fourteen (14) day stay under Bankruptcy Rule 6004(h).  As

described above, the relief that the Debtors request in this Motion is immediately necessary in order for

the Debtors to be able to continue to operate their businesses and preserve the value of their estates.  The

Debtors respectfully request that the Court waive the notice requirements imposed by Bankruptcy Rule

6004(a) and the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the

relief sought herein justifies immediate relief.

### CONSENT TO JURISDICTION

56.    Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final

judgment or order with respect to this Motion if it is determined that the Court would lack Article III

jurisdiction to enter such final judgment or order absent consent of the parties.

### NOTICE

57.    Notice of this Motion will be given to: (a) the Office of the United States Trustee

for the District of Delaware; (b) the administrative agent for the Debtors' prepetition secured financing;

(c) counsel to the administrative agent for the Debtors' prepetition secured financing; (d) the indenture

trustee under the Debtors' 9.875% senior notes due 2020; (e) the indenture trustee under the Debtors'

8.25% senior notes due 2021; (f) the indenture trustee under the Debtors' 7.625% senior notes due 2022;

(g) Milbank, Tweed, Hadley & McCloy LLP, counsel to counsel to the ad hoc group of the holders of the

Debtors' prepetition unsecured notes (the **"Ad Hoc Noteholder Group"**; (h) the Internal Revenue

Service; (i) the United States Securities and Exchange Commission; (j) the Environmental Protection

Agency and similar state environmental agencies for states in which the Debtors conduct business; (k) the

United States Attorney for the District of Delaware; (l) the Attorneys General for the states of Oklahoma,

Texas, and Kansas; (m) the Banks; (n) the parties included on the Debtors' consolidated list of thirty (30)

largest unsecured creditors; and (o) all parties entitled to notice pursuant to Local Rule 9013-1(m)

(collectively, the **"Initial Notice Parties"**).  As this motion is seeking **"first day"** relief, this motion and

any order entered hereon will be served in accordance with Local Rule 9013-1(m).  The Debtors submit

that, under the circumstances, no other or further notice is required.

58.    In the event the Court enters an Interim Order granting this Motion, within forty-eight (48) hours thereafter, the Debtors propose to serve notice of such entry on the Initial Notice Parties and all parties that have filed prior to such service date requests for notice pursuant to Bankruptcy Rule 2002.  The notice will provide that any objections to the relief granted in the Interim Order must be filed with the Court and served upon counsel for the Debtors no later than seven (7) days prior to the final hearing to be held on the Motion (the **"Objection Deadline"**).  If an objection is timely filed and served prior to the Objection Deadline, such objection will be heard at the final hearing on the Motion.  If no objections are timely filed and served, the Debtors' counsel will file a certification of counsel to that effect attaching a final form of order.

**WHEREFORE**, the Debtors respectfully request that the Court enter Interim and Final Orders, substantially in the forms attached hereto as Exhibit A and Exhibit B, respectively, granting the relief requested in the Motion and such other and further relief as may be just and proper.


Dated:  May 10, 2016
       Wilmington, Delaware

  _/s/ John H. Knight_____
John H. Knight (No. 3848)
Mark D. Collins (No. 2981)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King St.
Wilmington, Delaware 19801
Telephone: 302-651-7700
Fax: 302-651-7701
E-mail: collins@rlf.com
      knight@rlf.com

- and -

Richard A. Levy
Keith A. Simon
David F. McElhoe
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022-4834
Telephone:  212-906-1200
Fax:  212-751-4864
Email: richard.levy@lw.com
      keith.simon@lw.com
      david.mcelhoe@lw.com


*Proposed Counsel for Debtors and*
*Debtors in Possession*

**<u>ATTACHMENT 1</u>**

Diagram of Cash Management System

## Diagram of Cash Management System*



*Capitalized terms used herein shall have the meanings ascribed to them in the Motion.

**ATTACHMENT 2**

Schedule of Debtor Bank Accounts

| Financial Institution | Address | Account Number(s) | Account Holder | Account Type |
|---|---|---|---|---|
| American Bank and Trust Company, N.A. | American Bank & Trust Co. 6100 South Yale Tulsa, OK 74136 Attn: Michael Hall Fax: (918) 481-3089 | 20417057 | Chaparral Energy, L.L.C. | Plugging Escrow Account |
| Arvest Asset Management | Arvest 1051 S. Cornwell Dr. Yukon, OK 73099 Attn: Doug Adkins Fax: (405) 419-3760 | 80988947 | Chaparral Energy, L.L.C. | Treasury Bill Account |
| Arvest Bank | Arvest 502 S. Main Tulsa, OK 74103 Mailcode: DT-5 Attn: Owen Swartwood Fax: (918) 631-6943 | 48438993 | Chaparral Real Estate L.L.C. | Real Estate Account |
| Arvest Bank | Arvest 502 S. Main Tulsa, OK 74103 Mailcode: DT-5 Attn: Owen Swartwood Fax: (918) 631-6943 | 9990001657 | Chaparral Real Estate L.L.C. | Real Estate Sweep Account |

