# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CHAPARRAL ENERGY, INC., *et al.*, | : | Case No. 16-11144 (LSS) |
| | : | |
| Debtors.[1] | : | Jointly Administered |
| | : | |
| | : | **Hearing Date: Dec. 7, 2016 at 10:00 a.m. (EST)**<br>**Objection Deadline: Nov. 30, 2016 at 4:00 p.m. (EST)** |

## DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE FURTHER EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") hereby file this motion (the "**Motion**"), under section 1121(d) of title 11 of the United States Code (the "**Bankruptcy Code**"), requesting the entry of an order, in substantially the form attached hereto as Exhibit A (the "**Order**"), further extending the Debtors' exclusive periods to file a chapter 11 plan of reorganization and to solicit acceptances thereof. Specifically, the Debtors seek to extend the exclusive period to file a chapter 11 plan (the "**Exclusive Filing Period**") and the exclusive period to solicit acceptances of a chapter 11 plan (the "**Exclusive Solicitation Period**") each by approximately two months, through and including January 11, 2017 and March 13, 2017, respectively. In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these cases, along with the last four digits (or five digits, in cases in which multiple Debtors have the same last four digits) of each Debtor's federal tax identification number, are: CEI Acquisition, L.L.C. (1817); CEI Pipeline, L.L.C. (6877); Chaparral Biofuels, L.L.C (1066); Chaparral CO2, L.L.C. (1656); Chaparral Energy, Inc. (90941); Chaparral Energy, L.L.C. (20941); Chaparral Exploration, L.L.C. (1968); Chaparral Real Estate, L.L.C. (1655); Chaparral Resources, L.L.C. (1710); Green Country Supply, Inc. (2723); and Roadrunner Drilling, L.L.C. (2399). The Debtor's address is 701 Cedar Lake Blvd., Oklahoma City, OK 7311

US-DOCS\72389271.3

**Jurisdiction**

1. This Court has jurisdiction over this matter under 28 U.S.C. § 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. The statutory bases for the relief sought herein are Bankruptcy Code Section 1121(d), Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9006-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

**Background**

3. On May 9, 2016 (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing cases for relief under Chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The Debtors continue to manage and operate their businesses pursuant to Bankruptcy Code Sections 1107 and 1108. No trustee or examiner has been requested in these Chapter 11 Cases and no committees have yet been appointed.

4. A description of the Debtors' businesses and the reasons for commencing these Chapter 11 Cases is set forth in the *Declaration of Mark A. Fischer, Chief Executive Officer of Chaparral Energy, Inc. in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 14] (the "**Fischer Declaration**"),[2] filed on May 10, 2016 and fully incorporated herein by reference.

5. Pursuant to Bankruptcy Code Section 1121(b), the original Exclusive Filing Period was set to expire on September 6, 2016 and the original Exclusive Solicitation Period was set to expire on November 5, 2016.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Fischer Declaration.

6. On September 1, 2016, the Debtors filed a motion seeking extension of the original exclusive periods [Docket No. 464] (the "**First Exclusivity Extension Motion**"). On October 13, 2016, the Court entered the *Order Pursuant to Section 1121(d) of the Bankruptcy Code Extending Debtors' Exclusive Periods Within Which to File a Chapter 11 Plan and to Solicit Acceptances Thereto* [Docket No. 525] (the "**First Exclusivity Extension Order**") extending each of the Exclusive Filing Period and the Exclusive Solicitation Period through and including November 9, 2016 and January 9, 2017, respectively, without prejudice to the rights of the Debtors to request further extensions of the exclusive periods or to seek other appropriate relief.

7. As described in further detail below, the Debtors are working with the Prepetition Lenders and the Ad Hoc Committee to finalize the terms of a restructuring support agreement and the various exhibits thereto. While significant progress has been made, negotiations are ongoing and, accordingly, the Debtors have filed this Motion out of an abundance of caution. The Debtors continue to work cooperatively with the Prepetition Lenders and the Ad Hoc Committee and have provided their respective counsel with the opportunity to review and comment on a draft of this Motion prior to filing.

**Relief Requested**

8. By this Motion, the Debtors seek an additional extension of the exclusive periods to file a chapter 11 plan for approximately two months from November 9, 2016 to, through and including January 11, 2017 and to solicit votes on a chapter 11 plan for approximately two months from January 9, 2017, to, through and including March 13, 2017.[3] The Debtors also

---

[3] Additionally, pursuant to Local Rule 9006-2, where "a motion to extend the time to take any action is filed before the expiration of the period prescribed by the Code, the Fed. R. Bankr. P., these Local Rules, the District Court Rules, or Court order, the time shall automatically be extended until the Bankruptcy Court acts on the motion,

request that such extensions be without prejudice to the Debtors' right to request further extensions or to seek other appropriate relief.

