**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------x
In re:

CHAPARRAL ENERGY, INC., et al.,

        Debtors.[1]

------------------------------------------------------------x

: Chapter 11
:
: Case No. 16-11144 (LSS)
:
: Jointly Administered
:
: **Prop. Hearing Date: Dec. 7, 2016 at 10:00 a.m. (EST)**
: **Prop. Obj. Deadline: Dec. 6, 2016 at 12:00 p.m. (EST)**

**DEBTORS' MOTION FOR ORDER PURSUANT TO
11 U.S.C. §§ 105 AND 363 AND FED. R. BANKR. P. 9019 APPROVING
<u>RETIREMENT AGREEMENT AND GENERAL RELEASE WITH MARK A. FISCHER</u>**

The debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") hereby move (the "**Motion**") for entry of an order (the "**Order**"), substantially in the form attached hereto as <u>Exhibit A</u>, under sections 105(a) and 363(b) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), approving the Retirement Agreement and General Release attached to the Order as <u>Exhibit 1</u> (the "**Retirement Agreement**") between Chaparral Energy, Inc. (the "**Company**") and Mr. Mark A. Fischer ("**Mr. Fischer**"). In support of this Motion, the Debtors respectfully submit as follows:

---

[1]     The Debtors in these cases, along with the last four digits (or five digits, in cases in which multiple Debtors have the same last four digits) of each Debtor's federal tax identification number, are: CEI Acquisition, L.L.C. (1817); CEI Pipeline, L.L.C. (6877); Chaparral Biofuels, L.L.C. (1066); Chaparral CO2, L.L.C. (1656); Chaparral Energy, Inc. (90941); Chaparral Energy, L.L.C. (20941); Chaparral Exploration, L.L.C. (1968); Chaparral Real Estate, L.L.C. (1655); Chaparral Resources, L.L.C. (1710); Green Country Supply, Inc. (2723); and Roadrunner Drilling, L.L.C. (2399). The Debtors' address is 701 Cedar Lake Blvd., Oklahoma City, OK 73114.

US-DOCS\73211204.8

**JURISDICTION**

1. The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.

**BACKGROUND**

3. On May 9, 2016 (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing cases for relief under Chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The Debtors continue to manage and operate their businesses pursuant to Bankruptcy Code Sections 1107 and 1108. No trustee or examiner has been requested in these Chapter 11 Cases and no committees have yet been appointed.

4. A description of the Debtors' businesses and the reasons for commencing these Chapter 11 Cases is set forth in the *Declaration of Mark A. Fischer, Chief Executive Officer of Chaparral Energy, Inc. in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 14] (the "**Fischer Declaration**"),[2] filed on May 10, 2016 and fully incorporated herein by reference.

**THE RETIREMENT AGREEMENT**

5. Mr. Fischer founded the Company in 1988. Since the Company's inception twenty eight years ago, Mr. Fischer has served as the Chairman of the Company's board of directors and as its Chief Executive Office, and remains the largest shareholder. The current terms of Mr. Fischer's employment are set forth in that certain employment agreement dated as

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Retirement Agreement or the Fischer Declaration, as applicable.

of April 10, 2010, a copy of which is attached hereto as Exhibit B (the "**Employment Agreement**").

7. Concurrently herewith, the Debtors filed their *Motion of Debtors for an Order Pursuant to 11 U.S.C. §§ 105(a) and 363(b) Authorizing Their Entry into and Performance under the Plan Support Agreement and Granting Related Relief* (the "**PSA Motion**"). The plan support agreement (the "**PSA**") provides a framework for a consensual chapter 11 plan of reorganization agreed upon with the Debtors' secured revolving lenders (the "**Prepetition Lenders**") and their unsecured noteholders (the "**Noteholders**"). The PSA commits the Debtors, the Prepetition Lenders party thereto, and the Noteholders party thereto[3] to seek the confirmation and consummation of a consensual plan of reorganization (the "**Plan**") designed to implement a comprehensive balance sheet restructuring of the Debtors, all as set forth in the plan term sheet attached to the PSA as **Exhibit A** (the "**Plan Term Sheet**").

