**EXHIBIT D**

Liquidation Analysis

# INTRODUCTION

Under the "best interests" of creditors test set forth in section 1129(a)(7) of the Bankruptcy Code, the Bankruptcy Court may not confirm a plan of reorganization unless the plan provides each holder of a claim or interest who does not otherwise vote in favor of the plan with property of a value, as of the Effective Date of the plan, that is not less than the amount that such holder would receive or retain if the debtor was liquidated under chapter 7 of the Bankruptcy Code. To demonstrate that the proposed Plan satisfies the "best interests" of creditors test, Opportune LLP ("Opportune") with the assistance of the Debtors, has prepared the following hypothetical liquidation analysis (the "Liquidation Analysis"), which is based upon certain assumptions discussed in the Disclosure Statement and in the accompanying notes to the Liquidation Analysis.

All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Disclosure Statement for the Debtors' Proposed Joint Chapter 11 Plan of Reorganization* (the "Disclosure Statement") pursuant to chapter 11 of the Bankruptcy code to which this Liquidation Analysis is attached.

**Statement of Limitations:**

The determination of the costs of, and proceeds from, the hypothetical liquidation of the Debtors' assets in a chapter 7 case is an uncertain process involving the extensive use of significant estimates and assumptions that, although considered reasonable by the Debtors based upon their business judgment and input from their advisors, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Debtors, their management and their advisors. Inevitably, some assumptions in the Liquidation Analysis would likely not materialize in an actual chapter 7 liquidation, and unanticipated events and circumstances could materially affect the ultimate results in a chapter 7 liquidation, including but not limited to the uncertainty of the currently volatile oil and gas pricing environment. The Liquidation Analysis was prepared for the sole purpose of generating a reasonable good faith estimate of the proceeds that would be generated if the Debtors' assets were liquidated in accordance with chapter 7 of the Bankruptcy Code. The Liquidation Analysis is not intended and should not be used for any other purpose. The underlying financial information in the Liquidation Analysis was not compiled or examined by independent accountants. NEITHER THE DEBTORS NOR THEIR ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REFLECTED IN THE LIQUIDATION ANALYSIS. ACTUAL RESULTS COULD VARY MATERIALLY.

THE RECOVERIES SHOWN DO NOT CONTEMPLATE A SALE OR SALES OF THE DEBTORS' ASSETS ON A GOING CONCERN BASIS. WHILE THE DEBTORS MAKE NO ASSURANCES, IT IS POSSIBLE THAT PROCEEDS RECEIVED FROM SUCH GOING CONCERN SALE(S) WOULD BE MORE THAN IN THE HYPOTHETICAL CHAPTER 7 LIQUIDATION, THE COSTS ASSOCIATED WITH THE SALE(S) COULD BE LESS, FEWER CLAIMS COULD BE ASSERTED AGAINST THE BANKRUPTCY ESTATES AND/OR CERTAIN ORDINARY COURSE CLAIMS COULD BE ASSUMED BY THE BUYER(S).

In preparing the Liquidation Analysis, the Debtors estimated Allowed Claims based upon a review of the Debtors financial statements to account for estimated liabilities as necessary. In addition, the Liquidation Analysis includes estimates for Claims not currently asserted in the Chapter 11 Cases, but

which could be asserted and allowed in a chapter 7 liquidation, including unpaid chapter 11 Administrative Claims, and chapter 7 administrative claims such as wind down costs and trustee fees and tax liabilities. To date, the Bankruptcy Court has not estimated or otherwise fixed the total amount of Allowed Claims used for purposes of preparing this Liquidation Analysis. Therefore, the Debtors' estimate of Allowed Claims set forth in the Liquidation Analysis should not be relied on for any other purpose, including determining the value of any distribution to be made on account of Allowed Claims and Interests under the Plan.

NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS IS INTENDED TO BE OR CONSTITUTES A CONCESSION OR ADMISSION BY THE DEBTORS. THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH IN THE LIQUIDATION ANALYSIS.

