# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CHAPARRAL ENERGY, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 16-11144 (LSS)<br><br>(Jointly Administered) |
| CHAPARRAL CO2, L.L.C.,<br><br>Plaintiff,<br><br>v.<br><br>MERIT ENERGY COMPANY, LLC, a Delaware limited liability company; and DOES 1-100, inclusive,<br><br>Defendants. | Adv. No. 17-_____ (LSS) |

**COMPLAINT FOR ORDER AUTHORIZING THE SALE OF
PROPERTY OF THE ESTATE AND OF CO-OWNER PURSUANT
TO SECTION 363(h) OF THE BANKRUPTCY CODE**

Plaintiff Chaparral CO2, L.L.C. ("**Plaintiff**" or "**Chaparral CO2**"), one of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), for its *Complaint for Order Authorizing the Sale of Property of the Estate and of Co-Owner Pursuant to Section 363(h) of the Bankruptcy Code* (the "**Complaint**") against Defendants Merit Energy Company, LLC ("**Merit**") and Does 1-100, inclusive[2] (collectively with Merit, the "**Defendants**"), alleges as follows:

---

[1] The Debtors in these cases, along with the last four digits (or five digits, in cases in which multiple Debtors have the same last four digits) of each Debtor's federal tax identification number, are: CEI Acquisition, L.L.C. (1817); CEI Pipeline, L.L.C. (6877); Chaparral Biofuels, L.L.C. (1066); Chaparral C02, L.L.C. (1656); Chaparral Energy, Inc. (90941); Chaparral Energy, L.L.C. (20941); Chaparral Exploration, L.L.C. (1968); Chaparral Real Estate, L.L.C. (1655); Chaparral Resources, L.L.C. (1710); Green Country Supply, Inc. (2723); and Roadrunner Drilling, L.L.C. (2399). The Debtors' address is 701 Cedar Lake Blvd., Oklahoma City, OK 73114.

[2] Plaintiff is not presently aware of the identities of all other parties who may hold an interest in the Assets (as defined below) subject to this Complaint, but intends to file an amended complaint and/or substitute in the real parties in interest for Does 1-100, inclusive, to the extent the identities of such other interest holders are discovered.

**JURISDICTIONAL ALLEGATIONS**

1. This adversary proceeding arises out of, and is related to, the above-captioned case pending before this United States Bankruptcy Court; therefore, this Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, as well as 11 U.S.C. § 363(h) and Rule 7001(3) of the Federal Rules of Bankruptcy Procedure.

2. The claim for relief set forth is for an order approving the sale of property and affects the liquidation of an asset of the estate and, as such, constitutes a "core" proceeding under 28 U.S.C. § 157(b)(2)(N) and (O).

3. Venue is based on 28 U.S.C. §§ 1408 and 1409.

**PARTIES**

4. Plaintiff Chaparral CO2, L.L.C., one of the above-captioned debtors and debtors in possession, holds an interest in the Assets (as defined below).

5. Defendant Merit Energy Company, LLC is a Delaware limited liability company and, upon information and belief, holds an interest in the Assets (as defined below).

6. The true names and capacities, whether individual, corporate or otherwise, of Defendants Does 1-100, inclusive, are unknown to Plaintiff, which therefore sues each and all of them by such fictitious names. Plaintiff will seek leave to amend this Complaint to allege their true names and capacities when they have been ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants holds an interest in the Assets (as defined below) or otherwise is responsible in some manner for the occurrences herein alleged. At all times herein mentioned, each and all of the Doe Defendants were the agents, officers, directors or servants of their co-defendants, and in doing the things herein alleged were acting within the course and scope of their authority as those agents, officers, directors or servants, and with the permission and consent of their co-defendants.

## GENERAL FACTUAL ALLEGATIONS

**A.     The Chapter 11 Cases.**

4.      On May 9, 2016 (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing cases for relief under Chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code Sections 1107 and 1108.  No trustee or examiner has been requested in the Chapter 11 Cases, and no committees have yet been appointed.

5.      Additional information regarding the Debtors and the Chapter 11 Cases, including the Debtors' business, organizational structure, financial condition, and the reasons for and objectives of these cases, is set forth in the *Declaration of Mark A. Fischer, Chief Executive Officer of Chaparral Energy, Inc., in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 14], incorporated herein by reference (the "**Fischer Declaration**"), and the *Disclosure Statement for the Joint Plan of Reorganization for Chaparral Energy, Inc. and its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 784], incorporated herein by reference.

