**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CHAPARRAL ENERGY, INC., et al., | Case No. 16-11144 (LSS) |
| Debtors.[1] | Jointly Administered |
| | **Re: Docket No. 783** |

# FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING THE FIRST AMENDED JOINT PLAN OF REORGANIZATION FOR CHAPARRAL ENERGY, INC. AND ITS AFFILIATE DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

The *Joint Plan of Reorganization for Chaparral Energy, Inc. and its Affiliate Debtors under Chapter 11 of the Bankruptcy Code*, dated January 25, 2017 (as amended, modified or supplemented, including by the Subsequent Plan Modifications (as defined below), the "**Plan**"), having been filed with the Bankruptcy Court (the "**Court**") [Docket No. 783] by the above-captioned debtors and debtors-in-possession (each a "**Debtor**" and, collectively, the "**Debtors**"); and the *Disclosure Statement for the Joint Plan of Reorganization for Chaparral Energy, Inc. and its Affiliate Debtors under Chapter 11 of the Bankruptcy Code*, dated January 25, 2017 (the "**Disclosure Statement**"), having been filed with this Court [Docket No. 784]; and the Disclosure Statement, and appropriate Ballots for voting on the Plan, having been approved, and

[1] The Debtors in these cases, along with the last four digits (or five digits, in cases in which multiple Debtors have the same last four digits) of each Debtor's federal tax identification number, are: CEI Acquisition, L.L.C. (1817); CEI Pipeline, L.L.C. (6877); Chaparral Biofuels, L.L.C. (1066); Chaparral CO2, L.L.C. (1656); Chaparral Energy, Inc. (90941); Chaparral Energy, L.L.C. (20941); Chaparral Exploration, L.L.C. (1968); Chaparral Real Estate, L.L.C. (1655); Chaparral Resources, L.L.C. (1710); Green Country Supply, Inc. (2723); and Roadrunner Drilling, L.L.C. (2399). The Debtors' address is 701 Cedar Lake Blvd., Oklahoma City, OK 73114.

transmitted to Holders[2] of Claims against the Debtors in the Voting Classes, pursuant to that certain *Order (A) Approving The Disclosure Statement, (B) Establishing The Voting Record Date, Voting Deadline And Other Dates, (C) Approving Procedures For Soliciting, Receiving And Tabulating Votes On The Plan And For Filing Objections To The Plan And (D) Approving The Manner And Form Of Notice And Other Related Documents*, entered by this Court on January 25, 2017 [Docket No. 780] (the "**Disclosure Statement Order**"); and a copy of the Plan as subsequently modified since the entry of the Disclosure Statement Order (without Exhibits or Plan Schedules) being attached hereto as Exhibit 1; and a redline copy of the Plan showing the modifications thereto since the entry of the Disclosure Statement Order being attached hereto as Exhibit 2 (such plan modifications, the "**Subsequent Plan Modifications**"); and the Plan Supplement having been filed on February 6, 2017 [Docket No. 816]; and the Debtors having filed their *Memorandum of Law in Support of Confirmation of the First Amended Joint Plan Of Reorganization For Chaparral Energy, Inc. And Its Affiliate Debtors Under Chapter 11 Of The Bankruptcy Code*, with this Court prior to the Confirmation Hearing [Docket No. 939] (the "**Confirmation Memorandum**"); and the *Declaration of Scott Anchin in Support of Confirmation of the First Amended Joint Plan of Reorganization for Chaparral Energy, Inc. and its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code*, having been filed with this Court prior to the Confirmation Hearing [Docket No. 927]; and the *Declaration of Lloyd Sprung in Support of Confirmation of the First Amended Joint Plan of Reorganization for Chaparral Energy, Inc. and its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code*, having been filed with this Court prior to the Confirmation Hearing [Docket No. 928] (the "**Sprung Declaration**"); and the *Certification Of Leanne V. Rehder Scott With Respect To The Tabulation*

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

*Of Votes On The First Amended Joint Plan of Reorganization for Chaparral Energy, Inc. and its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code*, having been filed with this Court prior to the Confirmation Hearing [Docket No. 933] (the "**Voting Report**"); and the hearing to consider the Confirmation of the Plan having been held before this Court on March 9, 2017 (the "**Confirmation Hearing**") after due and sufficient notice was given to Holders of Claims against, and Equity Interests in, the Debtors and other parties-in-interest in accordance with the Disclosure Statement Order, title 11 of the United States Code (the "**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the local bankruptcy rules of this Court (the "**Local Rules**"), in each case as established by the affidavits of service, mailing and/or publication filed with this Court prior to the Confirmation Hearing (collectively, the "**Notice Affidavits**");[3] and upon all of the proceedings held before this Court and after full consideration of: (i) each of the objections to the Confirmation of the Plan filed with this Court and not subsequently withdrawn, settled or deemed moot (the "**Objections**"); (ii) the Plan Supplement; (iii) the Confirmation Memorandum; (iv) the Voting Report; (v) testimony proffered or presented at the Confirmation Hearing, (vi) the declarations and/or affidavits filed with this Court; and (vii) all other evidence proffered or adduced at, memoranda and objections filed in connection with and arguments of counsel made at, the Confirmation Hearing; and after due deliberation thereon; and good cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A. Findings and Conclusions. The determinations, findings, judgments, decrees, orders and conclusions set forth in this order (the "**Confirmation Order**") and in the record of the Confirmation Hearing constitute this Court's findings of fact and conclusions of law pursuant

[3] The Notice Affidavits are located at Docket Nos. 785, 794, 801, 802, 816, 821, 825, 837, 840.

to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute a conclusion of law, it is adopted as such. To the extent any of the following conclusions of law constitutes a finding of fact, it is adopted as such.

B. Chapter 11 Petition. On May 9, 2016 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court (the "**Chapter 11 Cases**"). By order of this Court, the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015 [Docket No. 53]. Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases. The United States Trustee (the "**U.S. Trustee**") has not appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code.

C. Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a)). This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409 and continues to be proper during these Chapter 11 Cases. The Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2) upon which this Court may issue a final order, and confirmation of a plan by this Court is a constitutional exercise of the jurisdiction conferred by Congress on this Court. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

D. [intentionally deleted]

E. Solicitation of Votes. Votes for acceptance or rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018 and all other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws and regulations. All procedures used to distribute Ballots to the applicable Holders of Claims and to tabulate the Ballots were fair and reasonable and conducted in accordance with the Disclosure Statement Order and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

F. Notice of Confirmation Hearing. The Debtors have given proper and sufficient notice of the Confirmation Hearing as required by Bankruptcy Rule 3017(d). Due, adequate and sufficient notice of the Confirmation Hearing, along with the deadlines for voting on or filing objections to the Plan, has been given to all known Holders of Claims and Equity Interests substantially in accordance with the procedures set forth in the Disclosure Statement Order. The Disclosure Statement, Plan, Ballots and Disclosure Statement Order were transmitted and served in compliance with the Disclosure Statement Order and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations. Such transmittal and service were adequate and sufficient under the circumstances, and no further notice is or shall be required.

G. Subsequent Plan Modifications. Adequate and sufficient notice of the Subsequent Plan Modifications has been given and no other or further notice is or shall be required and such Subsequent Plan Modifications are approved in full.

H. Burden of Proof. The Debtors, as the proponents of the Plan, have met their burden of proving the satisfaction of the elements of sections 1129(a) and (b) of the Bankruptcy

Code by a preponderance of the evidence. Further, each witness who testified on behalf of the Debtors at or in connection with the Confirmation Hearing was credible, reliable and qualified to testify as to the topics addressed in his or her testimony.

I. Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code, including, without limitation sections 1122 and 1123 of the Bankruptcy Code.

(1) Proper Classification (11 U.S.C. §§ 1122 & 1123(a)(1)). In addition to Administrative Claims and Priority Tax Claims, which need not be classified, the Plan designates eleven Classes of Claims and Equity Interests, based on the differences in the legal nature or priority of such Claims and Equity Interests. The Claims and Equity Interests placed in each Class are substantially similar to the other Claims or Equity Interests, as the case may be, in each such Class. Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes are proper and the creation of such Classes does not unfairly discriminate between or among holders of Claims or Equity Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(2) Specify Unimpaired Classes (11 U.S.C. § 1123(a)(2)). The Plan specifies that Other Priority Claims (Class 1), Other Secured Claims (Class 2), Secured Tax Claims (Class 3) and Old Affiliate Interests in any Parent Subsidiary (Class 11) are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code (collectively, the "**Unimpaired Classes**").

(3) Specify Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). The Plan designates Prepetition Credit Agreement Claims (Class 4), Prepetition Notes Claims (Class 5), General Unsecured Claims (Class 6), Convenience Class Claims (Class 7), Royalty Payment Litigation Claims (Class 8), Intercompany Claims (Class 9) and Old Parent Interests (Class 10) as Impaired and specifies the treatment of the Claims and the Equity Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(4) No Discrimination Within Classes (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment by the Debtors for each Claim or Equity Interest in each respective Class unless the Holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(5) Implementation of Plan (11 U.S.C. § 1123(a)(5)). The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and

proper means for implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(6) Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)). The Plan provides that the certificate of incorporation of each of the Reorganized Debtors shall prohibit the issuance of non-voting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

(7) Selection of Directors and Officers (11 U.S.C. §§ 1123(a)(7) and 1129(a)(5)). The members of the boards of directors of the Reorganized Debtors were identified by the Debtors at or prior to the Confirmation Hearing. Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors disclosed, at or prior to the Confirmation Hearing, the identity and affiliations of those Persons proposed to serve on the initial boards of directors or as officers of each of the Reorganized Debtors, and, to the extent such Person is an insider other than by virtue of being a director or an officer, the nature of any compensation for such Person. The directors and officers of the Reorganized Debtors were selected in a manner consistent with the interests of creditors and with public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

(8) Additional Plan Provisions (11 U.S.C. § 1123(b)). The Plan contains certain provisions that may be construed as permissive, but are not required for Confirmation under the Bankruptcy Code. These discretionary provisions comply with section 1123(b) of the Bankruptcy Code, are appropriate, in the best interests of the Debtors and their Estates and are not inconsistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for (i) the assumption or rejection of executory contracts and unexpired leases; (ii) the Reorganized Debtors' retention of certain Litigation Claims that the Debtors had or had power to assert immediately prior to the Effective Date, whether directly or derivatively; and (iii) releases and exculpation of various Persons and entities.

