# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CHAPARRAL ENERGY, INC., et al., | Case No. 16-11144 (LSS) |
| Debtors.[1] | (Jointly Administered) |
| | Re: D.I. 789 |

## MEMORANDUM ORDER

Before the Court is the Debtors' objection (the "Claim Objection") to class action proof of claim no. 1316 (the "Class Claim") filed by Naylor Farms, Inc. and Harrel's LLC (together, the "Putative Class Plaintiffs") on behalf of themselves and all other similarly situated claimants (collectively, the "Putative Class"). Having determined that the Court has jurisdiction to consider the Claim Objection as a core proceeding pursuant to 28 U.S.C. §§ 157 and 1334; and having considered: the Claim Objection (D.I. 789), the Putative Class Plaintiffs' response in opposition of the Claim Objection (the "Response") (D.I. 832), the Ad Hoc Committee's objection and joinder to the Claim Objection (D.I. 860), the Debtors' reply in connection with their objection to the Class Claim (the "Reply") (D.I. 864), the testimony and evidence adduced at the hearing conducted before the Court on February 28, 2017 (the "Hearing" or "Hr'g") as well as the oral arguments made by counsel at the

---

[1] The Debtors in these cases, along with the last four digits (or five digits, in cases in which multiple Debtors have the same last four digits) of each Debtor's federal tax identification number, are: CEI Acquisition, L.L.C. (1817); CEI Pipeline, L.L.C. (6877); Chaparral Biofuels, L.L.C. (1066); Chaparral CO2, L.L.C. (1656); Chaparral Energy, Inc. (90941); Chaparral Energy, L.L.C. (20941); Chaparral Exploration, L.L.C. (1968); Chaparral Real Estate, L.L.C. (1655); Chaparral Resources, L.L.C. (1710); Green Country Supply, Inc. (2723); and Roadrunner Drilling, L.L.C. (2399). The Debtors' address is 701 Cedar Lake Blvd., Oklahoma City, OK 73114.

Hearing; and it appearing that adequate notice was given of the Claim Objection; and after due deliberation, the Court **FINDS** as follows:

## Background

1. On May 9, 2016 (the "Petition Date"), the Debtors, including Chaparral Energy, LLC ("Chaparral"), commenced these chapter 11 cases.

### *The Oklahoma Class Action Litigation*

2. Almost five years prior, on June 7, 2011, the Putative Class Plaintiffs filed a class action complaint against Chaparral in the United States District Court for the Western District of Oklahoma (the "Oklahoma District Court").[2]

3. In the Oklahoma Class Action, the Putative Class Plaintiffs assert that Chaparral failed to properly report, account for, and distribute royalty interest payments to the Putative Class, and thus the Putative Class is entitled to recovery for unpaid royalties. On October 13, 2015, the Putative Class Plaintiffs filed a motion with the Oklahoma District Court seeking certification of the Putative Class in the Oklahoma Class Action (the "Class Certification Motion") together with a supporting motion for partial summary judgment. The two motions were fully briefed and under consideration, but before the Oklahoma District Court could rule Chaparral filed its voluntary petition.

4. On July 22, 2016, the Putative Class Plaintiffs sought relief from the stay to permit the Oklahoma District Court to adjudicate both the Class Certification Motion and the motion for partial summary judgment. Chaparral and the Putative Class Plaintiffs reached a resolution of the stay relief motion and stipulated to relief from stay to permit the Oklahoma District Court to determine whether to certify the requested class in the

---

[2] *Naylor Farms, Inc. v. Chaparral Energy, LLC*, No. Civ-11-0634-HE (the "Oklahoma Class Action").

2

Oklahoma Class Action. The Court approved the stipulation reached between the parties (the "Lift Stay Order") (D.I. 412).[3]

*The Bar Date*

5. On July 1, 2016, in an *Order Pursuant to Bankruptcy Rule 3003(c)(3) and Local Rule 2002-1(e) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim (Including for Administrative Expense Claims Arising Under Section 503(b)(9) of the Bankruptcy Code) and Approving the Form and Manner of Notice Thereof* (the "Bar Date Order") (D.I. 270), the Court set the bar date as August 19, 2016 (the "Bar Date").

6. The Putative Class Plaintiffs filed the Class Claim on behalf of themselves and the other members of the Putative Class on August 15, 2016.[4] By the Class Claim, the Putative Class Plaintiffs assert a claim in excess of $150 million based on approximately 6,500 oil and gas leases. The Putative Class Plaintiffs subsequently amended the Class Claim to reduce the amount of their claim to $90 million based on approximately 3,900 leases.[5] The Putative Class Plaintiffs allege that Chaparral has failed to properly report, account for and distribute oil and gas royalties to Royalty Interest Owners.[6] In particular, they allege that Chaparral improperly charged or deducted from royalties owed certain costs that Chaparral was required to absorb under Oklahoma law.

7. By order dated January 17, 2017, the Oklahoma District Court certified the Putative Class with stated modifications (the "Certification Order").[7] Specifically, the

---

[3] The Lift Stay Order provided that the stay relief motion was continued until the September 7, 2016 hearing with respect to the request that the Oklahoma District Court rule on the partial motion for summary judgment. That request has not been brought before the Court.
[4] *See* Debtors' Ex. 17.
[5] *See* Response at 5 n.3.
[6] All capitalized terms not defined herein are given the meaning ascribed to them in the Claim Objection or the Plan (as defined below), as applicable.
[7] *See* Debtors' Ex. 16.

3

Oklahoma District Court certified a class restricted to leases with Mittelstaedt Clauses as explained in the Certification Order. The Oklahoma District Court also recognized that the class definition would need to be modified to specify the class period.[8]

8.    The Debtors filed the Claim Objection on January 26, 2017. In the Claim Objection, the Debtors assert that this court should exercise its discretionary authority and refuse to permit the filing of the Class Claim because it would not be beneficial to apply Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7023 to the Class Claim. The Debtors purport to reserve for future adjudication the question of whether the Class Claim actually satisfies the requisites of Federal Rule of Civil Procedure ("Federal Rule") 23, as well as additional objections on any other basis.[9]

***The Plan***

9.    On December 19, 2016, the Debtors filed their Joint Plan of Reorganization for Chaparral Energy, Inc. and its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code (as amended, the "Plan") (D.I. 665). The Plan treated over $1.7 billion in debt primarily consisting of the Prepetition Notes Claims (allowed in the amount of $1,267,410,336) and the Prepetition Credit Agreement Claims (allowed in the amount of $444,439,907). In the disclosure statement accompanying the Plan, the Debtors projected General Unsecured Claims in the amount of $4.5 million and Convenience Class Claims of $1.3 million. The Debtors separately classified Royalty Payment Litigation Claims, which would include the Class Claim, if allowed. Under the Plan, holders of Royalty Payment

---

[8] On April 17, 2017, the Putative Class Plaintiffs limited the period for its Class Claim in the Oklahoma Class Action to June 1, 2006 in response to the Oklahoma District Court's order on March 30, 2017 directing Putative Class Plaintiffs to file an amended class definition reflecting the pertinent date limiting the period for class claims.
[9] *See, e.g.*, Claim Objection at ¶¶ 3, 9 n.8, 40.

4

Litigation Claims were offered $6 million plus payment of attorneys' fees of up to $1.5 million as a settlement if their class voted to accept the plan. It did not.

10. Under the Plan, the holders of the Prepetition Notes Claims, General Unsecured Claims, and Royalty Payment Litigation Claims (if the class rejected the Plan) receive their pro rata share of the equity of the reorganized companies as well as the opportunity to purchase a pro rata share of the Rights Offering Shares, all as fully described in the disclosure statement for the Plan (D.I. 666), as amended (D.I. 784).

11. The Court confirmed the Plan on March 10, 2017 – just ten days after the Claim Objection was argued and the Court took the matter under advisement. At the confirmation hearing, no party suggested that the Plan could not be confirmed or could not go effective because of this outstanding issue. Subsequently, the Debtors filed a notice stating that the effective date of the Plan was March 21, 2017 (D.I. 977).

12. Assuming a $90 million Class Claim, holders of those claims are entitled to approximately 7% of the equity of the reorganized company.[10]

**Legal Analysis**

13. Whether to permit a class action proof of claim is a matter of discretion. In exercising that discretion, a two-step analysis is performed. *See, e.g., In re Pac. Sunwear of California, Inc.*, No. 16-10882 (LSS), 2016 WL 3564484, at *5 (Bankr. D. Del. June 22, 2016), *reconsideration denied*, No. 16-10882(LSS), 2016 WL 4250681 (Bankr. D. Del. Aug. 8, 2016). First, the court must decide whether it is beneficial to apply Bankruptcy Rule 7023, via Bankruptcy Rule 9014(c), to the claims administration process. *See id.* Second, the court must determine whether the requirements of Federal Rule 23 have been satisfied, such that a

---

[10] The Court realizes this is a rough approximation, but it is sufficient for purposes of this decision.

class proof of claim may properly be filed. *See id.* (citing *In re MF Global Inc.*, 512 B.R. 757, 763 (Bankr. S.D.N.Y. 2014) and *In re Motors Liquidation Co.*, 447 B.R. 150, 157 (Bankr. S.D.N.Y. 2011)). At issue here is only the first step of the analysis, that is, whether to apply Bankruptcy Rule 7023.

14.     While the exercise of this discretion is clearly a fact and case specific analysis, courts have developed a three-factor framework to help guide the court's discretion in determining if Bankruptcy Rule 7023 should be extended to the claims administration process. Those factors are: (1) whether the class was certified pre-petition; (2) whether the members of the putative class received notice of the bar date; and (3) whether class certification will adversely affect the administration of the estate. *See, e.g., In re Musicland Holding Corp.*, 362 B.R. 644, 654 (Bankr. S.D.N.Y. 2007) (the "*Musicland* factors").

15.     No one factor is dispositive; a factor may take on more or less importance in any given case. Here, where the Court determines that the administration of the estate will in no way be adversely impacted, the Court will exercise its discretion to apply Bankruptcy Rule 7023. Each of the factors is discussed in turn.

16.     The first *Musicland* factor weighs against applying Bankruptcy Rule 7023 to the Class Claim, as the Putative Class was not certified prepetition. Nonetheless, the Court would not be alone in exercising its discretion to apply Bankruptcy Rule 7023 in these circumstances. *See, e.g., In re Kaiser Group Intern., Inc.*, 278 B.R. 58, 62-63 (Bankr. D. Del. 2002) (allowing the filing of a class proof of claim where class not certified pre-petition); *see also Gentry v. Siegel,* 668 F.3d 83, 91 (4th Cir.2012) (same); *In re MF Glob. Inc.*, 512 B.R. at

763-65 (same); *In re Connaught Group, Ltd.*, 491 B.R. 88, 98-100 (Bankr. S.D.N.Y. 2013) (same).[11]

17. The second *Musicland* factor weighs in favor of applying Bankruptcy Rule 7023 to the Class Claim as not all putative class members were served with notice of the Bar Date. Debtors' associate vice president of legal, associate general counsel, and corporate secretary, Ms. Byford, testified regarding the Debtors' decision-making process in determining who would be served with the bar date notice. Ms. Byford testified that the Debtors employed a three year look-back period from the Petition Date across all their creditor groups.[12] Debtors picked the three year period to be consistent across all classes and because it gave the Debtors a manageable amount of data.[13] Accordingly, Chaparral provided notice to all Royalty Interest Owners who received payment in the three years prior to the petition date.[14]

18. Consistency may be a virtue in many instances, but not this one. Rigid adherence to a uniform look-back period in the context of determining a company's actual creditors for purposes of bar date notification is not appropriate. Here, the Debtors blindly adhered to a *three year look-back period* in the face of class action litigation commenced *five*

---

[11] While some of these cases involve WARN act claims, which differs from this situation because "[i]n essence, [a WARN act class] is a class created by the bankruptcy itself," *see In re Connaught Grp., Ltd.*, 491 B.R. at 98, others involve non-WARN act class claims where the classes were not certified pre-petition.
[12] *See* Hr'g Tr. 9:15-20.
[13] *See* Hr'g Tr. 10:21-11:23; *see also* Hr'g Tr. 26:10-17("We were trying to do something that was uniform three years across all categories. We were trying to do something manageable. We were trying to do something reasonable . . .").
[14] *See* Hr'g Tr. 10:5-9.

*years earlier*. The result of using that three year look-back period is that not all potential class members were served with notice of the Bar Date.[15]

19. The Debtors are correct that the complaint filed in the Oklahoma Class Action did not contain a defined class period. But, the Putative Class Plaintiffs filed the Oklahoma Class Action on June 7, 2011. As Debtors acknowledged a five year statute of limitations for the claims asserted in the Oklahoma Class Action, the Debtors should have at the very least served the bar date notice on Oklahoma Royalty Interest Owners who received payments going back to June 7, 2006.[16]

20. Despite this obvious conclusion, and after first attempting other theories,[17] the Debtors argued that providing notice to only *current* Royalty Interest Owners was sufficient because court-approved settlements of similar class actions "have almost universally distributed payments to current royalty interest owners based on the understanding that

---

[15] Ms. Byford testified that, in January 2017, she had her revenue manager pull information for a ten year look-back period, which included all Royalty Interest Owners who had received payments from Chaparral since January 2007. *See* Hr'g Tr. 12:12-14:19; 61:17-63:7. That analysis indicated that by serving all creditors of the Debtors in the past three years, the Debtors served approximately 76% of the Royalty Interest Owners they would have served had they employed a ten year look-back period, *see id.* (and 81% by discounting those Royalty Interest Owners whose interests had escheated back to the state, *see* Hr'g Tr. 15:15-18:10).

[16] The Debtors have the names and addresses of all Royalty Interest Owners that Chaparral has paid money to since at least 1999. *See* Hr'g Tr. 48:16-24.

[17] The Debtors' arguments evolved substantially from the Claim Objection to the Hearing. The Debtors originally argued that per the Bar Date Order, Debtors were merely "required to provide notice of the Bar Date to all known 'Royalty Interest Owners,'" which they argued was defined, *by reference to two other motions of the Debtors*, as only the current owners of royalty interests. *See* Claim Objection at ¶ 19. Thus, the Debtors argue that their decision to notice some, but not all, of their actual creditors was condoned by the Court and that their decision to notice all Royalty Interest Owners to whom they had made payments within the three years prior to the Petition Date was an act of magnanimity on their part. *See* Claim Objection at ¶¶ 19-20, 23 n.16; *see also* Hr'g Tr. 70:4-13. This argument changed at the Hearing, where the Debtors relied on language that described Royalty Interest Owners in the current tense to support their argument that they only had to notice current owners of royalty interests. *See* Hr'g Tr. 72:17-76:13. These arguments are rejected out-of-hand as the Court did not bless the three year look-back period or the choice of tense. All other rationale not specifically discussed herein have been considered and rejected.

former royalty interest owners either transferred their rights to payment to the current owner or current royalty owners will forward gains attributable to their predecessors to them directly."[18] Even assuming this is true in most instances,[19] the context in which payment to current royalty interest owners is acceptable is in the settlement of class actions. The settlement of a class action is not before the Court, and, indeed the Debtors are arguing that the Court should exercise its discretion and *refuse* to even permit *the filing of a class claim*. In this wholly different context, the Court will decline the Debtors' invitation to equate class membership for class action settlement purposes with holders of claims against the estate for purposes of determining actual creditors entitled to receive a bar date notice. *See, e.g., Chemetron Corp. v. Jones*, 72 F.3d 341, 345-47 (3d Cir. 1995) (citations omitted) ("If claimants were 'known' creditors, then due process entitled them to actual notice of the bankruptcy proceedings ... As characterized by the Supreme Court, a 'known' creditor is one whose identity is either known or 'reasonably ascertainable by the debtor' ... A creditor's identity is 'reasonably ascertainable' if that creditor can be identified through 'reasonably diligent efforts' ... The requisite search [] focuses on the debtor's own books and records.").

21.    At the hearing, the Debtors also raised a creative—and newly minted—argument: if the Court is inclined to exercise its discretion to permit the filing of a class proof of claim, the class should be limited to those individuals not served. This argument has no basis in the case law; it also misconstrues this factor. Notice does not circumscribe the class; nor does it define the class. Rather, notice is only one factor the court looks to in

---

[18] Declaration of Linda Byford in Support of Debtors' Reply (the "Byford Decl.") (Debtors' Ex. 25) at ¶ 13; *see also id.* at ¶¶ 7, 14-16; Hr'g Tr. 19:18-35:5; 77:17-21; Debtors' Exs. 1-3, 7 (admitted only for the purpose of what Debtors considered at the time they noticed creditors, but not to prove who should have been noticed).
[19] *But see* Hr'g Tr. 52:12-54:25 and Debtors' Ex. 2.

9

determining whether to exercise its discretion in connection with a request to apply Bankruptcy Rule 7023 to the claims administration process.[20]

22. The failure to notify each and every putative class member may not always be fatal to a class claim objection. But, under the facts of this case, the Debtors' failure to notice all Putative Class members weighs in favor of exercising discretion to apply Bankruptcy Rule 7023 to this class claim. To find otherwise would condone the Debtors' failure (albeit, perhaps unintentional) to provide actual notice to its known creditors, whose information was indisputably in the Debtors' books and records.

23. The third *Musicland* factor is "whether class certification will adversely affect the administration of the case." *In re Musicland Holding Corp.*, 362 B.R. at 654. Here it will not.

24. Most of the Debtors' original arguments have been mooted by the Debtors' determination to go forward with confirmation and consummation of their plan of reorganization with this Claim Objection outstanding. For example, the Debtors argued that (i) permitting the Class Claim would adversely affect the administration of the estate "by creating significant uncertainty with respect to the recovery available for their unsecured

---

[20] Though not presented this way, this argument may be some variant of the "second bite" argument: i.e., those individual members of the putative class that received actual notice of the bar date and failed to file an individual proof of claim are provided a 'second bite at the apple,' to the disadvantage of and impingement on the rights of individual creditors who are not members of the putative class and who timely filed their proofs of claim. *See In re Sacred Heart Hosp. of Norristown*, 177 B.R. 16, 23 (Bankr. E.D. Pa. 1995); *In re Jamesway Corp.*, No. 95 B 44821 (JLG), 1997 WL 327105, at *5 (Bankr. S.D.N.Y. June 12, 1997). But, there is also a line of cases, subsequent to *Sacred Heart* and *Jamesway*, and adopted by at least two circuit courts, for the proposition that the tolling rule applicable to class actions outside of the bankruptcy context is also applicable in the bankruptcy context. *See In re TWL Corp.*, 712 F.3d 886, 889 (5th Cir. 2013); *see also Gentry v. Siegel*, 668 F.3d at 91; *In re Connaught Grp., Ltd.*, 491 B.R. at 97; *In re Kaiser Grp. Int'l, Inc.*, 278 B.R. at 64. These cases suggest that the filing of a class proof of claim prior to the bar date preserves the claims of the individual class members pending resolution of the class certification issue such that the failure of a class member to file a proof of claim by the bar date is not fatal.

creditors";[21] (ii) the new equity interests of the reorganized Debtors could not be distributed until after the Claim Objection issues had been resolved;[22] and (iii) the "ongoing uncertainty surrounding the potential recoveries available to unsecured creditors may adversely affect the Debtors' ability to solicit support for their plan."[23] All of this proved to be untrue. The Plan provided treatment as described above for the Putative Class and the treatment did not prove fatal to confirmation or consummation of the Plan. Further, any dilution of recoveries to other unsecured creditors[24] is simply a function of the filing of a claim, not the filing of a class proof of claim.[25] In these circumstances, exercising discretion to apply Bankruptcy Rule 7023 will not adversely impact the estate. *See In re MF Glob. Inc.*, 512 B.R. at 765 (finding that class certification would not adversely affect the administration of the estate because the class claim was timely filed and the trustee had known for some time of its existence); *see also In re Connaught Grp., Ltd.*, 491 B.R. at 99 ("The plaintiff asserted her class claim at the beginning of the case ... The Debtors and the Committee negotiated a plan, and the Debtors proposed a plan, with full knowledge of the unresolved class claim.").

25.     Further, the Court disagrees with the Debtors' assertion that the administration of the estate will be adversely affected by reserving 7% of new equity interests for putative class claimants in the event their claims are ultimately allowed. *Compare In re Connaught Grp., Ltd.*, 491 B.R. at 99 ("there are sufficient funds to pay the

---

[21] *See* Claim Objection at ¶ 2.
[22] *See id.* at ¶ 33.
[23] Claim Objection at ¶ 34.
[24] *See id.* at ¶ 34; *see also* Hr'g Tr. 96:22-25.
[25] The Debtors also contend that because the Class Claim covers 6,500 oil and gas leases, it could be years before this Court (or the Oklahoma District Court) is able to interpret the "unique royalty payment provisions in each and every oil and gas lease covered by the Class [] Claim." Claim Objection at ¶¶ 36-37; *see also* Reply at ¶ 32; Decl. at ¶ 19; Hr'g Tr. 40:2-43:21. However, this argument goes to whether the Putative Class satisfies the requirements of Federal Rule 23, not whether the Court should apply Bankruptcy Rule 7023 in the first instance.

[class] claims if they are allowed, and there [sic] allowance will not jeopardize the consummation of the plan."), *with In re Musicland Holding Corp.*, 362 B.R. at 656 (the class claim, which was a significant percentage of the overall creditor claims, would extend the proceedings indefinitely, and the plan could not be confirmed nor could distributions be resolved until the class claim issues were resolved).

26. Further, the Debtors have not proceeded in a manner that comports with the alleged urgency in finalizing the administration of the estate. The Debtors divorced the question of whether the Court should exercise its discretion to apply Bankruptcy Rule 7023 from the issue of whether the Putative Class Claim should be certified under Federal Rule 23.[26] The Debtors are hard-pressed to argue that allowing the Class Claim will significantly delay administration of the estate when their approach deferred a final determination on this issue to a later date.

27. Finally, the Court notes an additional reason weighing in favor of applying Bankruptcy Rule 7023 in this instance. The Class Claim is based on the allegation that Chaparral is improperly reporting, accounting for, and distributing royalty interest payments to Royalty Interest Owners. The Debtors deny these allegations and, as such, will likely continue to report, calculate and pay royalties in the same fashion post-reorganization. In the event that the Class Claim is well-founded, permitting the filing of the Class Claim could serve as a deterrent against the reorganized Chaparral companies, dissuading the reorganized companies from continuing with the same behavior. *Compare, e.g., In re Zenith Labs., Inc.*, 104 B.R. 659, 662 (D.N.J. 1989) (citing *In re American Reserve Corp.*, 840 F.2d 487, 489 (7th Cir.1988)) ("The class action increases the likelihood that the small claimant will

---

[26] *See, e.g.*, Claim Objection at ¶¶ 3, 9 n.8, 40.

be represented and thereby 'serves a deterrent function by ensuring that wrongdoers bear the costs of their activities'"), *with In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 376 (Bankr. S.D.N.Y. 1997) ("the class claim will not deter an insolvent, non-operating debtor's management or shareholders, or induce them to police future conduct. Here, the debtor has confirmed a liquidating plan that wipes out equity. The managers have moved on to other jobs—the debtor has closed its doors—and the prosecution of the class action will probably not affect how they act in the future.").

### Conclusion

Based on the above discussion, the *Musicland* factors weigh in favor of applying Bankruptcy Rule 7023 in this case.

**WHEREFORE, THE CLAIM OBJECTION IS DENIED.**

BY THE COURT:

Dated: May 24, 2017

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE