IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CHAPARRAL ENERGY, INC., et. al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 16-11144 (LSS)<br><br>(Jointly Administered) |

### Memorandum Order Granting Reorganized Debtors' Objection to Class Action Proof of Claim Filed by Lisa West

Before the Court is Reorganized Debtors' objection ("Objection") to a proof of claim filed by Lisa West, individually and as class representative ("Class Claim"). Having determined that the Court has jurisdiction over the Objection and that it is a core proceeding,[1] and having considered: the Objection,[2] Ms. West's response ("Response")[3] in opposition to the Objection, the Reorganized Debtors' reply ("Reply"),[4] the testimony adduced at the September 8, 2017 hearing, the argument of counsel at the September 27, 2017 hearing, and the agreed-to exhibits;[5] and it appearing that adequate notice was given of the Objection; and after due deliberation, the Court **FINDS** and **CONCLUDES**[6] as follows:

---

[1] The Court has jurisdiction under 28 U.S.C. § 1334(b). This is a core proceeding, 28 U.S.C. § 157(b)(2)(B), and neither party has objected to the entry of a final order by this Court.
[2] Reorganized Debtors' Objection to Class Action Proof of Claim filed by Lisa West, Aug. 9, 2017, D.I. 1128.
[3] Lisa West's Response in Opposition to Reorganized Debtors' Objection to Class Action and Brief in Support, Aug. 23, 2017, D.I. 1139.
[4] Reorganized Debtors' Reply in Connection with their Objection to Class Action Proof of Claim, Sept. 5, 2017, D.I. 1147.
[5] Joint Exhibit List of Chaparral Energy, Inc., and Lisa West, on behalf of herself and all other similarly situated, for the Objection to West Class Action Proof of Claim, Aug. 9, 2017, D.I. 1128.
[6] This Memorandum Order constitutes findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure made applicable to contested matters by Rule 9014 of the Federal Rules of Bankruptcy Procedure.

*Background*

1. On May 9, 2016 ("Petition Date"), Chaparral Energy, Inc. and certain affiliated entities (collectively, "Debtors," or post-confirmation, "Reorganized Debtors"), including Chaparral Energy, LLC ("Chaparral") filed voluntary petitions under chapter 11 of title 11 in this Court.

2. Approximately three months prior, on February 18, 2016, Plaintiffs filed a Petition in the District Court of Pottowatomie County, State of Oklahoma styled *Lisa West and Stormy Hopson, individually and as Class Representatives v. ABC Oil Company, Inc. et al.*, Case No. 1649.[7] By the Petition, Ms. West and her co-plaintiff ("Plaintiffs") commenced a lawsuit against fifteen defendants, including Chaparral. The Petition sounds in four causes of action: private nuisance, ultrahazardous activity, negligence and trespass. As more fully described in the Petition and the numerous exhibits submitted herein, the underlying conduct for which Plaintiffs seek redress is relief associated with earthquakes allegedly caused by injection of wastewater into the Arbuckle formation located in Oklahoma.[8]

3. In the Petition, Plaintiffs seek to certify the following class:

All persons having an insurable interest in real property in the Class Area from 2011 through the time the Class is certified, and thereafter while any injunctive relief granted remains in force.[9]

---

[7] Ex. 8.
[8] *Id.* ¶ 1.
[9] *Id.* ¶ 62. Plaintiffs also ask the Oklahoma Court to certify two subclasses: (i) those who paid earthquake insurance premiums on real property in the Class Area from 2011 through the time the class is certified; and (ii) those who did not. *Id.* ¶ 63.

The "Class Area" is eight counties in Oklahoma: Pottawatomie, Cleveland, Lincoln, McClain, Okfuskee, Oklahoma, Pontotoc and Seminole.[10] The form of relief requested is injunctive relief—both prospective and retrospective—for the cost of earthquake insurance.[11]

4.  The case was removed to the United States District Court for the Western District of Oklahoma.[12] Thereafter, on October 16, 2016, Plaintiffs filed an Amended Complaint against Chaparral and eighteen other defendants. While sounding in the same four counts, the requested class, the definition of "Class Area" and the form of relief all changed. In the Amended Complaint, Plaintiffs seek to certify the following class:

> All persons owning an interest in real property in the Class Area from 2011 through the time the Class is certified, and thereafter while any injunctive relief granted remains in force.[13]

The "Class Area" was increased from 8 counties to 26 counties: Alfalfa, Blaine, Caddo, Canadian, Cleveland, Creek, Dewey, Garfield, Grady, Grant, Hughes, Kay, Kingfisher, Lincoln, Logan, Major, Noble, Okfuskee, Oklahoma, Payne, Pottawatomie, Seminole, Woods, Woodward and Osage.[14] In addition to injunctive relief, Plaintiffs now seek awards for (i) damages to real and personal property, (ii) economic expenses and (iii) economic loss from business interruption.[15]

---

[10] *Id.* ¶ 62.
[11] *Id.* ¶ 2. ("Unlike prior cases filed in Oklahoma, the present action does not seek to recover damages per se. Rather, the present action seeks injunctive relief associated with the need for the class to purchase earthquake insurance being caused by Defendants' conduct. Plaintiffs seek injunctive relief regarding the cost of purchasing earthquake insurance. The injunctive relief is prospective, Plaintiffs ask the Court to order Defendants to pay earthquake premiums as they are incurred in the future; and the injunctive relief requested is also retrospective. Plaintiffs ask the Court, analogous to the equitable awarding of back wages in an employment case, to award back insurance premiums.")
[12] Ex. 34.
[13] *Id.* ¶ 69.
[14] *Id.* ¶ 70.
[15] *Id.* ¶ a-m.

3

5. In their Amended Complaint, Plaintiffs noted Chaparral's bankruptcy case and stated: "The automatic stay arguably prevents the amendment of pleadings against a party in bankruptcy, and Chaparral is believed to be in bankruptcy at present. Therefore, until Chaparral consents to the amendments or the stay is lifted to allow assertion of the Amended Complaint against it, the allegations of the Petition, originally-filed in State Court, will be operative against Chaparral."[16]

6. On May 12, 2017, the District Court (the Honorable Stephen P. Friot, presiding) heard argument on multiple defendants' motions to dismiss. Thereafter, he issued a Minute Order[17] granting certain motions and denying others. As relevant here, the Minute Order grants multiple defendants' motions to dismiss Plaintiffs' request for injunctive relief and applies that ruling to all defendants.[18] As reflected in the transcript of the May 12, 2017 hearing, Judge Friot granted these motions to dismiss because he found Plaintiffs had an adequate remedy at law in the form of damages.[19]

7. On July 18, 2017, Plaintiffs filed their Second Amended Complaint.[20] In their Second Amended Complaint, Plaintiffs refine the class definition and the relief requested to conform to the Minute Order. Specifically, the Plaintiffs ask the Court to certify a class of:

> All persons owning an interest in real property in the Class Area from 2011 through the time the Class is certified.[21]

As for the "Class Area," Plaintiffs added three more counties: Pawnee, McLain and Tulsa.[22] In the Second Amended Complaint, Plaintiffs note that Chaparral emerged from

---

[16] *Id.* ¶ 17 n.11.
[17] Ex. 54.
[18] *Id.* at 2.
[19] Ex. 53. at 49–50.
[20] Ex. 55.
[21] *Id.* ¶ 112.
[22] *Id.* ¶ 113.

4

bankruptcy on March 21, 2017 and Plaintiffs allege that in addition to seeking relief for Chaparral's pre-bankruptcy activities, Chaparral's post-bankruptcy conduct caused two earthquakes for which they also seek relief.[23]

***The Bar Date, the Claims and the Objection***

8.  At Debtors' request, on July 1, 2016, the Court entered an Order establishing August 19, 2016 ("Bar Date") as the date by which claimants were to file claims against the estates.[24]

9.  On July 26, 2016, Ms. West timely filed the Class Claim. The proof of claim form reflects the assertion of an unsecured claim in an undetermined amount.[25] The Petition is attached to the proof of claim form.

10. The Objection was filed on August 9, 2017. By the Objection, Reorganized Debtors assert both that Ms. West cannot meet the requirements of Federal Rule of Civil Procedure 23 and that the Court should decline to exercise its discretion to permit the filing of a class proof of claim under Federal Rule of Bankruptcy Procedure 7023. The Objection further notes the Minute Order dismissing the Amended Complaint and the footnote in the Amended Complaint and questions whether, therefore, the proof of claim continues to assert a claim against the Debtors' estates.

11. Presumably in response to the Objection and to make clear that Ms. West still asserts claims against Chaparral, on August 16, 2017, Ms. West filed an amended proof of claim.[26] The proof of claim form also reflects the assertion of an unsecured claim in an undetermined amount but attaches the Second Amended Complaint.

---

[23] *Id.* ¶¶ 17, 109.
[24] Ex. 5.
[25] Ex. 8.
[26] Ex. 21.

12. At the hearings on the Objection, Chaparral and Ms. West agreed to limit the issue before the Court to Bankruptcy Rule 7023. The parties have reserved for another day the objection based on Rule 23.[27] As Plaintiff amended her proof of claim after the Objection, the Objection will be construed as an objection to both the original proof of claim and the amended proof of claim.

*The Plan*

13. On December 19, 2016, Debtors filed their Joint Plan of Reorganization for Chaparral Energy, Inc. and its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code (as amended, "Plan").[28] The Plan treated over $1.7 billion in debt primarily consisting of the Prepetition Notes Claims (allowed in the amount of $1,267,410,336) and the Prepetition Credit Agreement Claims (allowed in the amount of $444,439,907). In the disclosure statement accompanying the Plan, Debtors projected General Unsecured Claims in the amount of $4.5 million and Convenience Class Claims of $1.3 million.

14. Under the Plan, holders of the Prepetition Notes Claims, General Unsecured Claims, and Royalty Payment Litigation Claims (if the class rejected the Plan, which it did), receive their pro rata share of the equity of the reorganized companies as well as the opportunity to purchase a pro rata share of the Rights Offering Shares, all as fully described in the disclosure statement for the Plan, as amended.[29]

15. The Court confirmed the Plan on March 10, 2017. Subsequently, Debtors filed a notice stating that the effective date of the Plan was March 21, 2017.[30]

---

[27] Debtors have also reserved for another day the ability to object to the propriety of the amendment. Objection to Class Action Proof of Claim, Hr'g Tr. at 5:5–6:21, Sept. 27, 2017, D.I. 1173.
[28] Ex. 15.
[29] Ex. 11.
[30] Ex. 18.

*Legal Analysis*

16. Whether to permit a class action proof of claim is a matter of discretion. In exercising that discretion, a two-step analysis is performed.[31] First, the court must decide whether it is beneficial to apply Bankruptcy Rule 7023, via Bankruptcy Rule 9014(c), to the claims administration process.[32] Second, the court must determine whether the requirements of Federal Rule 23 have been satisfied such that a class proof of claim may properly be filed.[33] At issue here is only the first step of the analysis: whether to apply Bankruptcy Rule 7023.

17. While the exercise of this discretion is a fact and case specific analysis, courts have developed a three-factor framework to help guide the court's discretion in determining if Bankruptcy Rule 7023 should be extended to the claims administration process. Those factors are: (1) whether the class was certified prepetition; (2) whether the members of the putative class received notice of the bar date; and (3) whether class certification will adversely affect the administration of the estate ("*Musicland* factors").[34] No one factor is dispositive; a factor may take on more or less importance in any given case.

18. The first *Musicland* factor weighs against applying Bankruptcy Rule 7023 to the Class Claim, as the putative class was not certified prepetition.

19. The second *Musicland* factor also weighs against applying Bankruptcy Rule 7023 to the Class Claim as notice of the Bar Date was sufficient with respect to Ms. West

---

[31] *See, e.g., In re Chaparral Energy, Inc.*, 571 B.R. 642, 646 (Bankr. D. Del. 2017) ("*Chapparal I*") (citing *In re Pac. Sunwear of Cal., Inc.*, No. 16-10882 (LSS), 2016 WL 3564484, at *5 (Bankr. D. Del. June 22, 2016), *reconsideration denied*, No. 16-10882 (LSS), 2016 WL 4250681 (Bankr. D. Del. Aug. 8, 2016)).
[32] *See id.*
[33] *See id.* (citing *In re MF Global Inc.*, 512 B.R. 757, 763 (Bankr. S.D.N.Y. 2014); *In re Motors Liquidation Co.*, 447 B.R. 150, 157 (Bankr. S.D.N.Y. 2011)).
[34] *See, e.g., In re Musicland Holding Corp.*, 362 B.R. 644, 654 (Bankr. S.D.N.Y. 2007).

7

and the putative class. Under the Third Circuit's *Chemetron* decision,[35] "known creditors" are entitled to actual notice of the bar date, but publication notice will generally suffice as to "unknown creditors." The Third Circuit explains:

> As characterized by the Supreme Court, a "known" creditor is one whose identity is either known or "reasonably ascertainable by the debtor." An "unknown" creditor is one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]." A creditor's identity is "reasonably ascertainable" if that creditor can be identified through "reasonably diligent efforts." Reasonable diligence does not require "impracticable and extended searches ... in the name of due process." A debtor does not have a "duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it."
> Precedent demonstrates that what is required is not a vast, open-ended investigation. The requisite search instead focuses on the debtor's own books and records. Efforts beyond a careful examination of these documents are generally not required. Only those claimants who are identifiable through a diligent search are "reasonably ascertainable" and hence "known" creditors.[36]

To answer whether notice was sufficient, then, depends on whether the members of the putative class were known or unknown creditors at the time the Bar Date Order was entered.

20. Of particular significance here is the nature of the class sought to be certified. At the time the Court entered the Order establishing the Bar Date,[37] the class that Ms. West sought to have certified was:

> All persons having an insurable interest in real property in the [eight named counties] from 2011 through the time the Class is certified, and thereafter while any injunctive relief granted remains in force.[38]

---

[35] *Chemetron Corp. v. Jones*, 72 F.3d 341, 345–47 (3d Cir. 1995).
[36] *Id.* at 346–47 (citations omitted).
[37] The relevant date in an analysis of notice is the date on which a court enters the Bar Date. *Id.* at 345.
[38] Ex. 8 ¶ 62.

8

Whether someone holds an "insurable interest" does not appear to be a question of pure fact, but rather appears to require the application of law to facts. Under Oklahoma law, "there is an insurable interest in property if the insured would gain *some economic advantage* by its continued existence or would suffer *some economic detriment* in case of its loss or destruction."[39] In applying the doctrine, a court must consider the purpose of the insurable interest requirement (e.g. whether the contract of insurance suggests an element of wager on the part of the insured) and whether the recovery by the insured would exceed the actual loss suffered.[40] In its discussion of insurable interests, the Oklahoma Supreme Court observed, "[t]he ordinary person purchasing insurance cannot be expected to understand a term of art such as an insurable interest in a policy of insurance."[41]

21. Here, Debtors provided actual notice of the Bar Date to all persons or entities in their accounting system for the three-year period immediately preceding the Petition Date. Debtors also published notice of the Bar Date in the national edition of The Wall Street Journal, The Oklahoman, a daily newspaper of general circulation in the State of Oklahoma and The Journal Record of Oklahoma City, Oklahoma, a daily newspaper of general circulation in Oklahoma County, Oklahoma.

22. Ms. West contends that such notice was not sufficient. Ms. West does not argue that the names and contact information of all members of the putative class she seeks to represent are contained in Debtors' books and records in a file labeled "holders of

---

[39] *Delk v. Market American Ins. Co.*, 81 P.3d 629, 636 (Okla. 2003) (noting that "the nature of the interest that qualifies as insurable has changed over time and is gradually broadening" and that Oklahoma has adopted the "factual expectation theory" of insurable interest).
[40] *Id.* at 637.
[41] *Id.* at 640.

insurable interests."[42] And no such list exists.[43] Further, she does not argue that the distribution area of the three newspapers in which the Bar Date notices were published fails to include all eight counties or reach the members of this putative class. Nor does Ms. West argue that members of the putative class were not served with actual notice of the Bar Date. Rather, Ms. West posits that there are two groups of people Debtors did not serve with the Bar Date notice whose names and contact information were within Debtors' books and records and who may be, or are likely to be, members of the putative class. In particular, Ms. West contends that Debtors did not serve (i) all "royalty owners living in close proximity to the wells, *and the earthquakes they caused*" or (ii) all landowners to whom Reorganized Debtor paid "surface damages."[44]

23.   There are at least two flaws with this argument. First, Ms. West cites no authority for the proposition that a debtor is required to serve a bar date notice on every person whose address appears in its books and records, or that all such persons are "known creditors." Judge Carey's *New Century* Memorandum, cited by Debtors, suggests the opposite conclusion.[45] Second, Ms. West does not contend that providing notice to these two groups would have reached all persons in the putative class, only that these persons *may* not have otherwise received actual notice and *may* be in the putative class.

---

[42] Indeed, Ms. West does not argue any list exists which contains the members, or potential members, of the putative class.
[43] Ex. 14 ¶ 11.
[44] Response ¶ 17.
[45] *In re New Century TRS Holdings, Inc.*, 450 B.R. 504, 512 (Bankr. D. Del. 2011) (citation omitted) ("The Whites argue that, as customers of the Debtors, they are 'known' creditors because their identity could have been ascertained easily from the Debtors' own books and records. The availability of the Whites' names and address in the Debtors' loan files may have reflected that the Whites were known *customers*, but without more, it did not make them 'known *creditors*.'").

24.     While Debtors' failure to serve a certain group of creditors was a large consideration disfavoring Chaparral's position on the second *Musicland* factor in *Chaparral I*, the differences in the nature of the two classes compel a different result here. In *Chaparral I*, Naylor Farms filed a proof of claim on behalf of a putative class of royalty interest owners. Naylor Farms asserted that Chaparral improperly charged or deducted from royalties paid to the class members certain costs that Chaparral was required to absorb under Oklahoma law.[46] The damages sought were for unpaid royalties and were related to specific identified leases. At the time the Bar Date order was entered the class had not been certified (although the matter was *sub judice* in the trial court), and the class period had not been defined or established. On those facts, the Court found that Debtors' failure to send actual notice of the Bar Date to each and every owner of a royalty interest since June 7, 2006 favored application of Rule 7023.[47] With respect to the Naylor Farms putative class (i) there was a readily identifiable group of putative class members; (ii) Chaparral had in its books and records the names and addresses of all royalty interest owners it had paid money to since at least 1999; and (iii) Chaparral made a decision to serve only current royalty interest owners rather than royalty interest owners back to June 7, 2006.[48]

25.     Here, there is not a readily identifiable group of putative class members whose names and addresses are in Chaparral's database as holders of "insurable interests" that Chaparral chose not to serve. Just as Ms. West does not know who falls within the putative class, neither do Debtors. By its very nature, determining whether any person is within the putative class requires the application of Oklahoma law to determine whether a person

---

[46] *Chapparal I*, 642 B.R. at 644–45.
[47] This was based on the acknowledged statute of limitations in the underlying lawsuit. *Id.* at 647.
[48] *Id.* at 646–48.

11

holds an "insurable interest." Further complicating this analysis is the causation factor.[49] Ms. West has not cited any authority for the proposition that a debtor must do this kind of investigation or analysis to comply with the *Chemetron* standard.

26. For purposes of this Objection, therefore, the Court finds that notice was sufficient with respect to the putative class such that the second *Musicland* factor weighs in favor of declining to apply Bankruptcy Rule 7023 to the Class Claim.[50]

27. The Third *Musicland* factor is whether class certification will adversely affect the administration of the estate. Ms. West argues that any impact on the administration of the estate is minimal because all that remains is distribution, and an appropriate reserve can be established for the putative class members (suggesting $125 million, or 9% of the general unsecured class). Reorganized Debtors respond noting the significant time it will take to determine these claims (assuming the class is certified), the significant cost associated with not only liquidating the claims, but also providing notice to each class member, and the asserted marginal recovery to each potential member of the class.[51] Ms. West contends that the costs would be spread among all defendants in the underlying litigation as Ms. West

---

[49] *See* Response ¶ 25 n.4. It is certain that causality will be a significant issue in the underlying lawsuit. *Id.* ("Plaintiffs will NOT attempt to establish liability in the Western District of Oklahoma nor in the Delaware bankruptcy cases based on market share. Market share liability is not allowed under Oklahoma law. Specific expert analysis will examine each Defendant's specific wells causing particular earthquake swarms and harms resulting therefrom.").

[50] The Court makes no decision on the question of whether notice was legally sufficient with respect to any particular member of the putative class.

[51] Reorganized Debtors also raise in a footnote what they term "serious and difficult issues regarding the securities laws and corporate governance." Reply ¶ 51. Specifically, Reorganized Debtors have concerns about the need to appoint someone to hold any reserved shares, the costs associated therewith, and the fiduciary duties, if any, that person would have. *Id.* ¶ 51 n.20. Ms. West does not respond to this contention. Given the Court's conclusions, this issue need not be addressed.

does not contemplate claims litigation in this Court; rather, she plans to bring a motion to have the class claims liquidated in the Oklahoma District Court.[52]

28. This factor also weighs in favor of declining to apply Bankruptcy Rule 7023 to this putative class. Once, again, the nature of the underlying lawsuit is significant. Here, not only is Ms. West asking the Oklahoma District Court to certify a class of plaintiffs, she is also asking the District Court to certify a class of *defendants*.[53] The defendant class is currently defined as: "All persons operating an underground injection well disposing of wastewater in the Arbuckle formation, or another formation shown to have caused an earthquake, in the Class Area from 2011 through the time the Class is certified."[54]

29. Not surprisingly, Ms. West anticipates proceeding against all defendants, including Chaparral, in one forum, the Oklahoma District Court, and developing evidence, both fact and expert, in a unified fashion with respect to all defendants. In these circumstances (which seem only logical given the contentions in the lawsuit), the pace of this litigation is not only outside of the control of this Court, but also not wholly within Chaparral's control. Because the lawsuit is still in its beginning stages, the Court concludes that the delay attendant to this litigation would create an unwarranted delay in final distributions to unsecured creditors.[55]

---

[52] Objection to Class Action Proof of Claim, Hr'g Tr. at 43:17–44:4.
[53] Ex. 8 ¶¶ 3–4.
[54] Ex. 55 ¶ 129. Plaintiffs reserve the right to amend the defendant class definition to conform to discovery and further investigation. *Id.* ¶ 130.
[55] The Court also notes that Ms. West took no action to pursue the Class Claim in this Court. Ms. West's counsel explains: "And what defendants are saying in terms of accusing plaintiffs of not moving quickly enough here is to say that significant litigation against an unprecedented batch of defendants for an unprecedented set of circumstances should have been moved more quickly because of their bankruptcy. It's not possible. That is simply not something that was doable here." Objection to Class Action Proof of Claim, Hr'g Tr. at 28:6–12. The Court takes counsel's statements as true, and does not fault counsel's strategy in the underlying litigation; nonetheless, the explanation illustrates the Court's concern.

30. Finally, Ms. West contends that "Application of Bankruptcy Rule 7023 would serve to deter Reorganized Debtors from continuing activity that triggers earthquakes that damage property as Class Action Plaintiffs allege."[56] In *Chaparral I*, the Court recognized the important part that class actions can play in dissuading a company from continuing improper behavior, and the validity of considering this factor in a Bankruptcy Rule 7023 analysis. But this factor is not persuasive here for multiple reasons. By the Petition, Ms. West does not seek to prevent Chaparral from engaging in the activity that allegedly triggers earthquakes (i.e. injection into disposal wells). Rather, she seeks to recover the cost of earthquake insurance as well as damages to real and personal property and economic loss from business interruption. Further, there is no allegation that Chaparral is engaging in any illegal or improper conduct. To the extent that the lawsuit could serve as a deterrent to the continuation of Chaparral's conduct, Ms. West has already engaged in the most fruitful deterrent—she has sued Chaparral for its post-bankruptcy activity. If she is successful on her claims for post-bankruptcy conduct, her judgment against Chaparral will presumably be paid with 100-cent dollars, not bankruptcy dollars. Accordingly, the Court concludes that this consideration does not aid Ms. West.

NOW, THEREFORE, **IT IS HEREBY ORDERED**, that Reorganized Debtors' Objection to Class Action Proof of Claim filed by Lisa West is **GRANTED**.

Dated: February 9, 2018

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

---

[56] Response ¶ 27.