| Arvest Bank | Arvest<br>502 S. Main<br>Tulsa, OK 74103<br>Mailcode:  DT-5<br>Attn: Owen Swartwood<br>Fax: (918) 631-6943 | 85847615 | Chaparral Energy, L.L.C. | Deposit Account |
|---|---|---|---|---|
| Arvest Bank | Arvest<br>502 S. Main<br>Tulsa, OK 74103<br>Mailcode:  DT-5<br>Attn: Owen Swartwood<br>Fax: (918) 631-6943 | 060085847628 | Chaparral Energy, L.L.C. | Repo Sweep Account |
| Comerica Bank | Comerica Bank<br>1508 W. Mockingbird Lane<br>Dallas, TX 75235<br>Attn: Devin Eaton<br>Fax: (214) 589-5400 | 1881296030 | Chaparral Energy, L.L.C. | Lock Box |
| JPMorgan Chase Bank, N.A. | JPMorgan Chase Bank, N.A.<br>2200 Ross Avenue, 6th floor<br>Dallas, TX 75201<br>Attn: Natanja Johnson<br>Fax: (866) 371-7355 | 17035462 | Chaparral Energy, L.L.C. | Escrow Account |
| JPMorgan Chase Bank, N.A. | JPMorgan Chase Bank, N.A.<br>2200 Ross Avenue, 6th floor<br>Dallas, TX 75201<br>Attn: Natanja Johnson<br>Fax: (866) 371-7355 | 1564315727 | Chaparral Energy, L.L.C. | Escrow Account |
| JPMorgan Chase Bank, N.A. | JPMorgan Chase Bank, N.A.<br>2200 Ross Avenue, 6th floor<br>Dallas, TX 75201<br>Attn: Natanja Johnson<br>Fax: (866) 371-7355 | 17044909 | Chaparral Energy, L.L.C. | Escrow Account |

| JPMorgan Chase Bank, N.A. | JPMorgan Chase Bank, N.A. 2200 Ross Avenue, 6th floor Dallas, TX 75201 Attn: Natanja Johnson Fax: (866) 371-7355 | 1564316147 | Chaparral Energy, L.L.C. | Escrow Account |
|---|---|---|---|---|
| JPMorgan Chase Bank, N.A. | JPMorgan Chase Bank, N.A. 2200 Ross Avenue, 6th floor Dallas, TX 75201 Attn: Natanja Johnson Fax: (866) 371-7355 | 1564315735 | Chaparral Energy, L.L.C. | Escrow Account |
| JPMorgan Chase Bank, N.A. | JPMorgan Chase Bank, N.A. 2200 Ross Avenue, 6th floor Dallas, TX 75201 Attn: Natanja Johnson Fax: (866) 371-7355 | 10200107 | Chaparral Energy, L.L.C. | Main Operating Account |
| JPMorgan Chase Bank, N.A. | JPMorgan Chase Bank, N.A. 2200 Ross Avenue, 6th floor Dallas, TX 75201 Attn: Natanja Johnson Fax: (866) 371-7355 | 789502929 | Chaparral Energy, L.L.C. | Operating Disbursement Account |
| JPMorgan Chase Bank, N.A. | JPMorgan Chase Bank, N.A. 2200 Ross Avenue, 6th floor Dallas, TX 75201 Attn: Natanja Johnson Fax: (866) 371-7355 | 10215538 | Chaparral Energy, L.L.C. | Payroll Account |
| JPMorgan Chase Bank, N.A. | JPMorgan Chase Bank, N.A. 2200 Ross Avenue, 6th floor Dallas, TX 75201 Attn: Natanja Johnson Fax: (866) 371-7355 | 10200115 | Chaparral Energy, L.L.C. | Revenue Account |

RLF1 14489599v.1

| JPMorgan Chase Bank, N.A. | JPMorgan Chase Bank, N.A.<br>2200 Ross Avenue, 6th floor<br>Dallas, TX 75201<br>Attn: Natanja Johnson<br>Fax: (866) 371-7355 | 789502903 | Chaparral Energy, L.L.C. | Revenue Disbursement Account |
| --- | --- | --- | --- | --- |
| JPMorgan Chase Bank, N.A. | JPMorgan Chase Bank, N.A.<br>2200 Ross Avenue, 6th floor<br>Dallas, TX 75201<br>Attn: Natanja Johnson<br>Fax: (866) 371-7355 | 747496750 | CEI Pipeline L.L.C. | Main Operating Account |
| U.S. Bank National Association | US Bank<br>3800 Wintergreen Drive<br>Plano, TX 75074<br>Attn: Bruce Hernandez<br>Fax: (972) 881-2187 | 103690278694 | Chaparral Energy, L.L.C. | Lock Box |

4

## **EXHIBIT A**

Proposed Interim Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
---------------------------------------------------------   x
In re:                                                      :   Chapter 11
                                                            :
CHAPARRAL ENERGY, INC., et al.,                             :   Case No. 16-_____ (_____)
                                                            :
            Debtors. [1]                                    :   Joint Administration Pending
                                                            :
---------------------------------------------------------   x
```

## INTERIM ORDER UNDER (I) 11 U.S.C. §§ 105(a), 345, 363, AND 364, FED. R. BANKR. P. 6003, AND DEL. BANKR. L.R. 2015-2 (I) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, INCLUDING MAINTENANCE OF EXISTING BANK ACCOUNTS, CHECKS, AND BUSINESS FORMS, (II) AUTHORIZING CONTINUATION OF EXISTING DEPOSIT PRACTICES, (III) AUTHORIZING CONTINUATION OF INTERCOMPANY TRANSACTIONS, AND (IV) GRANTING SUPERPRIORITY STATUS TO POSTPETITION INTERCOMPANY CLAIMS

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an Interim Order under

Bankruptcy Code Sections 105(a), 345, 363, and 364, Bankruptcy Rule 6003, and Local Rule 2015-2, (i)

authorizing, but not directing, the Debtors to continue to maintain and use their existing cash management

system, including maintenance of existing bank accounts, checks, and business forms; (ii) granting the

Debtors a waiver of certain bank account and related requirements of the U.S. Trustee to the extent that

such requirements are inconsistent with the Debtors' practices under their existing cash management

system or other actions described in the Motion or this Interim Order; (iii) authorizing, but not directing,

the Debtors to continue to maintain and use their existing deposit practices notwithstanding the provisions

of Bankruptcy Code Section 345(b); (iv) authorizing, but not directing, the Debtors to continue certain

ordinary course intercompany transactions; and (v) according superpriority status to postpetition

intercompany claims arising from certain of such transactions; and the Court having reviewed the Motion

---

[1]     The Debtors in these cases, along with the last four digits (or five digits, in cases in which multiple Debtors have the same last four digits) of each Debtor's federal tax identification number, are: CEI Acquisition, L.L.C. (1817); CEI Pipeline, L.L.C. (6877); Chaparral Biofuels, L.L.C. (1066); Chaparral $CO_2$, L.L.C. (1656); Chaparral Energy, Inc. (90941); Chaparral Energy, L.L.C. (20941); Chaparral Exploration, L.L.C. (1968); Chaparral Real Estate, L.L.C. (1655); Chaparral Resources, L.L.C. (1710); Green Country Supply, Inc. (2723); and Roadrunner Drilling, L.L.C. (2399).  The Debtors' address is 701 Cedar Lake Blvd., Oklahoma City, OK 73114.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

2

and the Fischer Declaration; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest and should be granted on an interim basis to the extent set forth herein; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED on an interim basis, as set forth herein.

2.      The Debtors are authorized to continue to use their existing Cash Management System and shall maintain through the use thereof detailed records reflecting all transfers of funds under the terms and conditions provided for by the existing agreements with the institutions participating in the Cash Management System, except as modified by this Interim Order.  In connection with the ongoing utilization of the Cash Management System, the Debtors shall continue to maintain records with respect to all transfers of cash so that all transactions may be readily ascertained, traced, and recorded properly.

3.      Any existing deposit agreements between the Debtors and the Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect unless otherwise ordered by the Court, and the Debtors and the Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and cash management procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts, subject to the terms and conditions of this Interim Order.

4.      The Debtors are authorized to (i) continue to use any and all of the Debtor Bank Accounts in existence as of the Petition Date, including, but not limited to, the Debtor Bank Accounts identified on Attachment 2 to the Motion, in the same manner and with the same account numbers, styles, and document forms as are currently employed; (ii) deposit funds in and withdraw funds from the Debtor Bank Accounts in the ordinary course by all usual means, including checks, wire transfers, ACH transfers, drafts, and electronic fund transfers or other items presented, issued, or drawn on the Debtor Bank Accounts; (iii) pay ordinary course bank fees in connection with the Debtor Bank Accounts, including any fees arising prior to the Petition Date; (iv) perform their obligations under the documents and agreements governing the Debtor Bank Accounts; and (v) for all purposes, treat the Debtor Bank Accounts as accounts of the Debtors in their capacities as debtors in possession.

5.      The Banks and Debtors' financial institutions shall be, and hereby are, authorized, when requested by the Debtors in their sole discretion, (i) to process, honor, pay, and, if necessary, reissue any and all checks, including prepetition checks that the Debtors reissue postpetition, and electronic fund transfers drawn on the Debtors' bank accounts relating to payments permitted by an order of this Court, whether such checks were presented or funds transfer requests were submitted prior to or subsequent to the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments and (ii) to debit the Debtors' accounts in the ordinary course of business for all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to the Banks as service charges for the maintenance of the Cash Management System.

6.      In each instance in which the Debtors hold Debtor Bank Accounts at banks that are party to a Uniform Depository Agreement with the U.S. Trustee, within fifteen (15) days of entry of this Interim Order the Debtors shall (a) contact each bank, (b) provide the bank with each of the Debtors' employer identification numbers and (c) identify each of their bank accounts held at such banks as being held by a debtor in possession in a bankruptcy case.  In each instance in which the Debtors hold Debtor Bank Accounts at banks that are not party to a Uniform Depository Agreement with the U.S. Trustee, the

4

Debtors shall use their good faith efforts to cause the banks to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee within forty-five (45) days of the date of this Interim Order.  The U.S. Trustee's rights to seek further relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

7.     Pursuant to Local Rule 2015-2(a), the Debtors are authorized to continue to use their existing checks, correspondence, and other business forms without alteration or change and without the designation "Debtor in Possession" or a bankruptcy case number imprinted upon them. Notwithstanding the foregoing, once the Debtors' existing checks have been used, the Debtors shall, when reordering checks, require the designation "Debtor in Possession" and the corresponding bankruptcy case number on all checks; provided that, with respect to checks that the Debtors or their agents print themselves, the Debtors shall begin printing the "Debtor in Possession" legend on such items within ten (10) days of the date of entry of this Interim Order.

8.     The Debtors are authorized to continue to utilize all third-party providers necessary for the administration of their Cash Management System, including their payroll processor, Automatic Data Processing, Inc.  In addition, the Debtors are authorized, but not directed, to pay all prepetition or postpetition amounts due to such third-party providers.

9.     *Nunc pro tunc* to the Petition Date, and subject to the terms of this Interim Order, all Banks at which the Debtor Bank Accounts are maintained are authorized to continue to administer, service, and maintain the Debtor Bank Accounts as such accounts were administered, serviced, and maintained prepetition, without interruption and in the ordinary course (including making deductions for Bank Fees and Expenses), and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Debtor Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be, and, when requested by the Debtors in their sole discretion, to receive, process, honor, and pay, to the extent of

5

available funds, any and all checks, drafts, wires, ACH transfers, electronic fund transfers, or other items presented, issued, or drawn on the Debtor Bank Accounts on account of a claim against the Debtors arising on or after the Petition Date; provided, however, that unless otherwise ordered by the Court, no checks, drafts, electronic funds transfers (excluding any electronic funds transfer that the Banks are obligated to settle), or other items presented, issued, or drawn on the Debtor Bank Accounts on account of a claim against the Debtors arising prior to the Petition Date shall be honored.

10.     The relief granted in this Interim Order is extended to any new bank account opened by the Debtors at the Banks after the date hereof.

11.     All Banks provided with notice of this Interim Order maintaining any of the Debtor Bank Accounts shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue stop payment orders in accordance with the documents governing such Debtor Bank Accounts.

12.     Each Bank shall implement reasonable handling procedures designed to effectuate the terms of this Interim Order.  No Bank that implements such handling procedures and then honors a prepetition check or item drawn on any account that is the subject of this Interim Order (x) at the direction of the Debtors to honor such prepetition check or item, (y) in the good faith belief that the Court has authorized such prepetition check or item to be honored, or (z) as a result of a good faith error made despite implementation of such handling procedures, shall be deemed to be liable to the Debtors or their estates on account of such prepetition check or item being honored postpetition or otherwise in violation of this Interim Order.

13.     The Debtors are authorized to implement such reasonable changes, consistent with this Interim Order, to the Cash Management System as the Debtors may deem necessary or appropriate, including, without limitation, closing any of the Debtor Bank Accounts or opening any additional bank accounts following the Petition Date (the **"New Accounts"**) wherever the Debtors deem that such accounts are needed or appropriate, and to enter into any ancillary agreements related to the

6

foregoing, as they may deem necessary and appropriate, subject to the terms and provisions of the Debtors' agreements with the Banks.  Notwithstanding the foregoing, the Debtors shall open such New Account(s) at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at such banks that are willing to immediately execute such an agreement, and any New Account that the Debtors open shall be (i) at one of the existing Banks or with a bank that is organized under the laws of the United States of America or any state therein, and that is insured by the FDIC or the Federal Savings and Loan Insurance Corporation and (ii) designated a "Debtor in Possession" account by the relevant bank.  The New Accounts are deemed to be Debtor Bank Accounts and are similarly subject to the rights, obligations, and relief granted in this Interim Order.  The Banks are authorized to honor the Debtors' requests to open or close (as the case may be) such Debtor Bank Account(s) or New Account(s), and (b) accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; *provided* that the Banks shall not have any liability to any party for relying upon such representations.  In the event that the Debtors open or close any Debtor Bank Accounts(s) or New Account(s), such opening or closing shall be timely indicated on the Debtors' monthly operating reports and notice of such opening or closing shall be provided to the U.S. Trustee, counsel to the Ad Hoc Noteholder Group, and counsel to any official committee of unsecured creditors appointed in these Chapter 11 Cases within fifteen (15) days.

14.    The Debtors are authorized to deposit funds in accordance with existing practices under the Cash Management System as in effect as of the Petition Date, subject to any reasonable changes, consistent with this Interim Order, to the Cash Management System that the Debtors may implement, and, to the extent such practices are inconsistent with the requirements of Bankruptcy Code Section 345(b), such requirements are waived on an interim basis.  The Debtors shall have sixty (60) days (or such additional time as the U.S. Trustee may agree to) from the Petition Date (the "**Extension Period**") within which to either come into compliance with Bankruptcy Code Section 345(b) or to make such other arrangements as agreed with the U.S. Trustee.  Such extension is without prejudice to the

7

Debtors' right to request a further extension of the Extension Period or a final waiver of the requirements under Bankruptcy Code Section 345(b).

15.     The Debtors are authorized, but not directed, (i) in their sole discretion to make payments on account of prepetition Intercompany Transactions if the Debtors deem such payment necessary and in the best interests of the Debtors' estates; (ii) to set off prepetition obligations on account of Intercompany Transactions; and (iii) to continue to engage in Intercompany Transactions, on a postpetition basis, in the ordinary course of business and/or as necessary to execute the Cash Management System, subject to and limited by the requirements imposed on the Debtors under the terms of any interim and/or final orders approving the use of cash collateral.  The Debtors shall continue to maintain records with respect to all transfers of cash (including pursuant to such transactions) so that all Intercompany Transactions may be readily ascertained, traced, and recorded properly and distinguished between prepetition and postpetition transactions, and shall make such records available to the U.S. Trustee upon request.

16.     In the course of providing cash management services to the Debtors, the Banks are authorized, without further order of this Court, to deduct the applicable service fees from the appropriate Debtor Bank Accounts in the ordinary course of business, when such fees are otherwise due and payable.

17.     Subject to the terms set forth herein, any bank, including the Banks, may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of this Court, and the Banks shall not have any liability to any party for relying on such representations by the Debtors as provided for herein.

18.     The requirement of the UST Guidelines to establish separate accounts for cash collateral and/or tax payments is hereby waived except as otherwise required by any applicable agreements between the Debtors and the Banks.

19.　　All claims against a Debtor by another Debtor arising from postpetition Intercompany Transactions shall be accorded administrative expense status under sections 503(b) of the Bankruptcy Code, subject and subordinate only to other superpriority administrative claims granted pursuant to order of this Court in connection with the Debtors' use of cash collateral.

20.　　Nothing contained in the Motion or this Interim Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date, or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

21.　　Despite the Debtors' use of a consolidated Cash Management System, the Debtors shall calculate any quarterly fees due under 28 U.S.C. § 1930(a)(6) based on the individual disbursements of each Debtor, regardless of which Debtor is responsible for payment of such fees.

22.　　Notwithstanding anything to the contrary in this Interim Order or to the Motion, any payment, obligation, or other relief authorized by this Interim Order shall be subject to and limited by the requirements imposed on the Debtors under the terms of any interim and/or final orders approving the use of cash collateral.

23.　　Neither the provisions contained herein, nor any actions or payments made by the Debtors pursuant to this Interim Order, shall be deemed an admission as to the validity of the underlying obligation or a waiver of any rights the Debtors may have to dispute such obligation on any ground that applicable law permits.

24.　　Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

25.　　The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

26.　　The requirements set forth in Bankruptcy Rule 6003(b) are satisfied because the relief set forth in this Interim Order is necessary to avoid immediate and irreparable harm.

27.    The Debtors are authorized to take such actions and to execute such documents necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

28.    The final hearing (the **"Final Hearing"**) on the Motion shall be held on _____, 2016, at_____:_____ _.m.,, prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2016, and shall be served on: (a) Chaparral Energy, Inc., 701 Cedar Lake Blvd., Oklahoma City, OK 73114 (Attn: Linda Byford), (b) Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Attn: David F. McElhoe), (c) Richards, Layton & Finger, One Rodney Square 920 North King St., Wilmington, Delaware 19801 (Attn: John H. Knight), (d) counsel to the administrative agent for the Debtors' prepetition secured financing, Vinson & Elkins LLP, Trammell Crow Center, 2001 Ross Avenue, Suite 3700, Dallas, Texas 75201(Attn: Chris Dewar, Esq.); (e) Milbank, Tweed, Hadley & McCloy LLP, 28 Liberty Street, New York, NY 10005 (Attn: Evan Fleck, Esq. and Michael Price, Esq.), counsel to the Ad Hoc Noteholder Group; (f) counsel to the official committee of unsecured creditors, if one is appointed, and (g) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801 (Attn: David Buchbinder), no later than _____, 2016, at 5:00 p.m. Prevailing Eastern Time.  In the event no objections to entry of the Final Order on the Motion are timely received, this Court may enter such Final Order without need for the Final Hearing.

29.    The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and/or enforcement of this Interim Order.

Dated: _____, 2016
         Wilmington, Delaware

_____
THE HONORABLE [_____]
UNITED STATES BANKRUPTCY JUDGE

## **<u>EXHIBIT B</u>**

Proposed Final Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
--------------------------------------------------------  x
In re:                                                     :   Chapter 11
                                                           :
CHAPARRAL ENERGY, INC., et al.,                            :   Case No. 16-_____ (_____)
                                                           :
                 Debtors. 1                                :   Joint Administration Pending
                                                           :
--------------------------------------------------------  x
```

**FINAL ORDER UNDER (I) 11 U.S.C. §§ 105(a),**
**345, 363, AND 364, FED. R. BANKR. P. 6003, AND DEL. BANKR. L.R. 2015-2**
**(I) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM,**
**INCLUDING MAINTENANCE OF EXISTING BANK ACCOUNTS, CHECKS, AND BUSINESS**
**FORMS, (II) AUTHORIZING CONTINUATION OF EXISTING DEPOSIT PRACTICES,**
**(III) AUTHORIZING CONTINUATION OF INTERCOMPANY TRANSACTIONS, AND**
**(IV) GRANTING SUPERPRIORITY STATUS TO POSTPETITION INTERCOMPANY CLAIMS**

Upon the motion (the **"Motion"**)[2] of the Debtors for entry of a Final Order, (i) under

Bankruptcy Code Sections 105(a), 345, 363, and 364, Bankruptcy Rule 6003, and Local Rule 2015-2,

authorizing, but not directing, the Debtors to continue to maintain and use their existing cash management

system, including maintenance of existing bank accounts, checks, and business forms; (ii) granting the

Debtors a waiver of certain bank account and related requirements of the U.S. Trustee to the extent that

such requirements are inconsistent with the Debtors' practices under their existing cash management

system or other actions described in the Motion or this Final Order; (iii) authorizing, but not directing, the

Debtors to continue to maintain and use their existing deposit practices notwithstanding the provisions of

Bankruptcy Code Section 345(b); (iv) authorizing, but not directing, the Debtors to continue certain

ordinary course intercompany transactions; and (v) according superpriority status to postpetition

---

[1]        The Debtors in these cases, along with the last four digits (or five digits, in cases in which multiple Debtors
have the same last four digits) of each Debtor's federal tax identification number, are: CEI Acquisition, L.L.C.
(1817); CEI Pipeline, L.L.C. (6877); Chaparral Biofuels, L.L.C. (1066); Chaparral $CO_2$, L.L.C. (1656); Chaparral
Energy, Inc. (90941); Chaparral Energy, L.L.C. (20941); Chaparral Exploration, L.L.C. (1968); Chaparral Real
Estate, L.L.C. (1655); Chaparral Resources, L.L.C. (1710); Green Country Supply, Inc. (2723); and Roadrunner
Drilling, L.L.C. (2399).  The Debtors' address is 701 Cedar Lake Blvd., Oklahoma City, OK 73114.

[2]        Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in
the Motion.

intercompany claims arising from certain of such transactions; and the Court having reviewed the Motion and the Fischer Declaration; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.     The Motion is GRANTED on a final basis, as set forth herein.

2.     All objections to the entry of this Final Order, to the extent not withdrawn or settled, are overruled.

3.     The Debtors are authorized to continue to use their existing Cash Management System and shall maintain through the use thereof detailed records reflecting all transfers of funds under the terms and conditions provided for by the existing agreements with the institutions participating in the Cash Management System, except as modified by this Final Order.  In connection with the ongoing utilization of the Cash Management System, the Debtors shall continue to maintain records with respect to all transfers of cash so that all transactions may be readily ascertained, traced, and recorded properly.

4.     Any existing deposit agreements between the Debtors and the Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect unless otherwise ordered by the Court, and the Debtors and the Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and cash management procedures in the ordinary course of business, including,

without limitation, the opening and closing of bank accounts, subject to the terms and conditions of this Final Order.

5.      The Debtors are authorized to (i) continue to use any and all of the Debtor Bank Accounts in existence as of the Petition Date, including, but not limited to, the Debtor Bank Accounts identified on Attachment 2 to the Motion, in the same manner and with the same account numbers, styles, and document forms as are currently employed; (ii) deposit funds in and withdraw funds from the Debtor Bank Accounts in the ordinary course by all usual means, including checks, wire transfers, ACH transfers, drafts, and electronic fund transfers or other items presented, issued, or drawn on the Debtor Bank Accounts; (iii) pay ordinary course bank fees in connection with the Debtor Bank Accounts, including any fees arising prior to the Petition Date; (iv) perform their obligations under the documents and agreements governing the Debtor Bank Accounts; and (v) for all purposes, treat the Debtor Bank Accounts as accounts of the Debtors in their capacities as debtors in possession.

6.      The Banks and Debtors' financial institutions shall be, and hereby are, authorized, when requested by the Debtors in their sole discretion, (i) to process, honor, pay, and, if necessary, reissue any and all checks, including prepetition checks that the Debtors reissue postpetition, and electronic fund transfers drawn on the Debtors' bank accounts relating to payments permitted by an order of this Court, whether such checks were presented or funds transfer requests were submitted prior to or subsequent to the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments and (ii) to debit the Debtors' accounts in the ordinary course of business for all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to the Banks as service charges for the maintenance of the Cash Management System.

7.      In each instance in which the Debtors hold Debtor Bank Accounts at banks that are party to a Uniform Depository Agreement with the U.S. Trustee, within fifteen (15) days of entry of this Final Order the Debtors shall (a) contact each bank, (b) provide the bank with each of the Debtors' employer identification numbers and (c) identify each of their bank accounts held at such banks as being

3

held by a debtor in possession in a bankruptcy case.  In each instance in which the Debtors hold Debtor

Bank Accounts at banks that are not party to a Uniform Depository Agreement with the U.S. Trustee, the

Debtors shall use their good faith efforts to cause the banks to execute a Uniform Depository Agreement

in a form prescribed by the U.S. Trustee within forty-five (45) days of the date of this Final Order.  The

U.S. Trustee's rights to seek further relief from this Court on notice in the event that the aforementioned

banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee

are fully reserved.

8.       Pursuant to Local Rule 2015-2(a), the Debtors are authorized to continue to use

their existing checks, correspondence, and other business forms without alteration or change and without

the designation **"Debtor in Possession"** or a bankruptcy case number imprinted upon them.

Notwithstanding the foregoing, once the Debtors' existing checks have been used, the Debtors shall,

when reordering checks, require the designation **"Debtor in Possession"** and the corresponding

bankruptcy case number on all checks; provided that, with respect to checks that the Debtors or their

agents print themselves, the Debtors shall begin printing the **"Debtor in Possession"** legend on such items

within ten (10) days of the date of entry of this Final Order.

9.       The Debtors are authorized to continue to utilize all third-party providers

necessary for the administration of their Cash Management System, including their payroll processor,

Automatic Data Processing, Inc.  In addition, the Debtors are authorized, but not directed, to pay all

prepetition or postpetition amounts due to such third-party providers.

10.      *Nunc pro tunc* to the Petition Date, and subject to the terms of this Final Order,

all Banks at which the Debtor Bank Accounts are maintained are authorized to continue to administer,

service, and maintain the Debtor Bank Accounts as such accounts were administered, serviced, and

maintained prepetition, without interruption and in the ordinary course (including making deductions for

Bank Fees and Expenses), and to receive, process, honor, and pay, to the extent of available funds, any

and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Debtor

4

Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be, and, when requested by the Debtors in their sole discretion, to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, ACH transfers, electronic fund transfers, or other items presented, issued, or drawn on the Debtor Bank Accounts on account of a claim against the Debtors arising on or after the Petition Date; provided, however, that unless otherwise ordered by the Court, no checks, drafts, electronic funds transfers (excluding any electronic funds transfer that the Banks are obligated to settle), or other items presented, issued, or drawn on the Debtor Bank Accounts on account of a claim against the Debtors arising prior to the Petition Date shall be honored.

11.     The relief granted in this Interim Order is extended to any new bank account opened by the Debtors at the Banks after the date hereof.

12.     All Banks provided with notice of this Interim Order maintaining any of the Debtor Bank Accounts shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue stop payment orders in accordance with the documents governing such Debtor Bank Accounts.

13.     Each Bank shall implement reasonable handling procedures designed to effectuate the terms of this Final Order.  No Bank that implements such handling procedures and then honors a prepetition check or item drawn on any account that is the subject of this Final Order (x) at the direction of the Debtors to honor such prepetition check or item, (y) in the good faith belief that the Court has authorized such prepetition check or item to be honored, or (z) as a result of a good faith error made despite implementation of such handling procedures, shall be deemed to be liable to the Debtors or their estates on account of such prepetition check or item being honored postpetition or otherwise in violation of this Final Order.

14.     The Debtors are authorized to implement such reasonable changes, consistent with this Final Order, to the Cash Management System as the Debtors may deem necessary or appropriate, including, without limitation, closing any of the Debtor Bank Accounts or opening any

additional bank accounts following the Petition Date (the "**New Accounts**") wherever the Debtors deem

that such accounts are needed or appropriate, and to enter into any ancillary agreements related to the

foregoing, as they may deem necessary and appropriate, subject to the terms and provisions of the

Debtors' agreements with the Banks.  Notwithstanding the foregoing, the Debtors shall open such New

Account(s) at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at

such banks that are willing to immediately execute such an agreement, and any New Account that the

Debtors open shall be (i) at one of the existing Banks or with a bank that is organized under the laws of

the United States of America or any state therein, and that is insured by the FDIC or the Federal Savings

and Loan Insurance Corporation and (ii) designated a "**Debtor in Possession**" account by the relevant

bank.  The New Accounts are deemed to be Debtor Bank Accounts and are similarly subject to the rights,

obligations, and relief granted in this Final Order.  The Banks are authorized to honor the Debtors'

requests to open or close (as the case may be) such Debtor Bank Account(s) or New Account(s), and (b)

accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; *provided* that

the Banks shall not have any liability to any party for relying upon such representations.  In the event that

the Debtors open or close any Debtor Bank Accounts(s) or New Account(s), such opening or closing shall

be timely indicated on the Debtors' monthly operating reports and notice of such opening or closing shall

be provided to the U.S. Trustee, counsel to the Ad Hoc Noteholder Group, and counsel to any official

committee of unsecured creditors appointed in these Chapter 11 Cases within fifteen (15) days.

15.     The Debtors are authorized to deposit funds in accordance with existing practices

under the Cash Management System as in effect as of the Petition Date, subject to any reasonable

changes, consistent with this Final Order, to the Cash Management System that the Debtors may

implement, and, to the extent such practices are inconsistent with the requirements of Bankruptcy Code

Section 345(b), such requirements are waived, on an interim basis.  The Debtors shall have sixty (60)

days (or such additional time as the U.S. Trustee may agree to) from the Petition Date (the "**Extension**

**Period**") within which to either come into compliance with Bankruptcy Code Section 345(b) or to make

6

such other arrangements as agreed with the U.S. Trustee.  Such extension is without prejudice to the Debtors' right to request a further extension of the Extension Period or a final waiver of the requirements under Bankruptcy Code Section 345(b).

16.     The Debtors are authorized, but not directed, (i) in their sole discretion to make payments on account of prepetition Intercompany Transactions if the Debtors deem such payment necessary and in the best interests of the Debtors' estates; (ii) to set off prepetition obligations on account of Intercompany Transactions; and (iii) to continue to engage in Intercompany Transactions, on a postpetition basis, in the ordinary course of business and/or as necessary to execute the Cash Management System, subject to and limited by the requirements imposed on the Debtors under the terms of any interim and/or final orders approving the use of cash collateral.  The Debtors shall continue to maintain records with respect to all transfers of cash (including pursuant to such transactions) so that all Intercompany Transactions may be readily ascertained, traced, and recorded properly and distinguished between prepetition and postpetition transactions, and shall make such records available to the U.S. Trustee upon request.

17.     In the course of providing cash management services to the Debtors, the Banks are authorized, without further order of this Court, to deduct the applicable service fees from the appropriate Debtor Bank Accounts in the ordinary course of business, when such fees are otherwise due and payable.

18.     Subject to the terms set forth herein, any bank, including the Banks, may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of this Court, and the Banks shall not have any liability to any party for relying on such representations by the Debtors as provided for herein.

19.     The requirement of the UST Guidelines to establish separate accounts for cash collateral and/or tax payments is hereby waived except as otherwise required by any applicable agreements between the Debtors and the Banks.

20.     All claims against a Debtor by another Debtor arising from postpetition Intercompany Transactions shall be accorded administrative expense status under sections 503(b) of the Bankruptcy Code, subject and subordinate only to other superpriority administrative claims granted pursuant to order of this Court in connection with the Debtors' use of cash collateral.

21.     Nothing contained in the Motion or this Final Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date, or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

22.     Despite the Debtors' use of a consolidated Cash Management System, the Debtors shall calculate any quarterly fees due under 28 U.S.C. § 1930(a)(6) based on the individual disbursements of each Debtor, regardless of which Debtor is responsible for payment of such fees.

23.     Notwithstanding anything to the contrary in this Final Order or to the Motion, any payment, obligation, or other relief authorized by this Final Order shall be subject to and limited by the requirements imposed on the Debtors under the terms of any interim and/or final orders approving the use of cash collateral.

24.     Neither the provisions contained herein, nor any actions or payments made by the Debtors pursuant to this Final Order, shall be deemed an admission as to the validity of any underlying obligation or a waiver of any rights the Debtors may have to dispute such obligation on any ground that applicable law permits.

25.     The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

26.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied because the relief set forth in this Final Order is necessary to avoid immediate and irreparable harm.

RLF1 14489599v.1

27.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Final Order shall be effective and enforceable immediately upon entry hereof.

28.     The Debtors are authorized to take such actions and to execute such documents necessary to effectuate the relief granted by this Final Order in accordance with the Motion.

29.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Final Order.


Dated:  Wilmington, Delaware
_____, 2016


_____
THE HONORABLE [_____]
UNITED STATES BANKRUPTCY JUDGE

9