## Basis for Relief

9. Bankruptcy Code Section 1121(b) provides for an initial Exclusive Filing Period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to file a plan of reorganization. Bankruptcy Code Section 1121(c)(3) provides that if a debtor files a plan within the Exclusive Filing Period, it has an initial Exclusive Solicitation Period of 180 days after the commencement of the chapter 11 case to obtain acceptance of such plan. Section 1121(d) permits the Bankruptcy Court to extend the exclusive periods for "cause" and, for the reasons set forth herein, the Debtors believe that "cause" exists.

**A.     Factors Considered by Courts in Determining Whether to Extend Exclusivity Periods for "Cause."**

10. The exclusive periods are intended to afford a debtor the opportunity to propose a plan of reorganization and to solicit acceptances of the plan without the deterioration of and the disruption to the debtor's business operations that might be caused by the filing of competing plans by third parties. Bankruptcy Code Section 1121(d) allows the Bankruptcy Court to extend the exclusive periods "for cause." Specifically, Bankruptcy Code Section 1121(d) provides:

> (1) Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.
>
> (2) (A) The 120-day period specified in paragraph (1) may not be extended beyond a date that is 18 months after the date of the order for relief under this chapter.

---

without the necessity for the entry of a bridge order." See Del. Bankr. L.R. 9006-2. As such, the exclusive periods shall be automatically extended until the Bankruptcy Court acts on this Motion.

>(B) The 180-day period specified in paragraph (1) may not be extended beyond a date that is 20 months after the date of the order for relief under this chapter.

11 U.S.C. § 1121(d).

11. It is well established that the decision to extend the exclusive periods is left to the sound discretion of the Bankruptcy Court and should be based upon the facts and circumstances of the particular case.[4] See First Am. Bank of N.Y. v. Southwest Gloves and Safety Equip., Inc., 64 B.R. 963, 965 (D. Del. 1986); In re Reetz, 61 B.R. 412, 414 (Bankr. W.D. Wis. 1986). Although the Bankruptcy Code does not define "cause" for purposes of extensions to exclusive periods, courts have looked to the legislative history of Bankruptcy Code Section 1121(d) for guidance. See In re Gibson & Cushman Dredging Corp., 101 B.R. 405, 409 (E.D.N.Y. 1989); In re Amko Plastics, Inc., 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996). Indeed, courts have found that Congress did not intend the 120- and 180-day periods to be a hard and fast rule. See Amko Plastics, 197 B.R. at 77 (noting that Congress intended courts to have flexibility in dealing with extensions of exclusivity); Gaines v. Perkins (In re Perkins), 71 B.R. 294, 297 (W.D. Tenn. 1987) ("The hallmark of . . . [Section 1121(d)] is flexibility."). Rather, Congress intended the exclusive periods to be of an adequate length, given the circumstances, for a debtor to formulate, negotiate, and draft a viable plan of reorganization, which by definition means one supported by some or all of a debtor's key constituents, without the disruption to its business that would occur with the filing of competing plans. See Geriatrics Nursing Home v. First Fidelity Bank, N.A., 187 B.R. 128, 133 (D.N.J. 1995) ("The opportunity to negotiate its plan unimpaired by

---

[4] Although the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") amended Section 1121(d) by prohibiting extensions of the Exclusive Filing Period and Exclusive Solicitation Period beyond 18 and 20 months of the petition date, respectively, there was no revision to the standards for obtaining interim extensions. Accordingly, pre-BAPCPA case law continues to apply and must be examined in the context of these Chapter 11 Cases.

competition, the court held, is meant to allow the debtor time to satisfy all creditors and win support for its restructuring scheme and thus ensure its survival as a business.").

12. Courts have relied on each of the following factors, among others, in determining whether cause exists to extend the exclusive periods: (i) the size and complexity of the case; (ii) the necessity of sufficient time to negotiate and prepare adequate information; (iii) the existence of good faith progress toward reorganization; (iv) whether the debtor is paying its debts as they come due; (v) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (vi) whether the debtor has made progress in negotiating with creditors; (vii) the length of time the case has been pending; (viii) whether the debtor is seeking the extension to pressure creditors; and (ix) whether unresolved contingencies exist. See, e.g., Cont'l Casualty Co. v. Burns & Roe Enters., Inc., 2005 U.S. Dist. LEXIS 26247, at *11-12 (D.N.J. 2005); In re Gibson, 101 B.R. at 409-10 (E.D.N.Y. 1989); In re Cent. Jersey Airport Servs., LLC, 282 B.R. 176, 184 (Bankr. D.N.J. 2002); In re Express One Int'l Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); In re Grand Traverse Dev. Co. Ltd. P'ship, 147 B.R. 418, 420 (Bankr. W.D. Mich. 1992); In re Sw. Oil Co. of Jourdanton, Inc., 84 B.R. 448, 451-54 (Bankr. W.D. Tex. 1987). The application of these factors to the facts and circumstances of these Chapter 11 Cases demonstrates that the requested extensions are both appropriate and necessary.

**B.     Cause Exists for an Extension of the Exclusive Periods in These Chapter 11 Cases.**

13. As described in the First Exclusivity Extension Motion, in the months prior to the Petition Date, the Debtors diligently evaluated, in consultation with their advisors, a number of options to address the Debtors' looming liquidity issues in a sustained low commodity price environment. The Debtors commenced extensive, arms-length negotiations with the Prepetition Lenders and the Ad Hoc Committee regarding the terms of a restructuring support agreement outlining the terms of a plan. While the Debtors, the Prepetition Lenders, and the Ad Hoc

Committee were unable to agree on the terms of a restructuring support agreement prior to the Petition Date, the Debtors continued to negotiate postpetition with the Prepetition Lenders and the Ad Hoc Committee. As a result of such efforts, the parties reached an agreement in principal on the framework for a consensual plan of reorganization. The Debtors disclosed the high level terms of such agreement in an 8-K filed with the Securities and Exchange Commission on September 30, 2016 and presented such terms to the Court at the hearing to consider the First Exclusivity Extension Motion on October 13, 2016. Since that time, the Debtors, the Prepetition Lenders, and the Ad Hoc Committee continued to work diligently to negotiate certain additional terms of a consensual plan. While substantial progress has been made, the parties are still in the process of finalizing a restructuring support agreement and certain ancillary documents memorializing the final terms and conditions of a consensual deal. The Debtors, the Prepetition Lenders, and the Ad Hoc Committee have exchanged numerous drafts of such documents and have made significant progress toward the resolution of the outstanding issues. Accordingly, the Debtors believe that extending the exclusive periods will provide all parties involved in the negotiations the opportunity to finalize the restructuring support agreement and will allow the Debtors the time necessary to prepare and file a disclosure statement and a plan of reorganization that will maximize the interests of all of the Debtors' creditors and other parties in interest.

14. Additionally, the Debtors believe that cause exists to extend the exclusive periods for the following reasons:

    **(a)**     **The Size, Complexity, and Duration of These Chapter 11 Cases**

15. As set forth in the First Exclusivity Motion, these Chapter 11 Cases are large in size and complex in nature. As of June 30, 2016, the Debtors reported assets and liabilities of approximately $937.4 million and $1.95 billion, respectively, and, in the twelve months ending

June 30, 2016, the Debtors' revenues were approximately $251.3 million. Furthermore, the Debtors operate in a complex industry and their business relationships create a complicated network of parties in interest. The Debtors are involved in the acquisition, exploration, development, production, and operation of oil and natural gas properties primarily in Oklahoma and Texas. As of the Petition Date, the Debtors had 354 employees, who either work in the Debtors' headquarters or assist in maintaining and operating the Debtors' approximately 1,900 wells in which the Debtors serve as the Operator under various Joint Operating Agreements. The Debtors are also party to over 13,000 contracts and leases and believe that they have over 30,000 creditors.

16. Because of the complexity of these Chapter 11 Cases, the Debtors had to request an extension of time to file their respective schedules of assets and liabilities and statements of financial affairs (the "**Schedules and Statements**"). As a consequence and after discussions with the U.S. Trustee, the Debtors deferred setting a bar date until August 19, 2016. Given the number of creditors that the Debtors have and the number of contracts to which they are a party, it is essential that the Debtors have sufficient time to ascertain the nature and extent of claims that may have to be dealt with under a plan.

17. Accordingly, the size and complexity of the Chapter 11 Cases weighs in favor of granting an extension of the exclusive periods.

**(b)    Good Faith Progress Made in These Chapter 11 Cases**

18. As noted above, the Debtors continue to make good faith progress towards the development of a consensual chapter 11 plan with the Prepetition Lenders and the Ad Hoc Committee. In addition, the Debtors have worked diligently on a number of critical matters since the Petition Date in addition to the typical day-to-day obligations that debtors in possession

face.  Specifically, since the Petition Date, the Debtors have addressed several complex and/or contested issues, including but not limited to the following:

      a. **Obtaining First Day Relief**.  The Debtors stabilized their business operations through various operational first day motions and orders.  This allowed them to, among other things, pay employees, preserve valuable tax attributes, pay certain lien claimants and utility providers, and continue using their cash management system.  The complex nature of many of the Debtors' "first day" motions is highlighted by the fact that both the cash collateral and the cash management motions are still outstanding, as the Debtors continue to research, analyze, and resolve issues and objections.  In addition, the Debtors have continued to respond to creditor inquiries and address various issues (such as the termination of utility services or vendor services) as they have arisen.

      b. **Filing, Amending, and Responding to Inquiries Regarding Schedules of Assets and Liabilities and Statements of Financial Affairs.**  The Debtors filed their Schedules and Statements after compiling information from books, records, and documents relating to thousands of claims, assets, and contracts from each Debtor entity.  After receiving comments from the U.S. Trustee, the Debtors amended their Schedules and Statements on August 9, 2016 and August 18, 2016.

      c. **Monitoring, Responding to, and Extending the Time to Remove Civil Causes of Action**.  The Debtors have continued to monitor and, where needed, file pleadings or respond to interested parties regarding the applicability of the stay in various state-court proceedings.  They also filed a motion to extend the time to decide whether to remove civil actions.

19.    Consistent with their fiduciary duties, the Debtors will use these extended exclusive periods to continue to work cooperatively with all interested parties on the terms of a global settlement, to finalize the restructuring support agreement and ancillary documents, and to prepare and propose in good faith a chapter 11 plan that maximizes value for all stakeholders. The Debtors' substantial progress in negotiating with their creditors and administering their cases supports the extension of the exclusive periods.

      **(c)    The Debtors Are Paying Their Debts as They Come Due**

20.    Further extension of the exclusive periods will not prejudice the legitimate interests of postpetition creditors because the Debtors continue to make timely payments on their

9

undisputed postpetition obligations. As such, this factor weighs in favor of allowing the Debtors to extend the exclusive periods.

### (d) The Debtors Are Not Seeking an Extension to Pressure Creditors

21. The Debtors have no ulterior motive in seeking an additional extension of the exclusive periods. The Debtors have worked diligently in the prepetition and postpetition periods to maximize the value of their estates. The Debtors have been in regular communication with creditors on numerous issues facing the estates, including the terms of any chapter 11 plan and disclosure statement. The Debtors are not seeking an extension to pressure their creditors to take any action, but only to ensure that the Debtors can pursue emergence free from distraction.

22. Based upon the foregoing, the Debtors respectfully submit that cause exists in these Chapter 11 Cases to extend further the Exclusive Filing Period to, through and including January 11, 2017 and to extend further the Exclusive Solicitation Period to, through and including March 13, 2017 pursuant to Bankruptcy Code Section 1121(d).

### Notice

23. Notice of this Motion will be given to: (a) the Office of the U.S. Trustee; (b) counsel to the administrative agent for the Debtors' prepetition secured financing; (c) counsel to the indenture trustee under the Debtors' 9.875% senior notes due 2020; (d) counsel to the indenture trustee under the Debtors' 8.25% senior notes due 2021; (e) counsel to the indenture trustee under the Debtors' 7.625% senior notes due 2022; (f) counsel to the Ad Hoc Committee; (g) the Internal Revenue Service; (h) the United States Attorney for the District of Delaware; (i) the Attorneys General for the states of Oklahoma, Texas, and Kansas; (j) the Environmental Protection Agency or applicable similar state agency; (k) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; and (l) all parties entitled to notice

pursuant to Local Rule 9013-1(m).  The Debtors submit that, under the circumstances, no other or further notice is required.

**Conclusion**

WHEREFORE, the Debtors respectfully request that the Bankruptcy Court enter the Order, substantially in the form attached hereto as <u>Exhibit A</u>, (i) extending the Exclusive Filing Period to, through, and including January 11, 2017, (ii) extending the Exclusive Solicitation Period to, through, and including March 13, 2017, and (iii) granting such other relief as is just and proper.

Dated: November 7, 2016
Wilmington, Delaware

*/s/ Joseph C. Barsalona II*
Mark D. Collins (No. 2981)
John H. Knight (No. 3848)
Joseph C. Barsalona II (No. 6102)
Brendan J. Schlauch (No. 6115)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King St.
Wilmington, Delaware 19801
Telephone: 302-651-7700
Fax: 302-651-7701
E-mail: collins@rlf.com
    knight@rlf.com
    barsalona@rlf.com
    schlauch@rlf.com

- and -

Richard A. Levy
Keith A. Simon
Annemarie V. Reilly
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022-4834
Telephone: 212-906-1200
Fax: 212-751-4864
Email: richard.levy@lw.com
    keith.simon@lw.com
    annemarie.reilly@lw.com

*Counsel for Debtors and Debtors in Possession*