7. Having spearheaded the successful negotiations of the terms and conditions of the Plan and the Debtors' go-forward business strategy, Mr. Fischer will retire from his chief executive officer and director positions with the Company and assist the Company's current chief operating officer, Earl Reynolds, in assuming his responsibilities as the Company's next chief executive officer. Mr. Fischer's retirement has the support of the Debtors and the Consenting Creditors. The terms of Mr. Fischer's retirement are set forth in the Retirement Agreement, which is the product of extensive negotiations among Mr. Fischer, the Debtors and the Consenting Creditors. The Retirement Agreement settles all claims under Mr. Fischer's Employment Agreements and provides other benefits to the Debtors and their stakeholders, including Mr. Fischer's services as a consultant to facilitate the emergence of the Debtors from

---

[3] Such Prepetition Lenders and Noteholders are collectively referred to herein as the "**Consenting Creditors**".

bankruptcy and the transition of ownership and control of the Debtors' business to the Noteholders pursuant to the Plan.

8.      Based on amounts owing to Mr. Fischer under his Employment Agreement, the Debtors scheduled Mr. Fischer's claim for accrued, but unpaid, compensation and benefits in the amount of $306,681 (the "**Scheduled Fischer Claim**").  Furthermore, pursuant to the Employment Agreement, if Mr. Fischer's employment is terminated by the Company without Cause (as defined in the Employment Agreement) or by Mr. Fischer for Good Reason (as defined in the Employment Agreement) at any time within two (2) years after the occurrence of a Change in Control (as defined in the Employment Agreement), Mr. Fischer is entitled, among other things, to (i) a severance payment of $5,181,103.38, which represents three times the sum of his base salary (i.e., $830,305) plus his most recent annual bonus (i.e., $896,729.46), plus (ii) any and all other contingent obligations currently owing, or which may become due and owing, to Mr. Fischer under the Employment Agreement (collectively, together with the claim for severance, the "**Additional Obligations**").  The Change of Control will occur on the effective date of the Plan (the "**Plan Effective Date**").

9.      Were the Employment Agreement terminated through its rejection pursuant to Section 365(a) of the Bankruptcy Code, Mr. Fischer's severance claim would be subject to the limitation under Section 502(b)(7) of the Bankruptcy Code.  However, such termination would materially jeopardize the Debtors' ability to enforce the terms of the Employment Agreement's confidentiality, non-compete, and non-solicitation covenants.  See Employment Agreement, ¶ 9(a)-(c).  Those covenants are exceedingly important to the Debtors and their restructuring efforts given Mr. Fischer's extensive and intricate knowledge of the Debtors' business operations that he accumulated since he founded the Debtors twenty eight years ago.

10. Given the uncertainty, risk, and cost associated with Mr. Fischer's departure from the Debtors, whether effectuated through the rejection of the Employment Agreement or otherwise, Mr. Fischer, the Debtors and the Consenting Creditors engaged in good faith, arms' length negotiations over the terms and conditions of Mr. Fischer's voluntary retirement from the Debtors. Those terms and conditions are embodied in the Retirement Agreement, which in large part essentially amends and restates the provisions of the Employment Agreement relating to Mr. Fischer's departure from the Debtors. In summary, the Retirement Agreement provides for the following, in pertinent part:[4]

### THE TRANSITION PERIOD

(i) **Continued Role as CEO - ¶1(a)(i)**. In the period between the date of the Retirement Agreement (the "**Agreement Date**") and the date that the Retirement Agreement is approved by the Court (the "**Approval Date**"), Mr. Fischer will be expected to report to work and to continue his responsibilities as Chief Executive Officer on a full-time basis.

(ii) **Consulting Services; Retirement Date - ¶1(a)(ii)**. Effective as of the Approval Date, Mr. Fischer's employment pursuant to the Employment Agreement will cease to be of any further force and effect, except as specifically set forth in the Retirement Agreement, and Mr. Fischer will be deemed to have resigned from all positions (including any board positions) with the Debtors. Commencing on the Approval Date, Mr. Fischer will provide consulting services to the Company, as requested by the board of directors of the Company, until the earlier of (i) December 31, 2016 or (ii) the Plan Effective Date (such date, the "**Retirement Date**" and such period, the "**Consulting Period**").

(iii) **Consulting Fee and Warrant - ¶1(b)**. For as long as Mr. Fischer remains a consultant to the Debtors during the Consulting Period, Mr. Fischer will receive a monthly fee of $74,192.09. In consideration of Mr. Fischer's performance of the consulting services and subject to Mr. Fischer's compliance with the Retirement Agreement, on the Plan Effective Date, the Debtors will grant to Mr. Fischer a cashless exercise warrant (the "**Warrant**") to purchase up to 0.37575% of the Class A Shares of the reorganized Company issued on the Plan Effective Date on a fully diluted basis.[5] The Warrant will expire on June 30, 2018 and will have a strike price equal to that which

---

[4] To the extent of any inconsistency between the summary of the Retirement Agreement set forth herein and the Retirement Agreement, the terms and conditions of the Retirement Agreement shall govern.

[5] Notwithstanding the foregoing, Mr. Fischer may elect to receive the agreed upon cash value of the Warrant on the Plan Effective Date in lieu of the grant.

would reflect a 100% recovery of all outstanding principal and accrued interest to holders of the Unsecured Notes Claims as of June 30, 2018.

## THE RETIREMENT PACKAGE

(iv) **Initial Payment - ¶3(a)**. On the Approval Date, the Company will pay to Mr. Fischer $2 million, less applicable withholdings and deductions (the "**Initial Payment**"). Mr. Fischer agrees and represents that he will invest the Initial Payment into a segregated account (the "**Segregated Account**") and will not draw on or access the Initial Payment funds until the later of (i) the fifth business day following the Plan Effective Date and (ii) further order of this Court (the "**Payment Date**"); provided that the Payment Date may be further delayed in the event that Mr. Fischer receives notice of an alleged breach of the Retirement Agreement prior to the fifth business day following the Plan Effective Date, at which time the payment date will be determined under the terms of the Retirement Agreement.

(v) **The Effective Date Payment - ¶3(b)**. On the Approval Date, the Company will deposit $1 million into a segregated account (the "**Effective Date Payment**") to be paid to Mr. Fischer on the Payment Date.

(vi) **The Additional Payment - ¶3(c)**. On the Approval Date, the Company will pay to Mr. Fischer an additional payment of $149,454.91, less applicable withholdings and deductions as provided herein (the "**Additional Payment**").[6]

(vii) **Forfeiture - ¶3(d) & (g)**. The Initial Payment, Additional Payment and Effective Date Payment and other consideration provided under the Retirement Agreement will be in lieu, and, except as otherwise provided in the Retirement Agreement, in full and final satisfaction, of any claims and benefits that may otherwise be payable pursuant to the Employment Agreement or otherwise, including specifically the Scheduled Fischer Claim and the Additional Obligations. Moreover, Mr. Fischer shall not be entitled to retain any of the Initial Payment or the Effective Date Payment if an order has been entered determining Mr. Fischer to be in material breach of the Retirement Agreement and such order has become final and non-appealable. Mr. Fischer also will not be entitled to an annual bonus with respect to the 2016 fiscal year and any of his outstanding equity-based awards will be cancelled as of the Approval Date.

(viii) **Other Property - ¶3(e)**. As soon as practicable after the Plan Effective Date, the Company will transfer to Mr. Fischer title of (i) the company-owned 2013 Lexus Model LS460 currently in use by Mr. Fischer and (ii) the Company's 1987 King Air B300 twin engine turboprop aircraft (the "**Aircraft**") and, in connection therewith, Mr. Fischer will assume all associated liabilities and obligations and any related contracts, which for avoidance of doubt, excludes liabilities owing at any time by the Debtors to the Aircraft pilot. The Company will also allow Mr. Fischer to retain the personal property listed in Schedule I to the Retirement Agreement.

---

[6] This amount represents the portion of his 2015 annual incentive bonus payment which Mr. Fischer agreed, prior to the petition date, to defer until September 9, 2016.

(ix) **Benefit Continuation - ¶3(f)**.  As contemplated by the Employment Agreement, the Company will maintain in full force and effect, for the continued benefit of Mr. Fischer (and Mr. Fischer's spouse and/or eligible dependents ("**Dependents**"), as applicable) for a period of 18 months following the Approval Date, participation by Mr. Fischer (and the Dependents, as applicable) in the medical, hospitalization and dental programs maintained by the Company for the benefit of its senior executive officers as in effect on the Approval Date, at such level and terms and conditions (including, without limitation, contributions required by Mr. Fischer for such benefits) as in effect on the Approval Date.

### COVENANTS OF MR. FISCHER

(x) **Release of Claims - ¶4(a)**.  As a condition of receiving the consideration described above, Mr. Fischer must execute and deliver to the Company the Release of Claims attached to the Retirement Agreement as Exhibit B (the "**General Release**"), and such General Release must become effective and irrevocable by Mr. Fischer under all applicable law and its terms.  Mr. Fischer further will be deemed to have granted the same third party releases as other claimants under the Debtors' Plan.

(xi) **Non-Solicitation - ¶5**.  Mr. Fischer will not, during the Transition Period and for a period of 24 months following the Retirement Date, either personally or by or through his agent or by letters, circulars or advertisements and whether for himself or on behalf of any other person or entity, hire, solicit or seek to hire any employee or consultant of the Debtors, or in any other manner attempt, directly or indirectly, to persuade any such employee or consultant to discontinue his/her status of employment or consultancy with the Debtors or to become hired in any business or activities likely to be competitive with the Debtors.

(xii) **Non-Disparagement - ¶6**.  Mr. Fischer will not make or cause to be made any negative, adverse or derogatory comments or communications that could constitute disparagement of any Debtor or any Consenting Noteholder, or their respective owners, officers or directors, or that may be considered to be derogatory or detrimental to the good name or business reputation of any of the foregoing, including but not limited to the business affairs, financial condition or prospects of any of the Debtors.  The Company will instruct its executive officers and its board of directors not to disparage or defame Mr. Fischer.  Each Consenting Noteholder will not disparage or defame Mr. Fischer.

(xiii) **Non-Competition - ¶7**.  In consideration for the Retirement Package, Mr. Fischer has agreed that the "Covered Period" for the purposes of Section 9(c) of the Employment Agreement will mean the Transition Period and 24 months following the Retirement Date; provided, however that "Competing Business" shall be defined by reference to the Company's regions of operation as of the Agreement Date.  For the avoidance of doubt, Mr. Fischer will not serve as a member of the board of directors of any Competitor (as defined in the Employment Agreement) in the regions in which the Company operates.

**RELIEF REQUESTED**

11. Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtors request that the Court enter the Order approving the Retirement Agreement.[7]

**BASIS FOR RELIEF**

**I. The Court Should Approve the Retirement Agreement Under Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019**

   **A. The Retirement Agreement Is Fair and Reasonable and in the Best Interests of the Debtors' Estate and Creditors**

13. Section 105(a) provides, in pertinent part, that the "[c]ourt may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).

14. Bankruptcy Rule 9019 governs the procedural prerequisites to approval of a settlement that the debtor is party to and provides that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  Taken together, Section 105(a) and Bankruptcy Rule 9019(a) grant a bankruptcy court with the power to approve a proposed compromise and settlement when it is in the best interests of the debtor's estate and its creditors.  See In re Marvel Entm't Grp., Inc., 222 B.R. 243, 249 (D. Del. 1998); In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997).  The Third Circuit has emphasized that "[t]o minimize litigation and expedite the administration of a bankruptcy estate, [c]ompromises are favored in bankruptcy."  Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (second alteration in original) (internal quotation marks omitted) (quoting 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health

---

[7] In the alternative, the Debtors request that the Court authorize the Debtors to amend the Employment Agreement in a manner consistent with the Retirement Agreement and to approve the Debtors' assumption of the Employment Agreement as amended pursuant to Section 365(a) of the Bankruptcy Code.

Alts., Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding that settlements are "generally favored in bankruptcy"). Furthermore, the decision to accept or reject a compromise or settlement is within the sound discretion of the Court. In re Capmark Fin. Grp. Inc., 438 B.R. 471, 515 (Bankr. D. Del. 2010); In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

15. Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." In re Marvel Entm't Grp., Inc., 222 B.R. at 249 (quoting In re Louise's, Inc., 211 B.R. at 801). Fundamental to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 425 (1968). The court need not be convinced that the settlement is the best possible compromise in order to approve it. In re Coram Healthcare Corp., 315 B.R. at 330. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants Representative, Civ. No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Aetna Cas. & Sur. Co. v. Jasmine, Ltd. (In re Jasmine, Ltd.), 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at 330.

16. When determining whether a settlement falls within the range of reasonableness, courts in this district generally consider the following four factors (the "**Martin Factors**"): "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." In re Martin, 91 F.3d at 393 (citing

9

In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

17.     The Debtors respectfully submit that the Retirement Agreement satisfies the standard for approval under Bankruptcy Rule 9019.  With respect to the first Martin Factor, the probability of success in any litigation regarding the enforcement of the confidentiality, non-compete, and non-solicitation provisions in the Employment Agreement, is unknown, therefore weighing in favor of approval of the Retirement Agreement.  With regard to the second and third Martin Factors, the difficulties in collection and complexity of the litigation are currently unknown given that the Debtors have not yet rejected or otherwise breached the Employment Agreement, but they fully expect Mr. Fischer would vigorously oppose any attempt to enforce his confidentiality, non-compete, and non-solicitation provisions after rejection of his Employment Agreement.  In addition, Mr. Fischer's voluntary retirement prior to the Plan Effective Date greatly benefits Debtors and its stakeholders by providing for a smooth and seamless transition of the chief executive officer position in advance of the Debtors' emergence from bankruptcy.  For these reasons, the Debtors believe that the balance of the Martin Factors weighs toward approval of the Retirement Agreement.

      **B. Entry Into the Retirement Agreement is a Sound Exercise of the Debtors' Business Judgment Under Section 363 of the Bankruptcy Code**

18.     Under Section 363(b)(1) of the Bankruptcy Code, the debtor-in-possession may use property of the estate "other than in the ordinary course of business" after notice and a hearing.  11 U.S.C. § 363(1)(1).  Section 363 applies when an agreement involves the disposition of the estate's assets in such a way that it ventures beyond an ordinary course transaction.  See In re Martin, 91 F.3d at 394-95.

19.     In determining whether to authorize the use or transfer of estate property under Section 363(b)(1), the Court must find that such use or transfer is supported by a "sound business purpose." In re Decora Indus., Inc., No. 00-4459, 2002 WL 32332749, at *2 (D. Del. May 20, 2002); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re Del. & Hudson Ry. Co., 124 B.R. 169, 175-76 (D. Del. 1991). A court determining whether a sound business purpose justifies the transaction "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike." Montgomery Ward, 242 B.R. at 153-54 (quoting Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983)). In addition, a debtor must show that the transaction has been proposed in good faith, that adequate and reasonable notice has been provided and that it is receiving fair and reasonable value in exchange. See In re Decora Indus., Inc., 2002 WL 32332749, at *2; In re Del. & Hudson Ry. Co., 124 B.R. at 176.

20.     The business judgment rule under Section 363(b)(1) shields a debtor from judicial second-guessing. See Abbotts Dairies of Pa., Inc., 788 F.2d 143, 149-50 (3d Cir. 1986) (applying a good faith standard to a transaction by debtor); Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a debtor's management decisions"). "In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b), courts consider a variety of factors, which essentially represent a 'business judgment test.'" Montgomery Ward, 242 B.R. at 153. Where a debtor "articulates a reasonable basis for its business decisions . . . , courts will generally not entertain objections to the debtor's conduct." Johns-Manville, 60 B.R. at 616.

11

21. Here, it is clear that entry into the Retirement Agreement represents a proper exercise of the Debtors' business judgment because it is an integral part of the Plan Support Agreement and Plan Term Sheet agreed upon by the Debtors and the Consenting Creditors. Further, it will allow the Debtors to more efficiently emerge from these Chapter 11 Cases (with the new chief executive officer in place during the critically important next few weeks as the Debtors prepare for their exit from bankruptcy), while avoiding any costs and risks in litigation over the continued enforcement of the confidentiality, non-compete, and non-solicitation provisions in the Employment Agreement. As a result, the Debtors respectfully submit that entry into the Retirement Agreement is reasonable and should be approved.

### BANKRUPTCY RULES 6004(A) AND 6004(H)

22. The Debtors also request that this Court deem satisfied the requirements of Bankruptcy Rule 6004(a), which requires 21 days' notice of a proposed use of property of the estate, and waive the requirements of Bankruptcy Rule 6004(h), which stays orders authorizing the use of property by fourteen (14) days "unless the court orders otherwise." See Fed. R. Bank. P. 6004(a),(h). Here, the immediate implementation of the Retirement Agreement is important to permit the Debtors to effect the terms of the Plan Support Agreement. Accordingly, the Debtors respectfully request that this Court deem satisfied the notice requirements of Bankruptcy Rule 6004(a) and waive the stay imposed by Bankruptcy Rule 6004(h), to the extent applicable, as the exigent nature of the relief sought herein justifies immediate relief.

### NOTICE

23. Notice of this Motion will be given to: (a) the United States Trustee for the District of Delaware; (b) counsel to the administrative agent for the Debtors' prepetition secured financing; (c) counsel to the indenture trustee under the Debtors' 9.875% senior notes due 2020; (d) counsel to the indenture trustee under the Debtors' 8.25% senior notes due 2021; (e) counsel

to the indenture trustee under the Debtors' 7.625% senior notes due 2022; (f) counsel to the ad hoc group of the holders of the Debtors' prepetition unsecured notes; (g) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (h) those parties that have requested notice pursuant to Bankruptcy Rule 2002; and (i) Mr. Fischer.  The Debtors submit that, under the circumstances, no other or further notice is required.

## NO PREVIOUS REQUEST

24. The Debtors have not previously sought the relief requested herein from this or any other Court.

WHEREFORE, the Debtors respectfully request entry of the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and such other and further relief as may be appropriate and proper.

Dated: November 23, 2016
      Wilmington, Delaware

          /s/ Joseph C. Barsalona II
      Mark D. Collins (No. 2981)
      John H. Knight (No. 3848)
      Joseph C. Barsalona II (No. 6102)
      Brendan J. Schlauch (No. 6115)
      RICHARDS, LAYTON & FINGER, P.A.
      One Rodney Square
      920 North King Street
      Wilmington, Delaware 19801
      Telephone: 302-651-7700
      Fax: 302-651-7701
      E-mail: collins@rlf.com
              knight@rlf.com
              barsalona@rlf.com
              schlauch@rlf.com

      - and -

      Richard A. Levy
      Keith A. Simon
      David F. McElhoe
      LATHAM & WATKINS LLP
      885 Third Avenue
      New York, New York 10022-4834
      Telephone: 212-906-1200
      Fax: 212-751-4864
      Email: richard.levy@lw.com
             keith.simon@lw.com
             david.mcelhoe@lw.com

      *Counsel for Debtors and Debtors in Possession*