**Chapter 7 Conversion Date and Appointment of Chapter 7 Trustee:**

The Liquidation Analysis has been prepared assuming that the Debtors' chapter 11 cases are converted to Chapter 7 cases on or about March 31, 2017 (the "Chapter 7 Conversion Date"), which the Debtors estimate to be a reasonable proxy for the Effective Date. Except for Cash and Cash Equivalents and Oil and Gas Properties, which were subject to additional procedures to determine their estimated balance as of the Chapter 7 Conversion Date, the Liquidation Analysis is based upon the unaudited consolidated balance sheets of the Debtors as of November 30, 2016, and those values, are assumed to be representative of the Debtors' approximate assets and liabilities as of the Chapter 7 Conversion Date. It is assumed that, on the Chapter 7 Conversion Date, the Bankruptcy Court would appoint a Chapter 7 trustee (the "Trustee") who would sell all of the Debtors' major assets and distribute the cash proceeds, net of liquidation-related costs, to creditors in accordance with applicable bankruptcy law. There can be no assurance that the recoveries realized from the sale of the assets would, in fact, approximate the amounts reflected in this Liquidation Analysis. Under section 704 of the Bankruptcy Code, the Trustee must, among other duties, collect and convert the property of the estate as expeditiously as possible (generally at distressed prices), taking into account the best interests of stakeholders.

**Global Notes & Assumptions:**

The Liquidation Analysis should be read in conjunction with the following notes and assumptions:

1. The Liquidation Analysis assumes that the Debtors would be liquidated in a jointly administered and substantively consolidated proceeding.

2. *Dependence on unaudited financial statements* – The Liquidation Analysis contains numerous estimates. Proceeds available for recovery are based upon the unaudited financial statements and balance sheets of the Debtors as of November 30, 2016, unless otherwise noted.

3. *Chapter 7 Liquidation Costs & Length of Liquidation Process* – For the purposes of the Liquidation Analysis, the Debtors have assumed that the Trustee would take approximately four to six months to pursue orderly sales of substantially all the remaining oil and gas assets, monetize and collect receivables as well as other assets on the balance sheet, and otherwise administer and close the estates. While a four to six month liquidation process may be reasonable given the nature of the Debtors' assets, in an actual liquidation, the wind down

process and time period(s) could vary significantly, thereby impacting recoveries. For example, the uncertain duration and potential outcomes of the process to liquidate and allow Claims, including priority, contingent, litigation, rejection, and other Claims could substantially impact both the timing and the amounts of the distributions of asset proceeds to creditors. Accordingly, there can be no assurance that the values reflected in this Liquidation Analysis would be realized if the Debtors were, in fact, to undergo such liquidation.

Pursuant to section 726 of the Bankruptcy Code, the allowed administrative expenses incurred by the Trustee, including expenses associated with selling the Debtors' assets, would be entitled to payment in full prior to any distributions to chapter 11 Administrative Claims and Priority Tax Claims. The estimates used in the Liquidation Analysis for these expenses include estimates for operational expenses and certain legal, accounting and other professionals, as well as an assumed 3% fee payable to the Chapter 7 Trustee based on the amount of liquidated assets. It is assumed the Chapter 7 administrative and priority claims, post-chapter 7 conversion expenses and professional fees, and the Trustee fees are entitled to payment in full prior to any distribution to Holders of any other Claims.

4. *Additional Claims* – The cessation of business in a liquidation is likely to trigger certain Claims that otherwise would not exist under a Plan absent a liquidation. Examples of these kinds of Claims include various potential employee Claims, tax liabilities, Claims related to further rejection of unexpired leases and executory contracts, bonding or letters of credit for plugging and abandoning ("P&A") liabilities, litigation claims, and other potential Allowed Claims. While some of these Claims could be significant and, in certain instances, may be entitled to priority in payment over General Unsecured Claims, no adjustment has been made for these potential Claims.

5. *Preference or fraudulent transfers* – No recovery or related litigation costs have been attributed to any potential avoidance actions under the Bankruptcy Code, including potential preference or fraudulent transfer actions due to, among other issues, the costs of such litigation, the uncertainty of the outcome, and anticipated disputes regarding these matters.

6. *Distribution of Net Proceeds* – Chapter 11 Administrative Claim amounts and Priority Tax Claim amounts, trustee fees and other such Claims that may arise in a liquidation scenario would be paid in full from the liquidation proceeds before the balance of those proceeds can be made available to pay General Unsecured Claims. Under the absolute priority rule, no junior creditor would receive any distribution until all senior creditors are paid in full, and no equity holder would receive any distribution until all creditors are paid in full. The assumed distributions to creditors as reflected in the Liquidation Analysis are estimated in accordance with the absolute priority rule.

**Conclusion:**

The Debtors have determined, based on the following analysis, that upon the Effective Date, the Plan will provide all creditors and equity holders with a recovery (if any) that is not less than what they would otherwise receive pursuant to a liquidation of the Debtors under chapter 7 of the Bankruptcy Code, and as such believe that the Plan satisfies the requirement of section 1129(a)(7) of the Bankruptcy Code.

## NET PROCEEDS AVAILABLE FOR DISTRIBUTION

| | Notes | Estimated NBV March 31, 2017 | Low Potential Recovery % | Low Potential Recovery $ | High Potential Recovery % | High Potential Recovery $ |
|---|---|---|---|---|---|---|
| **CHAPARRAL ENERGY, INC. - CONSOLIDATED DEBTORS** | | | | | | |
| **Assets:** | | | | | | |
| Cash and Cash Equivalents | A | $ 163,656 | 100% | $ 163,656 | 100% | $ 163,656 |
| Accounts Receivable | B | 34,905 | 82% | 28,772 | 92% | 32,209 |
| Other Current Assets | C | 12,374 | 21% | 2,583 | 27% | 3,362 |
| Oil and Gas Properties | D | n/a | n/a | 630,000 | n/a | 840,000 |
| Other Non-Current Assets | E | 48,104 | 39% | 18,587 | 47% | 22,705 |
| **Gross Liquidation Proceeds** | | | | $ 843,597 | | $ 1,061,933 |
| **Liquidation Adjustments:** | | | | | | |
| Net Wind-Down Expenses | F | | | (14,700) | | (9,800) |
| Trustee Fees | G | | | (20,398) | | (26,948) |
| Trustee Legal & Financial Advisors | H | | | (20,398) | | (17,966) |
| **Subtotal** | | | | $ (55,496) | | $ (54,714) |
| **Net Liquidation Proceeds Available for Distribution:** | | | | $ 788,101 | | $ 1,007,219 |

## SUMMARY OF ESTIMATED CLAIMS RECOVERY

| | Notes | Claims Estimate | Liquidation Low Recovery Estimate % | Liquidation Low Recovery Estimate $ | Liquidation High Recovery Estimate % | Liquidation High Recovery Estimate $ | Plan[1] Recovery Estimate % |
|---|---|---|---|---|---|---|---|
| **CHAPARRAL ENERGY, INC. - CONSOLIDATED DEBTORS** | | | | | | | |
| Administrative Claims | I | $ 52,930 | 100% | $ 52,930 | 100% | $ 52,930 | 100% |
| Priority Tax Claims | J | 1,655 | 100% | 1,655 | 100% | 1,655 | 100% |
| Class 1 – Other Priority Claims | K | 1,680 | 100% | 1,680 | 100% | 1,680 | 100% |
| Class 2 – Other Secured Claims | L | 26,981 | 100% | 26,981 | 100% | 26,981 | 100% |
| Class 3 – Secured Tax Claims | M | - | 100% | - | 100% | - | 100% |
| Class 4 – Prepetition Credit Agreement Claims | N | 459,995 | 100% | 459,995 | 100% | 459,995 | 100% |
| **Unsecured Claims:** | | | | | | | |
| Class 5 – Prepetition Notes Claims | O | 1,267,410 | 19% | 242,210 | 36% | 458,957 | 65% |
| Class 6 – General Unsecured Claims | P | 6,365 | 19% | 1,216 | 36% | 2,305 | 65% |
| Class 7 – Convenience Class Claims | Q | - | 19% | - | 36% | - | 100% |
| Class 8 – Royalty Payment Litigation Claims | R | 7,500 | 19% | 1,433 | 36% | 2,716 | 65% |
| Total Unsecured Claims | | $ 1,281,275 | 19% | $ 244,859 | 36% | $ 463,977 | 65% |
| **Intercompany and Equity Claims:** | | | | | | | |
| Class 9 – Intercompany Claims | S | - | n/a | - | n/a | - | n/a |
| Class 10 – Old Parent Interests | T | - | n/a | - | n/a | - | n/a |
| Class 11 – Old Affiliate Interests in any Parent Subsidiary | U | - | n/a | - | n/a | - | n/a |
| Total Intercompany and Equity Claims | | $ - | n/a | $ - | n/a | $ - | n/a |
| **Total Estimated Claims and Recoveries** | | $ 1,824,517 | | $ 788,101 | | $ 1,007,219 | |

---

[1] The Plan proposes that certain unsecured claims will be considered "Convenience Class Claims", which shall receive 100% of the amount asserted in the Holder's Proof of Claim or in the Debtors' Schedules, as applicable. Additionally, the recovery in this chart for Class 8 – Royalty Payment Litigation Claims assumes that the Holders of Royalty Payment Litigation Claims vote to reject the Plan. For the avoidance of doubt, however, the Debtors dispute the validity and amount of all Royalty Payment Litigation Claims, and believe that such Claims have no value.

**Specific Notes to the Liquidation Analysis:**

*Gross Liquidation Proceeds -*

Except as noted herein, the Liquidation Analysis was developed using the unaudited balance sheets for the Debtors as of November 30, 2016. Historical balance sheet amounts, unless otherwise noted herein, are intended to be proxies for actual balances on the date of a hypothetical liquidation.

A. Cash & Cash Equivalents
Cash and Cash Equivalents consist of all bank accounts held by the Debtors, including deposit accounts and investment accounts. The pro forma balance is based on the Debtors' forecasted cash balance as of the Effective Date, which is expected to be fully recoverable.

B. Accounts Receivable
Accounts Receivable includes, among other things, $27.9 million in receivables related to the sales of oil and gas, $2.0 million due from joint interest billing ("JIB") partners, and a $4.8 million production tax credit from the state of Oklahoma. For purposes of the Liquidation Analysis it was assumed receivables greater than 120 days outstanding would be uncollectible. Recovery of the oil and gas sales receivables was estimated at 83% to 93%, the JIB receivables at 75% to 85% and the state tax credit at 80% to 90%. The blended recovery rate for the Debtors' Accounts Receivable was 82% to 92%.

C. Other Current Assets
Other Current Assets include, among other things, $2.6 million of prepaid insurance, $1.2 million in crude oil and other products held in storage tanks and $6.7 million of inventory warehouse stock consisting of casing and accessories, coil tubing, line pipe, and wellhead equipment and accessories and $1.0 million of prepaid software. For purposes of the Liquidation Analysis, recovery of the crude oil inventory was estimated at 80% to 90%, the warehouse stock at 25% to 35% and the prepaid insurance and software balances were assumed to have zero recovery. The blended recovery rate for the Debtors' Other Current assets was 21% to 27%.

D. Oil and Gas Properties
Given the daily production and depletion of the oil and gas assets, it is expected that the Trustee will pursue a prudent, prompt and broad marketing of the assets over a four to six month period, with the divestiture directed by a qualified investment bank or firm that specializes in managing oil and gas acquisitions and divestitures. It is also assumed that the Trustee will not incur additional risk or have access to capital necessary to continue development, drilling or completion of the oil and gas assets other than to the extent necessary to maintain material portions of value.

The adjusted net book value of the Debtors' oil and gas properties as of November 30, 2016 was $542.5 million. Because of the full cost impairment test prescribed by SEC Regulation S-X Rule 4-10, the Company's book value was effectively limited to include proved reserves only. The liquidation of the Debtors' oil and natural gas properties would include both proved and unproved reserves and would produce a sale value in the range of $630 million to $840 million

based on equally weighting of the income approach (the discounted cash flow method) and the market approach (the precedent transaction method).

The income approach considered the reserve reports with an effective date of April 1, 2017 using the NYMEX strip as of January 3, 2017 for the commodity price forecast. Adjustments were made to the reserve report for risking, inflation, gas handling costs, corporate general and administrative expense, and federal income taxes. The projected cash flows were discounted to present value based on a weighted average cost of capital estimated using guideline companies. Corporate general and administrative expenses and gas handling costs were not included in the reserve report.

The market approach considered recent transactions in the same basins as the Debtors' reserves in applying certain metrics such as price per acre and production multiples to the Debtors' reserves.

It is important to note that value range above assumes the sale of all oil and gas assets in an orderly liquidation and does not consider a reduction in value that would exist because of execution risk and the reasonable possibility that not all assets may be sold in a four to six month period. It is not possible to quantify the impact of such items with a high degree of certainty.

E. Other Non-Current Assets
Other Non-Current Assets include, among other things, $26.3 million for the Debtors' corporate headquarters in Oklahoma City, OK as well as multiple field offices throughout Oklahoma, $12.7 million of equipment including machinery, office/computer and other equipment, $2.9 million of vehicles, $2.6 million of deferred loan cost, and $2.0 million of Ethanol investments and $1.3 million of bonding deposits. For purposes of the Liquidation Analysis, recovery of the corporate headquarters and other field offices was estimated at 50% to 60%, the vehicles at 60% to 70%, the equipment at 25% to 35% and the ethanol investments, loan costs, and bonding deposits are assumed to have zero recovery. The blended recovery rate for the Debtors' Other Non-Current Assets was 39% to 47%.

*Liquidation Adjustments –*

F. Net Wind-Down Expenses
The Liquidation Analysis assumes the chapter 7 liquidation process will take four to six months to complete and that certain limited functions would be required during the liquidation process to effectuate a sale of the assets and the orderly wind-down of the business. Examples of such costs incurred during a Chapter 7 liquidation would include, but are not limited to, expenses associated with salary and hourly compensation, retention or bonus programs to maintain key personnel, and costs associated with the usage of the corporate and field offices. This Liquidation Analysis includes the cost of an employee retention program equal to 25% of total employee compensation. As discussed above, the liquidation valuation of the oil and gas reserves includes corporate payroll and general & administrative costs that a market participant may consider when valuing these assets. The Liquidation Adjustments include an incremental amount of corporate payroll and general & administrative costs that reflect the Debtors'

expected cost structure during the liquidation period. The Liquidation Analysis does not incorporate any severance costs from the termination of employees.

G. Trustee Fees
Compensation for the Chapter 7 Trustee would be limited to fee guidelines in section 326(a) of the Bankruptcy Code. The Debtors have assumed trustee fees of 3% of the gross proceeds from the liquidation, excluding cash.

H. Trustee Legal & Financial Advisors
Compensation for the Chapter 7 trustee's professionals (counsel and other legal, financial, and professional services) during the Chapter 7 case is estimated to be between 2% and 3% of total liquidation proceeds, excluding cash.

*Claims -*

I. Administrative Claims
Administrative Claims include, among other things, approximately $27.1 million of unpaid post-petition vendor payables, $13.5 million of revenue distributions payable, $3.9 million of employee payroll and benefits claims, a $4.4 million Termination Fee for the Backstop Commitment Agreement, $4.0 million of unpaid Chapter 11 professional fees and other costs and expenses of administration of the Debtors' estates after the Petition Date. The Liquidation Analysis projects a recovery rate of 100%.

J. Priority Tax Claims
The Priority Tax Claims consist of $1.7 million of property ad valorem taxes and other taxes. The Liquidation Analysis projects a recovery rate of 100%.

K. Class 1 – Other Priority Claims
Other Priority Claims consist of $1.7 million related to P&A work that the Company anticipates will be performed during the liquidation process. The Liquidation Analysis projects a recovery rate of 100%.

L. Class 2 – Other Secured Claims
Other Secured Claims consists of a $9.6 million building mortgage, $16.9 million of compressor leases and $0.4 million of vehicle leases. The Liquidation Analysis projects a recovery rate of 100%.

M. Class 3 – Secured Tax Claims
There are currently no Secured Tax Claims. To the extent such Claims exist, the Debtors believe that such Claims would also constitute Priority Tax Claims. Regardless of the classification of such Claims, which the Debtors have not determined, the projected recovery is 100%.

N. Class 4 – Prepetition Credit Agreement Claims
Consists of the estimated principal balance of the Prepetition Credit Agreement as of the Chapter 7 Conversion Date of $444.4 million. The Class 4 Claims would also be entitled to $ 15.6 million of accrued interest during the period the Trustee is selling the Debtors' assets and

closing the estates. For the purposes of calculating accrued interest a liquidation period of six months and an interest rate of 7% has been assumed. The Liquidation Analysis projects a 100% recovery of Prepetition Credit Agreement Claims.

O. Class 5 – Prepetition Notes Claims
Consists of three distinct series of notes consisting of an aggregate principal amount of $1,208.0 million and approximately $59.4 million of pre-petition accrued and unpaid interest. Prepetition Notes Claims are pari passu with General Unsecured Claims and Royalty Payment Litigation Claims. The Liquidation Analysis projects a recovery rate of approximately 19% to 36%.

P. Class 6 – General Unsecured Claims
General Unsecured Claims include, among other things, $1.3 million in prepetition severance payable to employees terminated prior to the Petition Date, $2.5 million of contract-related claims, $1.1 million of pre-petition utility claims, $0.8 million of other pre-petition employee claims and $0.5 million of other pre-petition trade payables. The Liquidation Analysis projects a recovery rate of 19% to 36%.

Q. Class 7 – Convenience Class Claims
Consists of General Unsecured Claims that, individually, are $100,000 or less. This Liquidation Analysis assumes there is no convenience class offering and therefore these Claims treated as, and included with, Class 6 - General Unsecured Claims. See above.

R. Class 8 – Royalty Payment Litigation Claims
Represents Claims against the Debtors for the alleged failure to properly report, account for, and distribute royalty interest payments to owners of mineral interests in the State of Oklahoma, including the civil class action lawsuit pending before the United States District Court for the Western District of Oklahoma. For the purposes of the Liquidation Analysis, it is assumed that the total Claims amount is equal to the Litigation Settlement as provided in the Disclosure Statement totaling $7.5 million and that each holder of an allowed Litigation Claim shall receive the same treatment as a holder of an allowed General Unsecured Claim. The Liquidation Analysis projects a recovery rate for the Class 8 Claims of 19% to 36%.

S. Class 9 – Intercompany Claims
Intercompany Claims are estimated to be zero for this recovery analysis. Class 9 Claims are projected to receive zero recovery.

T. Class 10 – Old Parent Interests
Class 10 claims are projected to receive zero recovery.

U. Class 11 – Old Affiliate Interests in any Parent Subsidiary
Class 11 claims are projected to receive zero recovery.