**B.     The Debtors' CO2 Operations.**

6.      The Debtors are engaged in carbon dioxide ("**CO2**") enhanced oil recovery ("**EOR**") at various wells they operate in the State of Oklahoma. To recover oil and gas through EOR, the Debtors often contract with, and obtain CO2 from, fertilizer plants since CO2 is an operational by-product of the fertilizer industry.  When CO2 is created by the fertilizer plant, the Debtors or another party compress the CO2 and send the gas through a pipeline to one or more of

the Debtors' depleted wells to assist in the recovery of oil and gas at the wells. This process is called "flooding", and it is almost exclusively used to recover oil and gas from mature wells that were previously considered near depletion. Absent a constant supply of $CO_2$, it is normally not economical to extract oil and gas from such depleted wells.

**C.    The Assets.**

7.    The Debtors currently own an interest in the Velma Pipeline that runs from a fertilizer plant owned by Koch Fertilizer, L.L.C. ("**Koch**", and such fertilizer plant, the "**Koch Fertilizer Plant**") in Garfield County, Oklahoma to Stephens County, Oklahoma, as described in greater detail on Exhibit A attached hereto (such pipeline and related assets, collectively, the "**Assets**" or the "**Pipeline**"). The Assets are used to transport $CO_2$ from the Koch Fertilizer Plant to (i) a "unit" (explained in greater detail below) wholly owned and operated by the Debtors known as the Northwest Velma Hoxbar Unit (the "**Hoxbar Unit**"), (ii) a unit formerly owned and operated by the Debtors known as the East Velma West Block Sims Sand Unit (the "**Velma Unit**"),[3] and (iii) two units (known as the Purdy Unit and the Bradley Unit) owned and operated by Merit (together, the "**Merit Units**"). Although the Pipeline is currently being used to transport $CO_2$, the Pipeline bisects two of the most active North American oil plays—the STACK and SCOOP plays in central Oklahoma—making it ideally situated and, in turn, extremely valuable for transporting oil.

8.    Under Oklahoma law, "units" are distinct legal entities established by a state agency, which cover a specified geographic area for the purposes of oil and gas exploration and production by a single well or series of wells. Each unit has an operator, which controls all EOR activities within the unit, and which generally is the entity that owns the greatest amount of

---

[3]    The Debtors sold most of their interests in the Velma Unit to Limerock Resources II-A, LP ("**Limerock**") on April 4, 2012, but such sale excluded the Debtors' interest in the Assets. The Velma Unit is now owned and operated by Limerock, but $CO_2$ is no longer transported to the Velma Unit. Accordingly, the Debtors still retain a joint ownership interest in the Assets relating to the Velma Unit despite no longer being the operator of the Velma Unit.

working interests located within the unit. If a working interest owner does not have working interests covering all of the acres in a unit, the working interest owner becomes a co-tenant with other working interest owners in the unit with regard to the oil and gas to be produced.

9. As described in greater detail below, the Assets are jointly owned by (i) Chaparral CO2, a debtor in these Chapter 11 Cases, (ii) Merit, and (iii) several other third parties that hold working interests in the Merit Units or the Velma Unit[4] (such other third parties, collectively, the "**Other Joint Interest Owners**"). Upon information and belief, Chaparral CO2 and Merit own the vast majority of the Pipeline, with the Other Joint Interest Owners collectively owning less than 10% of the Pipeline.

10. The Assets consist of two segments of pipeline, each of which is jointly owned by several parties:

> (a) Segment A is 118 miles of eight inch diameter pipe running from the Koch Fertilizer Plant to the Purdy and Bradley Units in southern Grady County, Oklahoma (the "**Merit Units**"). It is jointly owned by Merit, certain Other Joint Interest Owners,[5] and Chaparral CO2.
>
> (b) Segment C[6] is 23.7 miles of six inch diameter pipe extending from the junction of Segment A and Segment B south to the Velma Unit and the Debtors' Hoxbar Unit, both located in Stephens County, Oklahoma. Segment C is jointly owned by the Debtors and certain Other Joint Interest Owners in the Velma Unit.

11. At its northern end, the Pipeline connects to the Koch Fertilizer Plant in Enid, Oklahoma, which delivers CO2 to the units to the south. At all relevant times, Merit purchased 100% of the CO2 produced by the Koch Fertilizer Plant, sent a portion of the CO2 to the Merit Units, and sent a portion of the CO2 to the Debtors to flood and operate the Velma Unit and the

---

[4] Upon information and belief, there are approximately 35 Other Joint Interest Owners in the Velma Unit, which collectively own approximately 12% of the working interests in the Velma Unit.

[5] Such Other Joint Interest Owners include parties which own working interests in the Merit Units and the Velma Unit. The Debtors believe that Other Joint Interest Owners which own working interests in the Merit Units, if any, will receive notice of this action through Merit, as operator of the Merit Units.

[6] Segment B is a short segment of pipeline running from Segment A to the Merit Units. The Debtors do not own an interest in Segment B and, accordingly, it is not included in the definition of "Assets."

Hoxbar Unit.[7]  There is no other practical way for CO2 to reach the Debtors' units other than through the Pipeline.

**D.     Events Leading to the Sale Process.**

15.     Until December 31, 2016, the terms of Merit and the Debtors' joint ownership of the Assets were governed by that certain *Amended and Restated Articles of Agreement, Enid to Velma/Purdy CO2 Delivery System*, dated as of August 23, 1996 (the "**Articles of Agreement**"), and the terms of the CO2 sales from Merit to the Debtors were governed by that certain *Operation Agreement*, attached to the Articles of Agreement (the "**Operation Agreement**") and that certain *Agreement for Sale and Purchase of CO2*, dated as of August 23, 1996 (the "**CO2 Contract**," and together with the Articles of Agreement and the Operation Agreement, the "**Agreements**").  Copies of the Articles of Agreement, Operation Agreement, and CO2 Contract are attached hereto as Exhibit B, Exhibit C, and Exhibit D, respectively.

16.     On December 31, 2016, the Agreements expired by their express terms.[8]  Despite extensive negotiations with Merit, the Debtors were unable to reach a new agreement regarding the sale and delivery of CO2 through the Pipeline.  The Debtors also attempted to negotiate a CO2 contract directly with Koch, but have likewise not been able to reach agreement.[9]

17.     Due to these developments, the Debtors have been unable to obtain CO2 through the Pipeline since January 1, 2017, and, as a result, oil and gas production at the Debtors' Hoxbar Unit has steadily declined.  Moreover, the Debtors have learned that Merit has separately entered into a new contract to purchase 100% of the CO2 produced by the Koch Fertilizer Plant, which the Debtors believe is the reason why they cannot reach agreement with Koch for CO2 delivery.

---

[7]  Much like a water or natural gas pipeline, the Debtors and the Merit Units can simultaneously obtain CO2 from the Pipeline from any access point without impacting the use of Other Joint Interest Owners.

[8]  *See* Articles of Agreement §13.3; Operation Agreement §V-1; CO2 Contract §2.1.

[9]  The Debtors are not aware of any other or alternate source of CO2 that could supply the Pipeline.

Without the ability to purchase CO2 from Merit, the Debtors have been unable to flood their wells and recover the limited oil and gas reserves that remain at such wells.

18.     This predicament, however, caused the Debtors to re-evaluate the value of the Pipeline and the wells connected to it, and whether their value could be maximized through other uses.  After consultation with their major creditors constituencies, the Debtors have determined that, even with access to CO2, the Debtors would not be able to derive additional value from the connected wells given the relatively modest amounts of remaining oil and gas at such locations.

**E.     Indications of Interest.**

16.     Once the Debtors determined that they no longer had any ability to use the Assets, the Debtors reached out to certain potential purchasers to gauge interest in the Assets.  Once it became clear that several parties were interested, the Debtors and their advisors identified and contacted approximately twenty midstream companies that might have interest in acquiring the Assets.  All potential purchasers were given basic, general information about the Assets reflecting, in general terms, the strategic value associated with the location of the Assets, the estimated ownership percentages by segment, the pipe specifications and date of construction/completion, and other relevant information.  As a result of these efforts, the Debtors obtained a number of offers to purchase the Assets.  Each offer, however, contemplated purchasing the Assets in their entirety, rather than the interests of the Debtors only.

17.     The fact that offers have been made for the Assets in their entirety is not surprising. First, all offers to date contemplate converting the Pipeline from a CO2 pipeline to a crude oil transportation pipeline. As stated above, the Pipeline is strategically located such that it is ideally situated and extremely valuable for transporting oil.  Second, while Merit can use the Pipeline for transporting CO2, a purchaser of the Debtors' interest only may not be able to. Specifically, upon information and belief, Koch is (or will soon be in the process of) converting

its facility to reuse $CO_2$ in its own manufacturing process and will no longer have any excess $CO_2$ for sale.  Accordingly, even if a purchaser wished to purchase the Pipeline for the purposes of transporting $CO_2$, they would only have access to $CO_2$ until Koch's conversion is complete, and they would also be forced to reach an agreement to purchase $CO_2$ from Merit, who would have significant leverage in negotiations based on their contract with Koch as described above.  To the Debtors' knowledge, there are no other sources of $CO_2$ capable of being connected to the Pipeline other than from the Koch Fertilizer Plant or being purchased from Merit.  While the Debtors are open to selling only their interests, their marketing efforts to date have demonstrated that far greater value can be achieved through the sale of the Assets in their entirety.

18.    The Debtors expect that they will be able to bring significant value into their estates by selling the Assets, and believe that a sale of the Assets is in the best interests of the Debtors' estates.  And, upon information and belief, the benefit to the Debtors' estates through a the sale of the Assets, including the interests of Merit and the Other Joint Interest Owners, outweighs the detriment, if any, to Merit and the Other Joint Interest Owners.

### FIRST CLAIM FOR RELIEF FOR AN ORDER AUTHORIZING THE DEBTORS TO SELL BOTH THE INTEREST OF THE ESTATE AND CO-OWNERS IN CERTAIN PROPERTY – 11 U.S.C. § 363(h)

19.    Plaintiff hereby restates and realleges paragraphs 1 through 18, inclusive, of this Complaint and incorporates them herein in their entirety.

20.    At the commencement of this case, Plaintiff was a co-owner of the Assets, as described in paragraphs 9 and 10 above.  The legal description of the Assets as set forth on Exhibit A is incorporated herein by reference.

21.    Upon the commencement of these Chapter 11 Cases, Plaintiff's ownership interest in the Assets became property of the Debtors' bankruptcy estates (the "**Estates**").

22. Segment A is held as tenants in common, with Plaintiff holding approximately a 44% interest, Merit holding approximately a 50% interest, and the Other Joint Interest Owners holding approximately a 6% interest.

23. Segment C is held as tenants in common, with Plaintiff holding approximately an 88% interest and the Other Joint Interest Owners holding approximately a 12% interest.

24. Partition in kind of the Assets among the Estates, Merit and the Other Joint Interest Owners is impracticable.

25. A sale of the Estates' undivided interest in the Assets would realize significantly less for the Estates than sale of the Assets free of the interests held by Merit and the Other Joint Interest Owners.

26. Upon information and belief, the benefit to the Estates of the sale of the Assets, including the interests of Merit and the Other Joint Interest Owners, outweighs the detriment, if any, to Merit and/or the Other Joint Interest Owners.

27. The Assets are not used in the production, transmission or distribution, for sale, of electric energy or natural or synthetic gas for heat, light or power.

28. Pursuant to 11 U.S.C. § 363(h), Plaintiff respectfully requests an Order authorizing the sale of the Assets, including the interests held by Merit and the Other Joint Interest Owners.

29. Pursuant to 11 U.S.C. § 363(j), Plaintiff respectfully requests that the Debtors be authorized to distribute the proceeds of such sale, less costs and expenses, to the Debtors, Merit and the Other Joint Interest Owners according to their respective interests.

*WHEREFORE*, Plaintiff respectfully requests that this Court enter judgment, pursuant to 11 U.S.C. § 363(h), that: (i) authorizes Plaintiff to sell the Assets, including the interests held by Merit and the Other Joint Interest Owners; (ii) authorizes Plaintiff to hold the sales proceeds until further Order of this Court, with the interests of Merit and the Other Joint Interest Owners attaching to the net proceeds of the sale pursuant to 11 U.S.C. § 363(j); and (iii) for all other just and proper relief.

| | |
|---|---|
| Dated: February 21, 2017<br>Wilmington, Delaware | **CHIPMAN BROWN CICERO & COLE, LLP**<br><br>*/s/ William E. Chipman, Jr.*<br>William E. Chipman, Jr. (No. 3818)<br>Mark D. Olivere (No. 4291)<br>Hercules Plaza<br>1313 North Market Street, Suite 5400<br>Wilmington, Delaware  19801<br>Telephone:     (302) 295-0193<br>Facsimile:      (302) 295-0199<br>Email:            chipman@chipmanbrown.com<br>                      olivere@chipmanbrown.com<br><br>~ and ~<br><br>Richard A. Levy<br>Keith A. Simon<br>David F. McElhoe<br>**LATHAM & WATKINS LLP**<br>885 Third Avenue<br>New York, New York 10022-4834<br>Telephone:     (212) 906-1200<br>Facsimile:      (212) 751-4864<br>Email:            richard.levy@lw.com<br>                      keith.simon@lw.com<br>                      david.mcelhoe@lw.com<br><br>*Counsel for Debtors and Debtors in Possession* |