(9) Identification of Plan (Bankruptcy Rule 3016(a)). The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the Clerk of this Court satisfied Bankruptcy Rule 3016(a).

J. The Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically:

(1) The Debtors are proper debtors under section 109 of the Bankruptcy Code and proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

(2) The Debtors have complied with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1125 and 1126, except as otherwise provided or permitted by orders of this Court.

(3) The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order in transmitting the Plan, the Disclosure Statement, the Ballots and related documents and notices and in soliciting and tabulating votes on the Plan.

K. Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In determining that the Plan has been proposed in good faith, this Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself (and the Plan Supplement) and the formulation and Confirmation of the Plan. The good faith of each of the Debtors, the Prepetition Credit Agreement Agent, the Prepetition Credit Agreement Lenders, the Ad Hoc Noteholders Committee, and the Prepetition Notes Indenture Trustee (and each of their respective Related Persons) is evident from the facts and records of the Chapter 11 Cases, the Disclosure Statement and the hearing thereon, the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Cases. The Debtors, the Prepetition Credit Agreement Agent, the Prepetition Credit Agreement Lenders, the Ad Hoc Noteholders Committee, and the Prepetition Notes Indenture Trustee (and each of their respective Related Persons) have negotiated the Plan (and the Plan Supplement) and participated in the Plan (and Plan Supplement) formulation process at arms' length and in good faith. The Plan itself, and the process leading to its formulation, provide independent evidence of good faith of the Debtors, the Prepetition Credit Agreement Agent, the Prepetition Credit Agreement Lenders, the Ad Hoc Noteholders Committee, and the Prepetition Notes Indenture Trustee (and each of their respective Related Persons) who negotiated the Plan, serve the public interest, and assure fair treatment of holders of Claims and

Equity Interests. Consistent with the overriding purpose of the Bankruptcy Code, the Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate and honest purpose of reorganizing the Debtors and maximizing the value of the Debtors' assets.

L. Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Any payment made or to be made by the Debtors or Reorganized Debtors, as applicable, for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases requiring approval, has been approved by, or is subject to the approval of, this Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

M. Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5)). The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. The identity and affiliations of the Persons proposed to serve as the initial directors and officers of the Reorganized Debtors after Confirmation of the Plan have been fully disclosed to the extent such information is available. The appointment to, or continuance in, such offices of such persons is consistent with the interests of Holders of Claims against and Equity Interests in the Debtors and with public policy. To the extent available, the identity of any insider that will be employed or retained by the Reorganized Debtors and the nature of such insider's compensation have also been fully disclosed.

N. No Rate Changes (11 U.S.C. § 1129(a)(6)). The Debtors are not subject to any governmental regulatory commission with jurisdiction, after Confirmation of the Plan, over the rates of the Debtors. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in the Chapter 11 Cases.

O. Best Interests of Creditors Test (11 U.S.C. § 1129(a)(7)). The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis set forth in Exhibit D to the Disclosure Statement and other evidence proffered or adduced at the Confirmation Hearing (a) are reasonable, persuasive, and credible; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that each Holder of a Claim or Equity Interest in an Impaired Class either (i) has accepted the Plan or (ii) will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date.

P. Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept a plan or be unimpaired under a plan. The Holders of Other Priority Claims (Class 1), Other Secured Claims (Class 2), Secured Tax Claims (Class 3), and Old Affiliate Interests in any Parent Subsidiary (Class 11) are Unimpaired and, thus, under section 1126(f) of the Bankruptcy Code, are conclusively presumed to have accepted the Plan. The Holders of Intercompany Claims (Class 9) are Impaired, but are conclusively deemed to have accepted the Plan because they are Affiliates of the Debtors. The Holders of Prepetition Credit Agreement Claims (Class 4), Prepetition Notes Claims (Class 5), General Unsecured Claims (Class 6), and Convenience Class Claims (Class 7) have voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code. The Holders of Royalty Payment Litigation Claims (Class 8) have voted to reject the Plan in accordance with section 1126 of the Bankruptcy Code. The Holders of Old Parent Interests (Class 10) are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Although section 1129(a)(8) of the Bankruptcy Code is not satisfied with

respect to rejecting Classes 8 and 10, the Plan may nevertheless be confirmed because the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to such rejecting Classes. Article IV.E of the Plan contemplates the non-consensual Confirmation of the Plan.

Q. Treatment of Administrative Claims and Priority Tax Claims (11 U.S.C. § 1129(a)(9)). The treatment of Allowed Administrative Claims under Article II.A of the Plan, satisfies the requirements of section 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Allowed Priority Tax Claims under Article II.B of the Plan satisfies the requirements of section 1129(a)(9)(C) and 1129(a)(9)(D) of the Bankruptcy Code, thereby satisfying section 1129(a)(9) of the Bankruptcy Code.

R. Acceptance by At Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10)). The Prepetition Credit Agreement Claims (Class 4), the Prepetition Secured Notes Claims (Class 5), the General Unsecured Claims (Class 6), and the Convenience Class Claims (Class 7) are each Impaired Classes of Claims that have voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code, determined without including any acceptance of the Plan by "insiders," thereby satisfying section 1129(a)(10) of the Bankruptcy Code.

S. Feasibility (11 U.S.C. § 1129(a)(11)). The evidence proffered or adduced at or prior to the Confirmation Hearing, including the financial projections set forth in Exhibit C to the Disclosure Statement, the Confirmation Memorandum, the Sprung Declaration, and the Voting Report, (i) is reasonable, persuasive, and credible, (ii) utilizes reasonable and appropriate methodologies and assumptions, (iii) has not been controverted by other evidence, and (iv) establishes that the Plan is feasible and that there is a reasonable prospect of the Reorganized Debtors being able to meet their financial obligations under the Plan with respect to operating their businesses in the ordinary course, and that Confirmation of the Plan is not likely to be

followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors or any successor to the Reorganized Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

T. Payment of Fees (11 U.S.C. § 1129(a)(12)). All fees payable under 28 U.S.C. § 1930 have been paid or will be paid pursuant to Article XII.B of the Plan, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

U. No Retiree Benefits (11 U.S.C. § 1129(a)(13)). The Debtors do not have obligations to pay retiree benefits and, therefore, section 1129(a)(13) of the Bankruptcy Code, to the extent such section is applicable to the Debtors, is satisfied.

V. Non-Applicability of Certain Sections (11 U.S.C. §§ 1129(a)(14), (15), and (16)). The Debtors do not owe any domestic support obligations, are not individuals, and are not nonprofit corporations, and thus sections 1129(a)(14), 1129(a)(15) and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.

W. No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)). The Holders of Royalty Payment Litigation Claims (Class 8) have voted to reject the Plan and the Holders of Old Parent Interests (Class 10) are deemed to have rejected the Plan (collectively, the "**Rejecting Classes**"). The evidence proffered or adduced at the Confirmation Hearing (i) is reasonable, persuasive, and credible, (ii) utilizes reasonable and appropriate methodologies and assumptions, (iii) has not been controverted by other evidence, and (iv) establishes that the Plan does not discriminate unfairly, and is fair and equitable, with respect to the Rejecting Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, because no Holder of any interest that is junior to the Claims and Equity Interests represented by the respective Rejecting Class will receive or retain any property under the Plan on account of such junior interest, and no Holder of

a Claim in a Class senior to the Rejecting Classes is receiving more than 100% recovery on account of its Claim. Thus, the Plan may be confirmed notwithstanding the rejection of the Plan by the Rejecting Classes.

X. Only One Plan (11 U.S.C. § 1129(c)). Other than the Plan (including previous versions thereof), no other plan has been filed for the Debtors in the Chapter 11 Cases, and the Plan thereby satisfies the requirements of section 1129(c) of the Bankruptcy Code.

Y. Principal Purpose of Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933 (15 U.S.C. § 77e).

Z. Small Business Case (11 U.S.C. § 1129(e)). None of these Chapter 11 Cases is a "small business case," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

AA. Good Faith Solicitation (11 U.S.C. § 1125(e)). The evidence proffered or adduced at the Confirmation Hearing (i) is reasonable, persuasive and credible, (ii) utilizes reasonable and appropriate methodologies and assumptions, (iii) has not been controverted by other evidence, (iv) establishes that the Debtors, the Reorganized Debtors and each of their respective Related Persons have, as applicable, (a) solicited acceptances or rejections of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125 and 1126 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation and (b) participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation in the offer and issuance of any securities under the Plan, and

(v) establishes that the Debtors, the Reorganized Debtors and each of their respective Related Persons will, as applicable, continue to act in good faith if they consummate the Plan and the agreements, settlements, transactions and transfers contemplated thereby, and take all other actions authorized by this Confirmation Order. Accordingly, each of the foregoing Persons is entitled to and, pursuant to paragraph 44 of this Confirmation Order, granted the full protections afforded by section 1125(e) of the Bankruptcy Code.

BB. Satisfaction of Confirmation Requirements. Based on the foregoing, all other pleadings, documents, exhibits, statements, declarations, and affidavits filed in connection with Confirmation of the Plan and all evidence and arguments made, proffered or adduced at the Confirmation Hearing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

CC. Implementation of Other Necessary Documents and Agreements. All documents and agreements necessary or advisable to implement or carry out the Plan, the Restructuring Transactions and the other transactions contemplated by the Restructuring Documents (including the Plan Supplement) are essential elements of the Plan and entry into and consummation of the transactions contemplated by each such document and agreement is in the best interests of the Debtors, their Estates and holders of Claims and Equity Interests, and shall be valid, binding and enforceable in accordance with their respective terms and conditions. The Debtors have exercised reasonable business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements. The terms and conditions of such documents and agreements have been negotiated in good faith, at arm's length, are fair and reasonable and are reaffirmed and approved. The Debtors and the Reorganized Debtors, as applicable, are authorized, without any further notice to or action, order

or approval of this Court, to finalize, execute and deliver all agreements, documents, instruments and certificates relating thereto and perform their obligations thereunder in accordance with the Plan.

DD. Retention of Jurisdiction. Upon the Effective Date, this Court shall retain jurisdiction over the matters arising in, and under, and related to, the Chapter 11 Cases, as set forth in Article XI of the Plan and as contemplated herein, including, without limitation, the matters arising in and under, and related to, the Pipeline Sale (as defined below).

EE. Rights Offerings. The Debtors conducted the Rights Offerings and distributed the Subscription Rights in accordance with the Rights Offering Procedures.

FF. Classification Takes Into Account Subordination Rights. The classification and manner of satisfying all Claims and Equity Interests under the Plan takes into consideration all contractual, legal and equitable rights, including subordination and turnover rights, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise, that a Holder of a Claim or Equity Interest may have against other Holders of a Claim or Equity Interest with respect to any distribution made pursuant to the Plan.

GG. Additional Findings Regarding Releases. The releases provided pursuant to Article X.B of the Plan (a) represent a sound exercise of the Debtors' business judgment; (b) were negotiated in good faith and at arms' length; and (c) formed an essential part of the agreement among the Persons participating in the negotiation and formulation of the Plan. The Released Parties played an integral role in the formulation of the Plan and have expended significant time and resources analyzing and negotiating the Plan and the issues presented by the Debtors' prepetition capital structure.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. Confirmation of the Plan. All requirements for Confirmation of the Plan have been satisfied. The Plan is approved and confirmed in its entirety under section 1129 of the Bankruptcy Code. Each of the terms and conditions of the Plan and the exhibits and schedules thereto, including, without limitation, the Plan Supplement, are an integral part of the Plan. The Plan complies with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. The Plan, as modified by the Subsequent Plan Modifications, is deemed accepted by all creditors who have previously accepted the Plan and such acceptances cannot be withdrawn, and the Debtors are not required to prepare or distribute a new disclosure statement with respect to the Subsequent Plan Modifications.

2. Objections. All Objections to Confirmation of the Plan that have not been withdrawn, waived, or settled and all reservations of rights included therein, are overruled on the merits and for the reasons set forth on the record at the Confirmation Hearing, and all withdrawn objections are deemed withdrawn with prejudice. Notwithstanding the foregoing, the rights and objections of any party that properly Filed and served an objection to its applicable Cure Claim Amount (or that is otherwise identified on Exhibit B to the Debtors' confirmation brief) are reserved with respect to such Cure Claim Amount, and such Cure Claim Amount dispute shall be treated in accordance with Paragraph 24(b) of this Confirmation Order.

3. Provisions of Plan Nonseverable and Mutually Dependent. The provisions of the Plan are (i) non-severable and mutually dependent; (ii) valid and enforceable pursuant to their terms; and (iii) integral to the Plan, and may not be deleted or modified except in accordance with Article XII.D of the Plan.

4. Plan Classification Controlling. The classification of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots tendered to or returned by the Debtors' creditors in connection with voting on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims or Equity Interests under the Plan for distribution purposes, (c) may not be relied upon by any creditor or interest holder as representing the actual classification of such Claims or Equity Interests under the Plan for distribution or any other purpose (other than for evidencing the vote of such party on the Plan), and (d) shall not be binding on the Debtors, the Reorganized Debtors or holders of Claims or Equity Interests for purposes other than voting on the Plan.

5. Distributions are Fair. The distribution of Cash and applicable Plan Securities and Documents to the Holders of Allowed Claims are fair and for reasonably equivalent value.

6. Binding Effect. Pursuant to section 1141 and the other applicable provisions of the Bankruptcy Code, effective as of the Effective Date and without limiting or altering Article X.H of the Plan, the provisions of the Plan (including the exhibits and schedules to, and all documents and agreements executed pursuant to or in connection with, the Plan) and this Confirmation Order shall be binding on (a) the Debtors and the Reorganized Debtors, (b) all Holders of Claims against and Equity Interests in the Debtors, whether or not Impaired under the Plan and whether or not such Holders have accepted or rejected the Plan or affirmatively voted to reject the Plan, (c) each Person or Entity receiving, retaining or otherwise acquiring property under the Plan, and (d) any non-Debtor party to an Executory Contract or Unexpired Lease with the Debtors.

7. Corporate Existence. Subject to the Restructuring Transactions permitted by paragraph 17 of this Confirmation Order, after the Effective Date, the Reorganized Debtors shall continue to exist as separate legal entities in accordance with the applicable law in the respective jurisdiction in which they are incorporated or formed and pursuant to their respective certificates or articles of incorporation and by-laws, or other applicable organizational documents, in effect immediately prior to the Effective Date, except to the extent such certificates or articles of incorporation and by-laws, or other applicable organizational documents, are amended, restated or otherwise modified under the Plan, and to the extent that such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial or federal law). Notwithstanding anything to the contrary herein, the Claims against a particular Debtor or Reorganized Debtor shall remain the obligations solely of such Debtor or Reorganized Debtor and shall not become obligations of any other Debtor or Reorganized Debtor solely by virtue of the Plan or the Chapter 11 Cases.

8. Vesting of Assets in the Reorganized Debtors Free and Clear of Liens and Claims. Except as otherwise expressly provided in the Plan, this Confirmation Order, or any Restructuring Document, pursuant to sections 1123(a)(5), 1123(b)(3), 1141(b) and (c) and other applicable provisions of the Bankruptcy Code, on and after the Effective Date, all property and assets of the Estates of the Debtors, including all claims, rights, and Litigation Claims of the Debtors, and any other assets or property acquired by the Debtors or the Reorganized Debtors during the Chapter 11 Cases or under or in connection with the Plan (other than the Carve Out Reserve), shall vest in the Reorganized Debtors free and clear of all Claims, Liens, charges, and other encumbrances, subject to the Restructuring Transactions and Liens which survive the

occurrence of the Effective Date as described in Article III of the Plan (including, without limitation, each Prepetition Credit Agreement Lien and other Liens that secure the Exit Facility Loans and the Postpetition Hedge Agreements, and all other obligations of the Reorganized Debtors under the Exit Facility Loan Documents and the Postpetition Hedge Agreements). On and after the Effective Date, the Reorganized Debtors may (i) operate their respective businesses, (ii) use, acquire, and dispose of their respective property and (iii) compromise or settle any Claims, in each case without notice to, hearing before, supervision of or approval by this Court and free and clear of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules, other than restrictions expressly imposed by the Plan or this Confirmation Order.

9. Exit Facility Loan Documents.

(a) On the Effective Date, the Debtors and the Reorganized Debtors, as applicable, shall be authorized to execute and deliver, and to consummate the transactions contemplated by, the Exit Facility Loan Documents, in each case in form and substance acceptable to the Required Consenting Creditors in the manner set forth in the Plan Support Agreement and without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity (other than as expressly required by the Exit Facility Loan Documents). On the Effective Date, the Exit Facility Loan Documents shall constitute legal, valid, binding and authorized indebtedness and obligations of the Reorganized Debtors, enforceable in accordance with their respective terms and such indebtedness and obligations shall not be, and shall not be deemed to be, enjoined or subject to discharge, impairment, release or avoidance under the Plan, this Confirmation Order or on account of the Confirmation or Consummation of the Plan. For the avoidance of doubt, any

letter of credit issued and outstanding under the Prepetition Credit Agreement on the Effective Date shall be deemed issued under the Exit Facility Credit Agreement.

(b) On and as of the Effective Date, all Prepetition Credit Agreement Lenders shall be deemed to be parties to, and bound by, the Exit Facility Credit Agreement, without the need for execution thereof by any such applicable Prepetition Credit Agreement Lender; provided however that, with respect to any Prepetition Credit Agreement Lender that fails to execute and deliver its signature page to the Exit Facility Credit Agreement, any portion of the Cash to be distributed pursuant to or in connection with the Plan to such Prepetition Credit Agreement Lender shall be treated as an undeliverable distribution pursuant to Article VII.D.4 of the Plan until such Prepetition Credit Agreement Lender executes and delivers to Reorganized Parent its signature page to the Exit Facility Credit Agreement.

(c) By voting to accept the Plan, each Prepetition Credit Agreement Lender is deemed to have instructed and directed the Prepetition Credit Agreement Agent, pursuant to Article XI of the Prepetition Credit Agreement, and each such vote to accept the Plan shall, for all purposes, constitute an instruction from such Prepetition Credit Agreement Lender directing the Prepetition Credit Agreement Agent and the Exit Facility Agent (as applicable), to (i) act as Distribution Agent to the extent required by the Plan, (ii) execute and deliver the Exit Facility Loan Documents (each to the extent it is a party thereto), as well as to execute, deliver, file, record and issue any notes, documents (including UCC financing statements), or agreements in connection therewith, to which the Exit Facility Agent is a party and to promptly consummate the transactions contemplated thereby, and (iii) take any other actions required or contemplated to be taken by the Exit Facility Agent and/or the Prepetition Credit Agreement Agent (as applicable) under the Plan or any of the Restructuring Documents to which it is a party.

10. No Discharge or Release of Prepetition Credit Agreement Claims or Liens. Notwithstanding anything in the Plan or this Confirmation Order to the contrary, (i) pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors and Reorganized Debtors are deemed to have waived discharge or release of the Prepetition Credit Agreement Claims as restructured in the Exit Facility Credit Agreement and (ii) all property and assets of the Estates of the Debtors, including, without limitation, all claims, rights and Litigation Claims of the Debtors and any property and assets acquired by the Debtors or the Reorganized Debtors during the Chapter 11 Cases or under or in connection with the Plan, shall remain encumbered by and subject to the Prepetition Credit Agreement Liens and other Liens granted under the Exit Facility Loan Documents, which, as of the Effective Date, shall secure the Exit Facility Loans and all other indebtedness and obligations of the Reorganized Debtors under and to the extent set forth in the Exit Facility Loan Documents and the Postpetition Hedge Agreements, and such Liens (x) shall be and hereby are ratified, reaffirmed as valid, enforceable, and not avoidable, and deemed granted by the Reorganized Debtors and (y) shall not be, and shall not be deemed to be, impaired, discharged or released by the Plan, the Confirmation Order or on account of the Confirmation or Consummation of the Plan.

11. Postpetition Hedge Agreements. Notwithstanding anything in the Plan or the Postpetition Hedge Order to the contrary, pursuant to section 1141(d)(4) of the Bankruptcy Code and the Postpetition Hedge Order, the Debtors and the Reorganized Debtors have waived discharge or release of the Postpetition Hedge Claims and, upon the Effective Date: (i) (a) the collateral securing the Reorganized Debtors' obligations under the Postpetition Hedge Agreements shall become co-extensive with the collateral securing the Exit Facility Loans, and (B) the Postpetition Hedge Claims and Postpetition Hedge Liens of the Postpetition Hedge

Providers shall become *pari passu* with the respective Claims and Liens of the Exit Facility Agent and Exit Facility Lenders under and in connection with the Exit Facility Loans, in each case, as provided in the Exit Facility Loan Documents; and (iii) paragraphs 5, 6(c), 6(d), 6(e), 6(f) and 8 of the Postpetition Hedge Order shall be replaced by the applicable terms of the Plan, this Confirmation Order, the Exit Facility Loan Documents, and the Postpetition Hedge Agreements.

12. New Equity Interests. On the Effective Date, subject to the terms and conditions of the Restructuring Transactions, Reorganized Parent shall issue the New Equity Interests pursuant to the Plan and the Amended/New Organizational Documents. Except as otherwise expressly provided in the Restructuring Documents, the Reorganized Parent shall not be obligated to register the New Equity Interests under the Securities Act or to list the New Equity Interests for public trading on any securities exchange. Distributions of the New Equity Interests may be made by delivery or book-entry transfer thereof by the applicable Distribution Agent in accordance with the Plan and the Amended/New Organizational Documents. Upon the Effective Date, after giving effect to the transactions contemplated by the Plan and this Confirmation Order, the authorized capital stock or other equity securities of Reorganized Parent shall be that number of shares of New Equity Interests as may be designated in the Amended/New Organizational Documents.

13. New Stockholders Agreement; New Registration Rights Agreement.

(a) Subject to the Restructuring Transactions permitted by Article V.A of the Plan, on the Effective Date, Reorganized Parent shall enter into the New Stockholders Agreement and the New Registration Rights Agreement, each of which shall become effective and binding in accordance with its terms and conditions upon the parties thereto, in each case

without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity (other than as expressly required by the New Stockholders Agreement and the New Registration Rights Agreement, as applicable).

(b) On and as of the Effective Date, all of the Holders of New Equity Interests shall be deemed to be parties to the New Stockholders Agreement, without the need for execution by such Holder. The New Stockholders Agreement shall be binding on all Persons receiving, and all Holders of, the New Equity Interests (and their respective successors and assigns), whether such New Equity Interest is received or to be received on or after the Effective Date and regardless of whether such Person executes or delivers a signature page to the New Stockholders Agreement.

(c) On and as of the Effective Date, all Backstop Commitment Parties shall be deemed to be parties to the New Registration Rights Agreement, without the need for execution by any such Persons. The New Registration Rights Agreement shall be binding on all such Persons (and their respective successors and assigns) regardless of whether such applicable Person executes or delivers a signature page to the New Registration Rights Agreement.

14. New Management Incentive Plan. As soon as reasonably practicable after the Effective Date, Reorganized Parent shall adopt and implement the New Management Incentive Plan, whose other terms and conditions, including recipients, individual awards and vesting periods, shall be determined by the New Board. The New Management Incentive Plan shall dilute all of the New Equity Interests equally.

15. Consulting Agreements; New Warrants. On the Effective Date, Reorganized Parent shall enter into and consummate the transactions contemplated by the Consulting

Agreements (including issuing the New Warrants), each of which shall become effective and binding in accordance with their respective terms and conditions upon the parties thereto, in each case without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity (other than as expressly required by the Consulting Agreements and the New Warrants, as applicable).

16. Release of Liens and Claims. Except as otherwise provided in this Confirmation Order, the Plan (including, without limitation, Articles V.D, V.E, V.F and V.G thereof) or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to Article VII of the Plan, all Liens, Claims, mortgages, deeds of trust, or other security interests against the assets or property of the Debtors or the Estates shall be fully released, canceled, terminated, extinguished and discharged, in each case without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity. This release, termination, extinguishment and discharge is necessary to implement the Plan and is appropriate, fair, equitable and reasonable and in the best interest of the Debtors, their Estates and holders of Claims and Equity Interests. The filing of this Confirmation Order with any federal, state, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens, Claims and other interests to the extent provided in the immediately preceding sentence. Any Entity holding such Liens, Claims or interests shall, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Reorganized Debtors such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Reorganized Debtors.

17. Restructuring Transactions. On the Effective Date, the applicable Debtors or Reorganized Debtors are authorized to consummate the Restructuring Transactions described in Article V.A of the Plan, subject to the terms and conditions set forth therein, in this Confirmation Order and in the Restructuring Documents.

18. Distributions Exempt from Securities Laws.

(a) On and after the Effective Date, the Debtors and the Reorganized Debtors, as applicable, are authorized to and shall provide or issue, as applicable, the Plan Securities and Documents, in each case in form and substance acceptable to the Required Consenting Creditors in the manner set forth in the Plan Support Agreement, and without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.

(b) The distribution and issuance, as applicable, of the Plan Securities and Documents under the Plan shall be exempt from registration under applicable securities laws (including Section 5 of the Securities Act or any similar state or local law requiring the registration for offer or sale of a security or registration or licensing of an issuer of a security) pursuant to section 1145(a) of the Bankruptcy Code, Section 4(a)(2) of the Securities Act and/or other applicable exemptions. An offering of Plan Securities provided in reliance on the exemption from registration under the Securities Act pursuant to section 1145(a) of the Bankruptcy Code may be sold without registration to the extent permitted under section 1145 of the Bankruptcy Code and is deemed to be a public offering, and such Plan Securities may be resold without registration to the extent permitted under section 1145 of the Bankruptcy Code. Any Plan Securities and Documents provided in reliance on the exemption from registration

under the Securities Act provided by Section 4(a)(2) of such act will be provided in a private placement.

(c) All shares of New Equity Interests issued to (a) Holders of Allowed Claims on account of their respective Claims or in the applicable Rights Offering upon exercise of their respective Subscription Rights, and (b) any Backstop Commitment Parties as a backstop premium pursuant to the Backstop Commitment Agreement, will be issued without registration under the Securities Act or any similar federal, state, or local law in reliance on section 1145(a) of the Bankruptcy Code. All shares of New Equity Interests issued to the Backstop Commitment Parties pursuant to the Backstop Commitment Agreement in satisfaction of their obligations to purchase any unsubscribed shares in the applicable Rights Offering will be issued without registration under the Securities Act or any similar federal, state, or local law in reliance on Section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder.

19. Discharge of the Debtors.

(a) To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by the Plan (including, without limitation, Articles V.D, V.E, V.F, and V.G thereof) or this Confirmation Order, effective as of the Effective Date, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims, Equity Interests and Causes of Action of any kind or nature whatsoever against the Debtors or any of their respective assets or properties, and regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, Equity Interests or Causes of Action.

(b) Except as otherwise expressly provided by the Plan (including, without limitation, Articles V.D, V.E, V.F, and V.G thereof) or this Confirmation Order, upon the Effective Date, the Debtors and their Estates shall be deemed discharged and released under and to the fullest extent provided under sections 524 and 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code. Such discharge shall (i) void any judgment at any time obtained against the Debtors or the Reorganized Debtors, to the extent that such judgment relates to a discharged Claim and (ii) operate as a permanent injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such discharged Claim as a personal liability of any Debtor or Reorganized Debtor.

(c) Except as otherwise expressly provided by the Plan (including, without limitation, Articles V.D, V.E, V.F, and V.G thereof) or this Confirmation Order, upon the Effective Date: (i) the rights afforded by the Plan and the treatment of all Claims and Equity Interests shall be in exchange for and in complete satisfaction, settlement, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors or any of their respective assets, property, or Estates; (ii) all Claims and Equity Interests shall be satisfied, discharged, and released in full, and each of the Debtors' liability with respect thereto shall be extinguished completely without further notice or action; and (iii) all Entities shall be precluded from asserting against the Debtors, the Estates, the Reorganized Debtors, each of their respective successors and assigns, and each of their respective assets and properties, any such Claims or Equity Interests,

whether based upon any documents, instruments or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date or otherwise.

20. Releases and Exculpation. The releases and exculpation provisions contained in the Plan, including, but not limited to, those provided in Article X of the Plan, are hereby authorized, approved and binding on all Persons and Entities described therein. Notwithstanding anything to the contrary in any ballot of a Consenting Creditor, as required by the Plan Support Agreement, all Consenting Creditors shall be and hereby are deemed not to have elected to opt out of any releases under the Plan.

21. Injunctions. The injunctions contained in the Plan, including, but not limited to, those provided in Article X.G of the Plan, are hereby authorized, approved and binding on all Persons and Entities described therein. Except as otherwise expressly provided in the Plan or this Confirmation Order, from and after the Effective Date, all Persons and Entities are, to the fullest extent provided under section 524 and other applicable provisions of the Bankruptcy Code, permanently enjoined from (i) commencing or continuing, in any manner or in any place, any suit, action or other proceeding, (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order, (iii) creating, perfecting, or enforcing any Lien or encumbrance, (iv) asserting a setoff or right of subrogation of any kind, or (v) commencing or continuing in any manner any action or other proceeding of any kind, in each case on account of or with respect to any Claim, demand, liability, obligation, debt, right, Cause of Action, Equity Interest, or remedy released or to be released, exculpated or to be exculpated, settled or to be settled or discharged or to be discharged pursuant to the Plan or this Confirmation Order against any Person or Entity so released, discharged, or exculpated (or the property or estate of any Person or Entity so released, discharged, or exculpated). All injunctions or stays provided for in

the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

22. Plan Indemnity. In addition to the matters set forth in the Plan and not by way of limitation thereof, the Reorganized Debtors shall, and the Debtors shall continue to, indemnify and hold harmless all Persons who are or were managers, officers or directors of any of the Debtors at any time on or after the Petition Date on account of and with respect to any Claims (whether or not any Proof of Claim or cure claim has been Filed with respect thereto) or other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities threatened or asserted by any Person against any such managers, officers or directors with respect to or based upon, in whole or in part, any act taken or omitted to be taken, or alleged act taken or omitted to be taken, in such capacities on or prior to the Effective Date, irrespective of whether such amounts are owed in connection with a prepetition or postpetition act or omission, but in each case only to the extent that the acts, omissions or alleged acts or omissions of such applicable Person were indemnifiable by the Debtors (whether in the bylaws, certificates of incorporation, charters, operating agreements, board resolutions, employment contracts or otherwise listed on Plan Schedule 1 or Plan Schedule 2). The Debtors are further authorized to take such actions, and to execute and deliver such documents, as may be reasonably necessary or appropriate to implement, maintain, cause the binding of, satisfy any terms or conditions of, or otherwise secure for the insureds the benefits of the D&O Tail Policy, in each case without further notice to, hearing before, approval from, or order of this Court.

23. Contracts and Leases. The Debtors have exercised reasonable business judgment in determining whether to assume or reject each of the Executory Contracts and Unexpired Leases as set forth within the Plan, the Plan Supplement, this Confirmation Order or otherwise.

All of the Executory Contracts and Unexpired Leases of the Debtors, including, without limitation, the D&O Liability Insurance Policies, the Indemnification Provisions, the Employee Compensation and Benefit Programs, the Postpetition Hedge Agreements, and the Insurance Contracts, are hereby assumed by the Debtors in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, with such assumption effective as of, and subject to the occurrence of, the Effective Date, except for those Executory Contracts and Unexpired Leases that (i) have been previously assumed or rejected by order of this Court, (ii) are the subject of a motion to assume or reject pending on the Effective Date, (iii) are identified on Plan Schedule 4 or the Plan Supplement, (iv) are rejected pursuant to the terms of the Plan or this Confirmation Order, or (v) previously expired or terminated pursuant to their own respective terms (subject to such exclusions, collectively, the "**Assumed Contracts**"). The Debtors have provided sufficient notice to each non-Debtor counter-party to the Executory Contracts and Unexpired Leases of the assumptions or rejections described in the Plan or the Plan Supplement. The Debtors have also provided adequate assurances of future performance, as that term is used in section 365 of the Bankruptcy Code, with respect to the assumption of any Executory Contract or Unexpired Lease that is to be assumed pursuant to the Plan. To the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned (as applicable) pursuant to the Plan (including, without limitation, any "change of control" provision) prohibits, restricts or conditions, or purports to prohibit, restrict or condition, or is modified, breached or terminated, or deemed modified, breached or terminated by, (i) the commencement of these Chapter 11 Cases or the insolvency or financial condition of any Debtor at any time before the closing of its respective Chapter 11 Case, (ii) any Debtor's or any Reorganized Debtor's assumption or assumption and assignment (as applicable) of such

Executory Contract or Unexpired Lease or (iii) the Confirmation or Consummation of the Plan, then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-debtor party thereto to modify or terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights or remedies with respect thereto, and any required consent under any such contract or lease shall be deemed satisfied by the Confirmation of the Plan. The inclusion or exclusion of a contract or lease on any schedule or exhibit shall not constitute an admission by any Debtor that such contract or lease is an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder. Each Executory Contract and Unexpired Lease assumed and/or assigned pursuant to the Plan shall revest in and be fully enforceable by the applicable Reorganized Debtor or the applicable assignee in accordance with its terms and conditions, except as modified by the provisions of the Plan, any order of this Court approving its assumption and/or assignment, or applicable law.

24. Approval of Assumption of Assumed Contracts.

(a) Court Approval. The Debtors' assumption of the Assumed Contracts is hereby approved pursuant to sections 365(a) and 1123 of the Bankruptcy Code. The Assumed Contracts shall remain in full force and effect in accordance with their respective terms and conditions for the benefit of the Reorganized Debtors, notwithstanding any provision in such Assumed Contract (including, without limitation, those described in sections 365(b), (c), (e) and (f) of the Bankruptcy Code) or under applicable non-bankruptcy law that purports to (a) terminate, modify, or restrict, or permit the applicable non-Debtor party to terminate, modify or restrict, such contract or lease or the Debtors' rights, benefits and privileges thereunder; or (b) create or impose, or permit the applicable non-Debtor party to create or impose, any

additional duties, obligations, penalties, default rates of interest or payments (monetary and non-monetary) upon any Debtor or Reorganized Debtor, in each case as a result of or in connection with (i) the filing of a petition for relief under Chapter 11 of the Bankruptcy Code by the Debtors; (ii) the Debtors' insolvency or financial condition at any time before the Chapter 11 Cases are closed; or (iii) the Confirmation or Consummation of the Plan.

(b) Cure Disputes. Any counterparty to an Assumed Contract that failed to object timely to the proposed assumption, proposed assumption and assignment, or cure amount is hereby deemed to have consented to such matters and is deemed to have forever released and waived any objection to the proposed assumption, proposed assumption and assignment, and cure amount. The amounts, if any, due by the Debtors pursuant to each Assumed Contract that are required to be paid as cure under section 365 of the Bankruptcy Code shall be satisfied by payment of such amount in Cash on the Effective Date, or as soon thereafter as is practicable, or on such other terms as the parties to such Assumed Contract may otherwise agree in writing. In the event of a dispute regarding the amount and timing of any cure payments, the Debtors and applicable non-Debtor parties shall promptly confer after the Effective Date to attempt to resolve any such dispute consensually without further order of this Court. In the event such dispute cannot be resolved consensually by the applicable parties, then the Reorganized Debtors shall, within thirty (30) days after the Effective Date, file a notice of dispute with this Court (and promptly serve such notice on the applicable counter-party) and such dispute shall be set for a status conference at the next scheduled omnibus hearing in these Chapter 11 Cases, with subsequent evidentiary hearings to be established by this Court as and if necessary. The payments, if any, or other actions, if any, that this Court determines the Debtors are required to pay or otherwise perform to assume the applicable Assumed Contract pursuant to section

365(b)(1) of the Bankruptcy Code shall be promptly paid or undertaken as required by Final Order resolving the applicable dispute. If an objection to the proposed cure amount is sustained by Final Order of this Court, the Debtors or Reorganized Debtors, as applicable, in their sole option, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming or assigning it by filing written notice thereof with this Court, and serving such notice on the applicable counter-party, within ten (10) days of the entry of such Final Order. For the avoidance of doubt, nothing in the Plan or this Confirmation Order shall amend or otherwise alter the terms and conditions of any assumed Executory Contract or Unexpired Lease, which shall be assumed by the Reorganized Debtors *cum onere* as of the Effective Date (or such later date as may be approved by order of this Court upon notice and a hearing).

(c) Full Release and Satisfaction of Claims. Subject to any cure claims Filed with respect thereto, assumption or assumption and assignment of any Assumed Contract pursuant to the Plan shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Contract at any time prior to the effective date of assumption or assumption and assignment, in each case as provided in section 365 of the Bankruptcy Code.

(d) Assignment. With respect to any Assumed Contract assumed and assigned pursuant to the Plan, upon and as of the Effective Date, the applicable assignee shall be deemed to be substituted as a party thereto for the applicable Debtor party to such assigned Assumed Contract and, accordingly, the Debtors and the Reorganized Debtors shall be relieved, pursuant to and to the extent set forth in section 365(k) of the Bankruptcy Code, from any further liability under such Assumed Contract.

25. Approval of Rejection of Rejected Contracts. All of the Executory Contracts and Unexpired Leases of the Debtors that are identified on Plan Schedule 5, or that are otherwise rejected pursuant to the terms of the Plan or this Confirmation Order (collectively, the "**Rejected Contracts**"), are rejected by the applicable Debtors and such rejection is hereby approved by this Court pursuant to sections 365(a) and 1123 of the Bankruptcy Code, with such rejection effective as of, and subject to the occurrence of, the Effective Date (the "**Rejection Date**"). Rejection of any Rejected Contract pursuant to the Plan or otherwise shall not constitute a termination of any preexisting obligations owed to the Debtors or the Reorganized Debtors, as applicable, under such Rejected Contract. All Proofs of Claim with respect to Claims arising from or in connection with the rejection of the Rejected Contracts, if any, must be filed with this Court within thirty (30) days after service of an order of this Court (including this Confirmation Order) approving such rejection (such Claims, the "**Rejection Claims**"). Any and all Rejection Claims not filed within such time will, without any further notice to or action of any Person, be forever barred from assertion against the Debtors or Reorganized Debtors, their Estates, or property, unless otherwise ordered by this Court or provided for in the Plan. All Rejection Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in the Plan and this Confirmation Order. At any time prior to the Effective Date, and without altering or limiting the other provisions of the Plan or this Confirmation Order, the Debtors may seek to (i) reject any contract or lease to which any Debtor is a party and to file a motion requesting authorization for the rejection of any such contract or lease and (ii) remove any contract or lease to which any Debtor is a party from Plan Schedule 5 and thereafter file a motion requesting authorization to assume any such contract or lease.

26. Corporate Action

(a) Each of the Debtors and the Reorganized Debtors may take any and all actions to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan, including, without limitation, the issuance and the distribution of the securities to be issued pursuant thereto, in each case in form and substance acceptable to the Required Consenting Creditors in the manner set forth in the Plan Support Agreement and without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers or directors of the Debtors or the Reorganized Debtors or by any other Person (except for those expressly required pursuant to the Plan, this Confirmation Order, or the Restructuring Documents).

(b) Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of the stockholders, directors, officers, managers, members or partners of the Debtors (as of prior to the Effective Date) shall be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the stockholders, directors, officers, managers, members or partners of the Debtors or the Reorganized Debtors, or the need for any approvals, authorizations, actions or consents of any Person.

(c) As of the Effective Date, all matters provided for in the Plan involving the legal or corporate structure of the Debtors or the Reorganized Debtors (including, without limitation, the adoption of the Amended/New Organization Documents and similar constituent and organizational documents, and the selection of directors and officers for, each of the

Reorganized Debtors), and any legal or corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan, shall be deemed to have occurred and shall be in full force and effect in all respects, in each case without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the stockholders, directors, officers, managers, members or partners of the Debtors or the Reorganized Debtors or by any other Person.

(d) On and after the Effective Date, the appropriate officers of the Debtors and the Reorganized Debtors are authorized to issue, execute, and deliver, and consummate the transactions contemplated by, the contracts, agreements, documents, guarantees, pledges, consents, securities, certificates, resolutions and instruments contemplated by or described in the Plan in the name of and on behalf of the Debtors and the Reorganized Debtors, in each case in form and substance acceptable to the Required Consenting Creditors in the manner set forth in the Plan Support Agreement, and without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person. The secretary and any assistant secretary of the Debtors and the Reorganized Debtors shall be authorized to certify or attest to any of the foregoing actions.

27. Authority to Act. Each Debtor and Reorganized Debtor and their respective officers and directors, are authorized and empowered pursuant to Section 303 of the Delaware General Corporation Law and other applicable corporation, limited liability company and limited partnership laws, to take any and all actions necessary or desirable to implement the transactions contemplated by the Plan and this Confirmation Order, in each case without any requirement of further vote, consent, approval, authorization or other action by the stockholders, security

holders, officers, directors, partners, managers, members or other applicable owners or notice to, order of, or hearing before this Court. Each federal, state, and local (domestic or foreign) governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Plan and the transactions contemplated thereby.

28. Exemption From Transfer Taxes. Pursuant to section 1146(a) of the Bankruptcy Code, any issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan, this Confirmation Order or the Restructuring Documents shall not be taxed under any law imposing a Stamp or Similar Tax, and this Court hereby directs the appropriate federal, state or local (domestic or foreign) governmental officials or agents to forgo the collection of any such Stamp or Similar Tax or governmental assessment and to accept for filing and recordation instruments or other documents evidencing such action or event without the payment of any such Stamp or Similar Tax or governmental assessment. Such exemption specifically applies, without limitation, to (i) all actions, agreements and documents necessary to evidence and implement the provisions of, transactions contemplated by and the distributions to be made under the Plan, this Confirmation Order or the Restructuring Documents, (ii) the issuance and distribution of the New Equity Interests or Plan Securities and Documents and (iii) the attachment, perfection, maintenance, or creation of security interests or any Lien as contemplated by the Plan or the Restructuring Documents.

29. Bar Date for Administrative Claims. Except as otherwise provided herein, in the Plan, or under section 503(b)(1)(D) of the Bankruptcy Code, unless previously Filed or paid, requests for payment of Administrative Claims must be Filed with this Court and served on the Reorganized Debtors pursuant to the procedures specified in the notice of the occurrence of the

Effective Date of the Plan, substantially in the form attached hereto as Exhibit 3 (the "**Notice of Effective Date**"), by no later than the Business Day which is thirty (30) days after the Effective Date, or such other date as approved by Final Order of this Court (the "**Administrative Claims Bar Date**"); provided that the foregoing shall not apply to either the Holders of Claims arising under section 503(b)(1)(D) of the Bankruptcy Code or Claims arising under 28 U.S.C. 1930 to either this Court or the United States Trustee Program. Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors or the Reorganized Debtors or their Estates and property and such Administrative Claims shall be deemed discharged as of the Effective Date without further notice to or action, order, or approval of this Court. All Administrative Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in the Plan and this Confirmation Order. Nothing in this section or Article II.A of the Plan shall limit, alter, or impair the terms and conditions of the Claims Bar Date Order with respect to the Claims Bar Date for filing administrative expense claims arising under section 503(b)(9) of the Bankruptcy Code. Any objections to such requests for payment of Administrative Claims must be Filed with this Court and served on the Reorganized Debtors and the requesting party by the later of (a) one hundred twenty (120) days after the Effective Date and (b) sixty (60) days after the Filing of the applicable request for payment of Administrative Claims, if applicable, as the same may be modified or extended from time to time by Final Order of this Court.

30. Professional Fee Claims.

(a) Professional Fees Bar Date. The Professionals or other Entities asserting a Professional Fee Claim for services rendered before the Effective Date must File with this Court and serve on the Reorganized Debtors and such other Entities designed by this Confirmation Order an application for final allowance of such Professional Fee Claim (each a "**Final Fee Application**") by no later than the Business Day that is forty-five (45) days after the Effective Date, or such other date as approved by order of this Court (the "**Professional Fees Bar Date**"); provided that the Reorganized Debtors shall pay Professionals in the ordinary course of business for any work performed on and after the Effective Date, including those fees and expenses incurred by Professionals in connection with the implementation and consummation of the Plan, in each case without further application or notice to, hearing before or order of this Court; provided, further, that any professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses from the Debtors and Reorganized Debtors for services rendered before the Effective Date, without further Court order, pursuant to the Ordinary Course Professionals Order. Each Holder of an Allowed Professional Fee Claim shall be paid in full in Cash by the Reorganized Debtors, including from the Carve Out Reserve, within five (5) Business Days after entry of the order approving such Allowed Professional Fee Claim. The Reorganized Debtors shall not commingle any funds contained in the Carve Out Reserve and shall use such funds to pay only the Professional Fee Claims, as and when allowed by order of this Court. Notwithstanding anything to the contrary contained in the Plan, the failure of the Carve Out Reserve to satisfy in full the Professional Fee Claims shall not, in any way, operate or be construed as a cap or limitation on the amount of Professional Fee Claims due and payable by the Reorganized Debtors.

(b) Service of Final Fee Applications. All Final Fee Applications of Professionals shall be filed with this Court and actually served on or prior to the Professional Fees Bar Date upon the following parties (collectively, the "**Notice Parties**"): (i) Chaparral Energy, Inc., 701 Cedar Lake Boulevard, Oklahoma City, Oklahoma 73114 (Attn: Joseph Evans); (ii) Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Attn: David F. McElhoe, Esq.); (iii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware, 19801 (Attn: Joseph Barsalona, Esq.); (iv) Milbank, Tweed, Hadley & McCloy LLP, 28 Liberty Street, New York, New York 10005 (Attn: Evan Fleck, Esq. and Michael Price, Esq.); (v) Vinson & Elkins LLP, Trammel Crow Center, 2001 Ross Avenue, Suite 3700, Dallas, Texas 75201 (Attn: William L. Wallander, Esq. and Paul E. Heath, Esq.); and (vii) the Office of the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: David L. Buchbinder).

(c) Objections to and Hearing to Approve Final Fee Applications. Any objection to any Final Fee Application must be Filed with this Court, together with proof of service thereof, and served upon the applicable Professional and the other Notice Parties, so as to be actually received no later than 4:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after the Filing of the applicable Final Fee Application (the "**Professional Fees Objection Deadline**"). Only those objections made in writing and timely filed and received by the Professional Fees Objection Deadline will be considered by this Court. If no objection to a Final Fee Application is timely filed and served in accordance with the procedures set forth herein, then this Court may enter a Final Order approving such uncontested Final Fee Application without further notice and the Debtors or the Reorganized Debtors, as applicable may pay the amounts described in such uncontested Final Fee Application (or if any Final Fee

Application is the subject of an objection, the Debtors or the Reorganized Debtors, as applicable, may pay the undisputed amounts described in such Final Fee Application). The hearing to consider approval of the Final Fee Applications, if necessary, will be held as soon as reasonably practicable after the expiration of the Professional Fees Objection Deadline and the date of such hearing will be promptly provided to the applicable Professional and Notice Parties and posted on the Debtors' restructuring website.

31. Funding and Use of Carve Out Reserve.

(a) On or before the Effective Date, the Debtors shall fund the Carve Out Reserve in such amount as determined by the Debtors, with the consent of the Required Consenting Creditors or as determined by order of this Court, as necessary in order to be able to pay in full in Cash the obligations and liabilities for which such reserve was established.

(b) The Cash contained in the Carve Out Reserve shall be used solely to pay the obligations and liabilities for which such reserve was established, with the Unused Cash Reserve Amount (if any) being returned to the Reorganized Debtors. The Debtors and the Reorganized Debtors, as applicable, shall maintain detailed records of all payments made from the Carve Out Reserve, such that all payments and transactions shall be adequately and promptly documented in, and readily ascertainable from, their respective books and records. After the Effective Date, neither the Debtors nor the Reorganized Debtors shall deposit any other funds or property into the Carve Out Reserve without further order of this Court or otherwise commingle funds in the Carve Out Reserve. To the extent the Carve Out Reserve is insufficient to pay in full in Cash the obligations and liabilities for which such reserve was established, then the Reorganized Debtors shall, within five (5) Business Days after entry of an order approving such applicable obligations or liabilities, pay such obligations and liabilities from either Cash on hand

or by drawing under the Exit Facility Credit Agreement to the extent of any availability thereunder.

32. Backstop Commitment Premium. On the Effective Date, New Class A Shares in an amount equal to the Backstop Commitment Premium shall be distributed to the Backstop Commitment Parties under and as set forth in the Backstop Commitment Agreement.

33. Preservation of Royalty and Working Interests. Notwithstanding any other provision in the Plan or this Confirmation Order to the contrary, but without limiting Article III.B.8 of the Plan, on and after the Effective Date, all Royalty and Working Interests granted by any Debtor shall, to the extent required by applicable law, be fully preserved and remain in full force and effect in accordance with the applicable terms of the granting instruments or other governing documents applicable to such Royalty and Working Interests, which granting instruments and governing documents shall equally remain in full force and effect to the extent required by applicable law, and no such Royalty and Working Interests shall be altered or impaired by the Plan or this Confirmation Order.

34. Distributions Under the Plan. All distributions under the Plan shall be made in accordance with Article VII of the Plan.

35. Resolution of Contingent, Unliquidated and Disputed Claims. Except as otherwise ordered by this Court, any Claim that is not an Allowed Claim as of the Confirmation Date shall be determined, resolved, or adjudicated in accordance with the terms of this Confirmation Order and the Plan, including, without limitation, Article VIII of the Plan.

36. No Distributions Pending Allowance. Notwithstanding any other provision of the Plan or this Confirmation Order to the contrary, no payments or distributions of any kind or nature shall be made with respect to all or any portion of a Disputed Claim unless and until all

objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim has become an Allowed Claim pursuant to a Final Order.

37. No Postpetition Interest on Claims. Unless otherwise specifically provided for in the Plan, this Confirmation Order, or Final Order of this Court, or required by applicable bankruptcy law (including, without limitation, as required pursuant to section 506(b) or section 511 of the Bankruptcy Code), postpetition interest shall not accrue or be paid on any Claims and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

38. Reserve for Disputed Claims. The Debtors, the Reorganized Debtors and the Distribution Agent may, in their respective sole discretion, establish such appropriate reserves for Disputed Claims in the applicable Class(es) as it determines necessary and appropriate, in each case with the consent of the Required Consenting Creditors in the manner set forth in the Plan Support Agreement or as approved by order of this Court. Without limiting the foregoing, reserves (if any) for Disputed Claims shall equal, as applicable, an amount of Cash or shares of New Equity Interests equal to 100% of distributions to which Holders of Disputed Claims in each applicable Class would otherwise be entitled under the Plan as of such date if such Disputed Claims were Allowed Claims in their respective Face Amount (or based on the Debtors' books and records if the applicable Holder has not yet Filed a Proof of Claim and the Claims Bar Date has not yet expired); provided, however, that the Debtors and the Reorganized Debtors, as applicable, shall have the right to file a motion seeking to estimate any Disputed Claims.

39. Payment of Statutory Fees; Post-Effective Date Fees and Expenses. All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors. On and after the Effective Date, the Reorganized Debtors shall pay

any and all such fees when due and payable, and shall file with this Court quarterly reports in a form reasonably acceptable to the United States Trustee. Each Debtor shall remain obligated to pay quarterly fees to the Office of the United States Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code. The Reorganized Debtors shall pay the liabilities and charges that they incur on or after the Effective Date for Professionals' fees, disbursements, expenses, or related support services (including reasonable fees, costs and expenses incurred by Professionals relating to the preparation of interim and final fee applications and obtaining this Court's approval thereof) in the ordinary course of business and without application or notice to, or order of, this Court, including, without limitation, the reasonable fees, expenses, and disbursements of the Distribution Agents and the Prepetition Notes Indenture Trustee and the fees, costs, and expenses incurred by Professionals in connection with the implementation, enforcement and Consummation of the Plan and the Restructuring Documents.

40. Payment of Fees and Expenses of Certain Creditors. The Debtors shall, on and after the Effective Date and to the extent invoiced, pay (i) the Prepetition Credit Agreement Agent & Lenders Fees and Expenses, (ii) the Ad Hoc Noteholders Committee Fees and Expenses, and (iii) the Backstop Parties Fees and Expenses (in each case whether accrued prepetition or postpetition and to the extent not otherwise paid during the Chapter 11 Cases), without application by any such parties to this Court, and without notice and a hearing pursuant to section 1129(a)(4) of the Bankruptcy Code or otherwise; provided, however, if the Debtors or the Reorganized Debtors and any such Entity cannot agree with respect to the reasonableness of the fees and expenses (incurred prior to the Effective Date) to be paid to such party, the reasonableness of any such fees and expenses shall be determined by this Court (with any

undisputed amounts to be paid by the Debtors on or after the Effective Date (as applicable) and any disputed amounts to be escrowed by the Reorganized Debtors). The payment and reimbursement for amounts incurred prior to the Effective Date described in this paragraph and Article V.W of the Plan shall be done in accordance with paragraph 5 of the Plan Support Agreement Order. Notwithstanding anything to the contrary in this Confirmation Order or the Plan, the fees and expenses described in this paragraph and Article V.W of the Plan shall not be subject to the Administrative Claims Bar Date.

41. Payment of Fees and Expenses of Indenture Trustee. The Debtors shall, on and after the Effective Date and upon the presentment of invoices in customary form (which may be redacted to preserve any confidential or privileged information), pay the Prepetition Notes Indenture Trustee Fees and Expenses (in each case whether accrued prepetition or postpetition and to the extent not otherwise paid during the Chapter 11 Cases), without application by any party to this Court, and without notice and a hearing pursuant to section 1129(a)(4) of the Bankruptcy Code or otherwise; provided, however, if the Debtors or Reorganized Debtors and the Prepetition Notes Indenture Trustee cannot agree with respect to the reasonableness of any Prepetition Notes Indenture Trustee Fees and Expenses (incurred prior to the Effective Date), the reasonableness of any such Prepetition Notes Indenture Trustee Fees and Expenses shall be determined by this Court (with any undisputed amounts to be paid by the Debtors on or after the Effective Date (as applicable) and any disputed amounts to be escrowed by the Reorganized Debtors). Nothing herein or in the Plan shall be deemed to impair, waive, or discharge the Prepetition Notes Indenture Trustee Charging Lien for any amounts not paid pursuant to the Plan or this Confirmation Order and otherwise claimed by the Prepetition Notes Indenture Trustee pursuant to and in accordance with the Prepetition Notes Indentures. From and after the

Effective Date, the Reorganized Debtors shall pay any Prepetition Notes Indenture Trustee Fees and Expenses in full in Cash without further court approval. The payment and reimbursement for amounts incurred prior to the Effective Date described in this paragraph and Article V.X of the Plan shall be done in accordance with paragraph 5 of the Plan Support Agreement Order. Notwithstanding anything to the contrary in this Confirmation Order or the Plan, the fees and expenses described in this paragraph and Article V.X of the Plan shall not be subject to the Administrative Claims Bar Date.

42. Termination of the Old Parent Interests. On and as of the Effective Date, the Old Parent Interests shall be terminated, cancelled and extinguished.

43. Notice of Confirmed Plan. In accordance with Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c), as soon as reasonably practicable after the Confirmation Date, the Debtors shall serve a notice of entry of this Confirmation Order, substantially in the form attached hereto as Exhibit 4 (the "**Notice of Confirmed Plan**") by first-class mail, postage prepaid on all known creditors, equity security holders, the U.S. Trustee and other parties-in-interest in these Chapter 11 Cases; provided, however, that such notice need not be given or served under or pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or this Confirmation Order to any Person or Entity to whom the Debtors mailed a notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved-left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Person or Entity of that Person's or Entity's new mailing address. The notice described herein is adequate and appropriate under the particular circumstances and no other or further notice is necessary or required. The Notice of Confirmed Plan shall have the effect of an order of this Court, shall constitute sufficient notice of the entry of the Confirmation Order to

such filing and recording officers and shall be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

44. No Liability for Solicitation. Based on the factual findings described in this Confirmation Order, the Debtors, the Reorganized Debtors and each of their respective Related Persons are not, and on account of or with respect to the offer, issuance, sale, or purchase of any security under the Plan, and/or solicitation of votes on the Plan, shall not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the distribution, offer, issuance, sale, or purchase of any securities, including, without limitation, the applicable Plan Securities and Documents under the Plan. The Debtors, the Reorganized Debtors and each of their respective Related Persons have solicited votes on the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and all other applicable rules, laws, and regulations and are, therefore, entitled to, and are hereby granted, the protections afforded by section 1125(e) of the Bankruptcy Code.

45. [intentionally deleted]

46. Estimation Proceedings and Other Rights. Any and all rights of the Debtors and Reorganized Debtors under section 502(c) and section 502(e) of the Bankruptcy Code are reserved.

47. [intentionally deleted]

48. Failure to Consummate Plan. If the Confirmation or the Consummation of the Plan does not occur with respect to one or more of the Debtors, then the Plan shall, with respect to such applicable Debtor or Debtors, be null and void in all respects and nothing contained in the Plan, the Disclosure Statement or this Confirmation Order shall: (1) constitute a waiver or

release of any claims by or Claims against or Equity Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, any Holders or any other Entity; (3) constitute an Allowance of any Claim or Equity Interest; or (4) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any Holders or any other Entity in any respect.

49. Successors and Assigns. The rights, benefits and obligations of any Person or Entity named or referred to in the Plan or this Confirmation Order shall be binding on, and shall inure to the benefit, of any heir, executor, administrator, successor or assign of each such Person or Entity.

50. No Successors In Interest. Except as to obligations expressly assumed pursuant to the Plan, the Reorganized Debtors shall not be deemed to be successors to the Debtors and shall not assume, nor be deemed to assume, or in any way be responsible for, any successor liability or similar liability with respect to the Debtors or the Debtors' operations that are not expressly assumed or reinstated in connection with, or expressly provided by, the Plan or this Confirmation Order.

51. Return of Deposits. Notwithstanding anything to the contrary in the Plan or in an order previously entered by this Court, all adequate assurance deposits provided by the Debtors to utility providers pursuant to the *Final Order Under 11 U.S.C. §§ 105(a) and 366 (I) Prohibiting Utility Companies from Altering or Discontinuing Service on Account of Prepetition Invoices, (II) Approving Deposit as Adequate Assurance of Payment, and (III) Establishing Procedures for Resolving Requests by Utility Companies for Additional Assurance of Payment* [Docket No. 199] shall be returned to the Reorganized Debtors within ten (10) Business Days of the applicable utility receiving written notice of the occurrence of the Effective Date.

52. Retention of Jurisdiction. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, this Court shall retain exclusive jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters arising under or in, or related to, the Chapter 11 Cases, the Debtors, and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction over the matters set forth in Article XI of the Plan. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Confirmation Order. Notwithstanding the foregoing or any provision of this Confirmation Order to the contrary, any dispute arising under or in connection with the Exit Loan Facility shall be dealt with in accordance with the provisions of the applicable Exit Loan Facility Document. For the avoidance of doubt, this Court shall retain exclusive jurisdiction over all matters arising under, in connection with, and related to, that certain *Motion for Entry of Orders (I) Establishing Bidding and Sale Procedures; (II) Approving the Sale of Assets; and (III) Granting Related Relief* [Docket No. 846] (the "**Pipeline Sale Motion**"), that certain *Complaint for Order Authorizing the Sale of Property of the Estate and of Co-Owner Pursuant to Section 363(h) of the Bankruptcy Code (Adversary Case 17-50052)* [Docket No. 850] (the "**Pipeline Adversary Proceeding**"), any order entered in connection therewith, and any sale or other transaction described therein or contemplated thereby (collectively, the "**Pipeline Sale**"). The Reorganized Debtors may, at their discretion, seek or continue to seek an order approving the sale, transfer, or other disposition of the Pipeline pursuant to the Bankruptcy Code, including section 363 thereof, and subject to the terms of the Pipeline Bidding Procedures Order, and such sale, transfer, or other disposition shall be considered a Restructuring Transaction.

53. Headings. The headings contained within this Confirmation Order are used for the convenience of the parties and shall not alter or affect the meaning of the text of this Confirmation Order.

54. Existing Board of Directors. The existing boards of directors and other governing bodies of the Debtors shall be deemed to have resigned on and as of the Effective Date, in each case without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person or Entity.

55. References to Plan Provisions. The failure specifically to include or reference any particular article, section or provision of the Plan (and the Plan Supplement) or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section or provision, it being the intent of this Court that the Plan (and the exhibits and schedules thereto) be confirmed in its entirety and any related documents be approved in their entirety and incorporated herein by reference.

56. No Admission or Waiver. None of the filing of the Plan, any statement or provision contained within the Plan or the taking of any action by any Debtor with respect to the Plan (and Plan Supplement), the Disclosure Statement or Confirmation Order shall be or shall be deemed to be an admission or wavier of any rights of any Debtor.

57. Confirmation Order Controlling. The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, however, that if there is any conflict or inconsistency between the Plan and this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the terms of this Confirmation Order shall control and govern.

58. Immediate Effectiveness of this Confirmation Order. Pursuant to Bankruptcy Rule 3020(e), the fourteen day stay of this Confirmation Order imposed thereby is waived and the Debtors are hereby authorized to consummate the Plan and the transactions contemplated thereby immediately upon the entry of this Confirmation Order upon the Court's docket, subject to the satisfaction or waiver of the conditions set forth in Article IX of the Plan.

59. Final Order. This Confirmation Order is a final order and the period in which an appeal thereof must be filed shall commence upon its entry.

60. Termination of Challenge Period. The Challenge Period (as defined in the Interim Cash Collateral Orders) terminated prior to the entry of this Confirmation Order, and the stipulations, admissions, findings, relief, releases, and other provisions contained in the Interim Cash Collateral Orders shall be binding on the Debtors' estates and all parties in interest.

61. Miscellaneous/Reservations of Rights.

(a) Claims of Governmental Units. Nothing in this Confirmation Order or the Plan discharges, releases, precludes, or enjoins: (i) any liability to any Governmental Unit that is not a "claim" as defined in 11 U.S.C. § 101(5); (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date; (iii) any police or regulatory liability to a Governmental Unit that any entity would be subject to as the post-Confirmation owner or operator of property; or (iv) any liability to a Governmental Unit on the part of any Person other than the Debtors or Reorganized Debtors. Nor shall anything in this Confirmation Order or the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence. Notwithstanding any provision of the Plan, this Confirmation Order, or any implementing or supplementing plan documents, the United States' setoff rights under federal law as recognized in section 553 of the Bankruptcy Code, and

recoupment rights, shall be preserved and are unaffected. Nothing in this Confirmation Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Confirmation Order or the Plan or to adjudicate any defense asserted under this Confirmation Order or the Plan.

(b) Cimarron National Grassland. As part of its regular operations, the Debtors have maintained and operated, and the Reorganized Debtors will continue to maintain and operate, on the Cimarron National Grassland, land under the jurisdiction and control of the United States Department of Agriculture, certain tanks, piping, and related equipment for the storage and/or transmission of natural gas and/or other petroleum hydrocarbons. Within ninety (90) days of the Effective Date, the Reorganized Debtors shall submit to the Cimarron National Grassland an application for a Special Use Authorization for that facility as required by the Department of Agriculture for activities of private parties on the Cimarron National Grassland or shall remove the Tank Battery Facility currently on the Cimarron National Grassland. Additionally, the Reorganized Debtors agree that, within ninety (90) days of the Effective Date, they shall commence an assessment of the Cimarron National Grassland lands potentially affected by past operations at the Tank Battery Facility and shall address any environmental contamination at that facility.

(c) Ad Valorem Taxes. Ad valorem taxes for the 2017 tax year are hereby designated to be post-confirmation debt incurred in the ordinary course of business by the Reorganized Debtors, to be timely paid in the ordinary course by them without the necessity of the filing of administrative expense claims or requests for payments, and if not so timely paid, will be subject to state court collection procedures without the necessity of further recourse to this Court.

(d) Insurance Contracts. Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Restructuring Documents, this Confirmation Order, or any notice relating to the assumption of executory contracts or leases or any notice of cure amount, any other document related to any of the foregoing or any other order of this Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction or release, or requires a party to opt-out of a release): (a) on the Effective Date, each Insurance Contract and each Employee Compensation and Benefit Program (including, without limitation, LINA Group Life Insurance Policy No. FLX-966856, LINA Group Accident Policy No. OK-968361, LINA Group Long-Term Disability Policy No. LK-964709, LINA Agreement for Administrative Services Only No. SHD-962698 (Short Term Disability), LINA Administrative Services Agreement No. FML-962698 (Family Medical Leave), and CBH Agreement for Life Assistance Program Services (associated with LINA LTD Policy No. LK-964709) (in each case, including all amendments, exhibits, schedules, certificates, renewal caveats and addendums related thereto)) will be deemed and treated as an Executory Contract that is and will be assumed by the Debtors pursuant to sections 105, 365(a) and 1123 of the Bankruptcy Code without the need or requirement of any Insurer or beneficiary to File, or serve any objection to, a proposed cure amount or Cure Claim Amount, or a request, application, claim, Proof of Claim, proof or motion for payment or allowance of any Administrative Claim or Allowed Administrative Claim; (b) all terms, conditions, rights, claims (including claims by operation of subrogation), liabilities, obligations, defenses, limitations and exclusions set forth in, or arising pursuant to any Insurance Contract or Employee Compensation and Benefit Program shall survive and shall not be amended, modified, waived, released, discharged or impaired in any respect and shall remain in full force and effect and subject to applicable non-

bankruptcy law, and the Reorganized Debtors and/or Released Parties, as applicable, shall remain liable for all obligations thereunder regardless of whether they arise before or after the Effective Date; (c) any liens and/or claims of US Specialty on collateral pursuant to the Insurance Contracts between US Specialty and the Debtors (including any trust agreement), including but not limited to (i) any prepetition or post-petition letters of credit, (ii) any funds it is holding and/or being held for it, whether in trust, security or otherwise and (iii) any substitutions or replacement of said funds (including accretions to and interest earned on said funds), as well as any set-off and/or recoupment rights of US Specialty shall not be released, primed or otherwise effected; and (d) to the extent that US Specialty pays any Claim of a third-party on account of its obligations as surety and subrogates to such Claim or any Claim that US Specialty could be subrogated to, such Claim and any lien and/or right of setoff and/or recoupment pursuant to such Claim shall not be disallowed or released; (e) unless previously effectuated by separate order entered by this Court, entry of this Confirmation Order shall constitute this Court's approval of the Debtors' assumption of each of the Insurance Contracts and Employee Compensation and Benefit Programs; and (f) Confirmation and Consummation of the Plan will not impair or otherwise modify any available defenses of the Reorganized Debtors, or any Insurer under any Insurance Contract or Employee Compensation and Benefit Program.

(e) Bank of New York Mellon. Effective as of the Effective Date, the Bank of New York Mellon, in its capacity as escrow agent pursuant to the Subscription Escrow Agreement (as defined in the Backstop Commitment Agreement), and its Related Persons shall neither have nor incur any liability to any Entity for any Claims or Causes of Action arising prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to, the Backstop Commitment Agreement, the Noteholders Rights Offering, or the issuance or

distribution of the New Equity Interests; provided that the exculpation set forth in this paragraph shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence actual fraud, or willful misconduct.

(f) Newfield Exploration. Notwithstanding any provision contained in the Plan or this Confirmation Order to the contrary, the rights, claims, and defenses of Newfield Exploration Company, Newfield Exploration Mid-Continent Inc., and Newfield Production Company (collectively, "**Newfield**") are preserved with respect to the Debtors' pooling election dispute involving Meier 1H-35X Well, 2-17N-10W, Blaine Co. and may be asserted in any future proceedings, including any proceedings before the Oklahoma Corporation Commission ("**OCC**"), and nothing in this Confirmation Order or the Plan shall enjoin Newfield from asserting such rights, claims and defenses in any current or future proceedings before the OCC.

(g) Seitel Agreements. Notwithstanding anything to the contrary contained in the Plan, any Plan Supplement or this Confirmation Order: (i) all Executory Contracts, including, but not limited to, all 2D and 3D Onshore/Offshore Master Seismic Data Participation and Licensing Agreements and Seismic Data Licensing Agreements and all supplements, amendments, schedules and attachments thereto (collectively, the "**Seitel Agreements**") between any of the Debtors, on the one hand, and any of Seitel Data, Ltd., Seitel Data Corp., Seitel Offshore Corp., Seitel Canada Ltd. f/k/a Olympic Seismic Ltd. and any of their joint ventures, including without limitation Digitel Data Joint Venture (individually and collectively, "**Seitel**"), on the other hand, shall be and hereby are rejected pursuant to section 365 of the Bankruptcy Code and terminated as of the date of entry of this Confirmation Order; (ii) to the extent necessary, the automatic stay under section 362 of the Bankruptcy Code is hereby modified to

permit the termination of the Seitel Agreements; and (iii) the Debtors shall comply with all confidentiality provisions, destruction of data and verification of destruction of data provisions required by the Seitel Agreements, including without limitation the performance and execution of the verification of return/destruction letter between the Debtors and Seitel that has been provided by Seitel to the Debtors.

(h) Merit Energy Company, LLC, Pipeline Sale Motion, and Pipeline Adversary Proceeding. Notwithstanding any other provision of this Confirmation Order or the Plan to the contrary, all rights, claims, interests, and defenses of Merit Energy Company, LLC and its interest owners (collectively, "**Merit**") and Koch Fertilizer, LLC and its affiliates ("**Koch**"), are unaffected and preserved in each case with respect to Merit's ownership of the Pipeline, the pending Pipeline Sale Motion, the Pipeline Adversary Proceeding (or any subsequent actions regarding the Pipeline), and any Pipeline Sale. Without limiting the foregoing and notwithstanding any other provision of this Confirmation Order and the Plan to the contrary:

i. All claims, counterclaims, defenses, damages, rights, and interests of Merit and Koch, whether conferred by contract, statute, the Bankruptcy Code, at law or at equity, including but not limited to any possible administrative claim, secured claim, setoff/offset, recoupment, and other security rights, in each case in or with respect to the Pipeline or proceeds of the Pipeline Sale (collectively, the "**Merit/Koch Claims**"), shall survive and be unaffected by confirmation of the Plan and entry of Confirmation Order, are fully reserved, and will not be released, discharged, or enjoined by the Plan or this Confirmation Order (with all parties' rights, defenses, and objections reserved, including with respect to

the determination and treatment of any asserted Merit/Koch Claims); provided, that the Merit/Koch Claims shall not include Merit's existing general unsecured claim (Claim #1414), which shall be treated as set forth under the Plan, except to the extent such claim is subject to setoff and recoupment in connection with the Pipeline Sale;

ii. No provision of the Plan, this Confirmation Order, the Exit Facility Credit Agreement, or any other related agreement shall impair, encumber, lien, or otherwise grant a security interest in Merit's ownership interest in the Pipeline or Merit's share of any proceeds of the Pipeline Sale;

iii. The Debtors' ownership interest in and ability to sell the Pipeline, the Merit/Koch Claims, and any distribution of sale proceeds arising from or in connection with the Pipeline Sale pursuant to sections 363(h) and 363(j) of the Bankruptcy Code, shall be reserved to the Pipeline Adversary Proceeding; and

iv. Any and all administrative claims (if any) of Merit or Koch arising from or in connection with the Pipeline Sale will be preserved, will not be barred by the Administrative Claims Bar Date, and will be determined in the Pipeline Adversary Proceeding (with all parties' rights, defenses, and objections reserved, including with respect to the determination and treatment thereof).

Dated: March 10, 2017
Wilmington, Delaware

THE HONORABLE LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE