# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CHAPARRAL ENERGY, INC., | : | Case No. 16-11144 (LSS) |
| | : | |
| Reorganized Debtor.[1] | : | |
| | : | |

---------------------------------------------------------- x
---------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CHAPARRAL ENERGY, INC., *et al.*,[2] | : | (Joint Administration Requested) |
| | : | |
| Debtors. | : | Case No. 20-_____ (___) |
| | : | |
| | : | **Hearing Date: To be determined** |
| | : | **Objection Deadline: To be determined** |
| | : | |
| | : | |

---------------------------------------------------------- x

**JOINT MOTION FOR THE ENTRY OF (A) A PRELIMINARY APPROVAL ORDER (I) DIRECTING THE APPLICATION OF BANKRUPTCY RULE 7032, (II) PRELIMINARILY APPROVING THE SETTLEMENT, (III) APPOINTING THE SETTLEMENT ADMINISTRATOR, (IV) APPROVING FORM AND MANNER OF NOTICE TO CLASS MEMBERS, (V) CERTIFYING A CLASS, DESIGNATING A CLASS REPRESENTATIVE, AND APPOINTING CLASS COUNSEL FOR SETTLEMENT PURPOSES ONLY, (VI) SCHEDULING A SETTLEMENT FAIRNESS HEARING, AND (B) A JUDGMENT FINALLY APPROVING THE SETTLEMENT**

Chaparral Energy, Inc. and its subsidiaries that are debtors and debtors in possession

(collectively, the "**Debtors**") in the above-captioned cases (the "**2020 Bankruptcy Cases**"), and

---

[1] The Reorganized Debtor in this chapter 11 case, along with the last four digits of the Reorganized Debtor's federal tax identification number, is Chaparral Energy, Inc. (0941). The Reorganized Debtor's address is 701 Cedar Lake Blvd., Oklahoma City, OK 73114.

[2] The Debtors in these cases, along with the last four digits (or five digits, in cases in which multiple Debtors have the same last four digits) of each Debtor's federal tax identification number, are: CEI Acquisition, L.L.C. (1817); CEI Pipeline, L.L.C. (6877); Chaparral Biofuels, L.L.C. (1066); Chaparral CO2, L.L.C. (1656); Chaparral Energy, Inc. (90941); Chaparral Energy, L.L.C. (20941); Chaparral Exploration, L.L.C. (1968); Chaparral Real Estate, L.L.C. (1655); Chaparral Resources, L.L.C. (1710); Charles Energy, L.L.C. (3750); Chestnut Energy, L.L.C. (9730); Green Country Supply, Inc. (2723); Roadrunner Drilling, L.L.C. (2399); and Trabajo Energy, L.L.C. (9753). The Debtors' address is 701 Cedar Lake Boulevard, Oklahoma City, OK 73114.

Naylor Farms, Inc. (the "**Class Representative**") respectfully state the following in support of this joint motion (this "**Joint Motion**"):

**RELIEF REQUESTED**

1.       The Debtors and the Class Representative, on behalf of itself and on behalf of similarly situated settlement class members (the "**Settlement Class Members**" or the "**Settlement Class**," excluding the Settlement Class Members that timely elect to opt-out of the Settlement Class), by and through their respective counsel, hereby seek the entry of:

A.       a preliminary approval order (the "**Preliminary Approval Order**"), substantially in the form attached hereto as **Exhibit A**:

i.       directing the application of Rule 7023 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and, by incorporation, Rule 23 of the Federal Rules of Civil Procedure (the "**Civil Rules**");

ii.       preliminarily approving the *Settlement Agreement*, dated as of August 15, 2020, attached hereto as **Exhibit 1** to **Exhibit A** (the "**Settlement Agreement**" or the "**Settlement**")[3] among the Debtors, the Defendant (defined below), and the Class Representative (collectively, the "**Parties**");

iii.       appointing JND Legal Administration ("**JND**") as the settlement administrator (the "**Settlement Administrator**");

iv.       approving the form and manner of notice to the Settlement Class Members;

v.       certifying the Settlement Class, designating Naylor Farms, Inc. as the Class Representative, and appointing Conner L. Helms of the Helms Law Firm and representative of Helms & Underwood, previously known as Helms, Underwood & Cook, as the settlement class counsel (the "**Settlement Class Counsel**") for settlement purposes only; and

vi.       scheduling a final fairness hearing (the "**Settlement Fairness Hearing**") approximately 90 days after the entry of the Preliminary Approval Order, or as soon thereafter as is convenient for the Bankruptcy Court (defined below); and

---

[3]       Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Settlement Agreement.

B.    a judgment (the "**Judgment**"), substantially in the form attached hereto as **Exhibit B**, finally approving the Settlement Agreement pursuant to Civil Rule 23 and Bankruptcy Rule 7023 after the Settlement Fairness Hearing**.**

## JURISDICTION AND VENUE

2.    The United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Bankruptcy Court in connection with this Motion to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.    Venue of the 2020 Bankruptcy Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    The statutory predicates for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), Rules 7023, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 23 of the Federal Rules of Civil Procedure (the "**Civil Rules**").

## INTRODUCTION

5.    The Class Representative filed the Royalty Class Action Lawsuit (as defined below) against Chaparral Energy, L.L.C. ("**Defendant**") in 2011, alleging that Defendant underpaid royalties in violation of Oklahoma law by improperly deducting certain costs involved

in making the gas extracted from wells marketable. The Settlement Agreement proposes to resolve this litigation, as well as a related appeal pending before the United States Court of Appeals for the Third Circuit concerning a class proof of claim filed by the Class Representative in a prior bankruptcy proceeding (the "**2016 Class Proof of Claim**") initiated by the Defendant and certain of its Affiliates in 2016 (the "**Prior Bankruptcy Cases**").

6.      Under the Settlement Agreement, the Settlement Class will receive a cash payment of $2.5 million on account of any claims that accrued after the petition date of the Prior Bankruptcy Cases. Defendant has also agreed to allow the class proof of claim in an aggregate amount of $45 million—half of the $90 million asserted in the 2016 Class Proof of Claim—on account of claims that accrued prior to the petition date of the Prior Bankruptcy Cases. That value will be distributed to the 2016 Class Claimants in the form of a cash-out payment pursuant to the 2020 prepackaged plan of reorganization (the "**2020 Plan**") as though the 2016 Class Claimants had received such equity prior to the commencement of these bankruptcy cases. In exchange, the Defendant will receive comprehensive releases of any claims that were or could have been asserted by the Settlement Class, providing a final resolution to litigation that began nearly nine years ago.

7.      The Settlement is the result of hard-fought, arm's length negotiations between the Parties that spanned more than four years, with both sides represented by experienced and competent counsel who had more than sufficient information to rationally assess the Parties' respective strengths and weaknesses in the event that the Royalty Class Action Lawsuit were to go to trial. The Settlement provides the Settlement Class with immediate, certain, and reasonable value in exchange for the Settlement Class's release of claims, and it allows all Parties to avoid what would otherwise be protracted, expensive, and complex litigation

to reach a verdict at trial.  It also provides creditors in the 2020 Bankruptcy Cases with the certainty they require to support the prepackaged 2020 Plan.  As a result, the Settlement satisfies the applicable standards for approval under the Bankruptcy Code, the Bankruptcy Rules, and Civil Rule 23.  Certification of the Settlement Class is also proper because, as explained below, a nearly identical class has been certified for trial purposes by the United States District Court for the Western District of Oklahoma, and the proposed class meets all the requirements for certification under Civil Rule 23.

8.    The Parties propose to seek approval of the Settlement in two stages.  In the first stage, the Bankruptcy Court would certify the Settlement Class for settlement purposes only, designate the Class Representative, and appoint Settlement Class Counsel.  The Bankruptcy Court would also appoint the Settlement Administrator, approve the form and manner of notice to be provided to the Settlement Class, and preliminarily approve the Settlement.  Upon such approvals, the Settlement Administrator would serve the Notice of Settlement, appraising Settlement Class Members of their ability to object at the Settlement Fairness Hearing.  Then, at the Settlement Fairness Hearing, the Bankruptcy Court would hear argument on whether to approve the Settlement on a final basis, enter the Judgment, and approve the Class Fees and Expenses.[4]

9.    The Parties believe that the Settlement Agreement is in the best interests of the Settlement Class Members, the Debtors, the Defendant, and all other relevant parties.  Accordingly, the Parties respectfully request that the Bankruptcy Court enter the Preliminary Approval Order and the Judgment as set forth herein.

---

[4]    Because the Settlement Agreement contemplates relief in connection with the Prior Bankruptcy Cases, including the allowance of the 2016 Class Proof of Claims, the Parties believe that it is appropriate to seek the requested relief in both the Prior Bankruptcy Cases and the 2020 Bankruptcy Cases, and have correspondingly made the relevant filings on both dockets.

## BACKGROUND

### I.    The History of the Debtors

10.    Chaparral Energy, Inc. and its subsidiaries are an independent oil and natural gas exploration and production company headquartered in Oklahoma City.  Founded in 1988, the Company has over 212,000 net surface acres in the Mid-Continent region.  The Company is focused in the oil window of the Anadarko Basin in the heart of Oklahoma, where it has approximately 114,000 net acres.  The Company employs approximately 102 full-time and part-time personnel.

11.    Chaparral Energy, L.L.C., a wholly owned subsidiary of Chaparral Energy, Inc. and a debtor in these 2020 Bankruptcy Cases, is an Oklahoma limited liability company with its principal place of business in Oklahoma.  Chaparral Energy, L.L.C. operates approximately 2,500 oil and gas wells in the State of Oklahoma.

12.    Certain of the Debtors previously filed chapter 11 petitions on May 9, 2016 and their cases remain pending.[5]  Those debtors consummated a plan of reorganization (the "**Prior Bankruptcy Plan**") that converted $1.2 billion of prepetition debt to equity and eliminated approximately $100 million of annual interest, emerging from bankruptcy on March 21, 2017 at a time when commodity prices were recovering from their 2016 low.  But since that time, oil and gas prices have declined precipitously, and as a result, the Debtors' capital structure and significant interest burden are not sustainable in current market conditions.

---

[5]    More detail regarding the Prior Bankruptcy Cases and the events that preceded the Prior Bankruptcy Cases can be found in the *Declaration of Mark A. Fischer, Chief Executive Officer of Chaparral Energy, Inc. in Support of Chapter 11 Petitions and First Day Pleadings* (Docket No. 14) and the *Disclosure Statement for the Joint Plan of Reorganization for Chaparral Energy, Inc., and its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code* (Docket No. 763), each of which was filed on the docket for the Prior Bankruptcy Cases.

13.     On August 16, 2020 (the "**2020 Petition Date**"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these 2020 Bankruptcy Cases.  No request for the appointment of a trustee or examiner has been made in these 2020 Bankruptcy Cases, and no committees have been appointed or designated.

## II.     The Royalty Class Action Lawsuit

14.     On June 7, 2011, the Class Representative filed a putative class action lawsuit against Defendant in the United States District Court for the Western District of Oklahoma (the "**Oklahoma District Court**") on behalf of royalty owners in wells in that jurisdiction, asserting claims for breach of lease and breach of fiduciary duty based on Defendant's alleged underpaid royalties to royalty owners.  *See Naylor Farms, Inc. v. Chaparral Energy, LLC*, No. 5:11-cv-00634-HE (the "**Royalty Class Action Lawsuit**").  In their amended complaint, plaintiffs alleged that Chaparral underpaid royalties by improperly deducting certain costs incurred by Chaparral in the course of calculating the applicable royalty amounts (the "**Amended Class Complaint**").  *See* First Am. Compl. ¶¶ 28-32, *Naylor Farms*, No. 5:11-cv-00634-HE (W.D. Okla. Oct. 21, 2011), ECF No. 26.

15.     On October 13, 2015, the plaintiffs moved for class certification pursuant to Civil Rule 23(b)(3).  While the class certification motion was pending before the Oklahoma District Court, Defendant and certain of its affiliates initiated the Prior Bankruptcy Cases in this Court.  On July 22, 2016, the Class Representative filed a motion seeking limited relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code to permit the Oklahoma

District Court to determine whether to certify the class in the Royalty Class Action Lawsuit. Defendant stipulated to limited relief from stay to allow the class certification motion to proceed in the Oklahoma District Court and the Bankruptcy Court approved this resolution on August 16, 2016.

16.     On August 15, 2016, the Class Representative filed the 2016 Class Proof of Claim in the Prior Bankruptcy Cases, which was later amended on February 16, 2017.

17.     On January 17, 2017, the Oklahoma District Court—in accordance with the relief from the automatic stay granted by the Bankruptcy Court—entered an order granting the Class Representative's class certification motion, thereby certifying the class.

18.     Shortly thereafter, on January 26, 2017, the Debtors filed an objection to the 2016 Class Proof of Claim (the "**Claim Objection**").   After conducting a hearing on February 28, 2017, the Bankruptcy Court took the Claim Objection under advisement.

19.     On March 10, 2017, the Bankruptcy Court confirmed the Prior Bankruptcy Plan, which took effect on March 21, 2017 without any resolution of the Claim Objection.   Soon thereafter, on May 24, 2017, the Bankruptcy Court issued a Memorandum Order determining that Bankruptcy Rule 7023 applied to the 2016 Class Proof of Claim and the Claim Objection would be denied.

20.     On June 7, 2017, the Debtors appealed the Bankruptcy Court's denial of the Claim Objection to the United States District Court for the District of Delaware (the "**Delaware District Court**").   On September 24, 2019, the Delaware District Court affirmed the Bankruptcy Court's Memorandum Order.   On November 5, 2019, the Debtors appealed the Delaware District Court's decision to the United States Court of Appeals for the Third Circuit (the "**Third Circuit**" and the proceeding initiated therein, the "**Third Circuit Appeal**"),

asserting that the Oklahoma District Court erred in affirming the Bankruptcy Court's order overruling the Debtors' Claim Objection and directing the application of Bankruptcy Rule 7023 (and, by extension, Civil Rule 23) to the Prior Bankruptcy Cases.

21.    The Third Circuit Appeal remained pending when the parties reached an agreement in principle to settle the claims asserted in the Royalty Class Action Lawsuit.  On July 7, 2020, the Third Circuit granted a joint motion for continuation of the oral argument on Defendant's appeal, originally scheduled for July 9, 2020.

22.    At all times, the Defendant and Debtors have adamantly denied, and continue to deny, the claims asserted in the Royalty Class Action Lawsuit, and have vigorously defended against them.

### III.    Essential Terms of the Proposed Settlement

23.    The Settlement Agreement provides for certification of the Settlement Class comprised of non-governmental royalty owners who own or owned mineral interests prior to the 2020 Petition Date covering wells operated by Chaparral in the State of Oklahoma, or in which Chaparral markets production, that produced natural gas and/or natural gas constituents or components, such as residue gas, natural gas liquids (or heavier liquefiable hydrocarbons), gas condensate or distillate, or casinghead gas and which is or was subject to a marketing arrangement including a percentage of proceeds, percentage of index and/or percentage of liquids arrangement and whose lease or leases with Chaparral include *Mittelstaedt* Clauses, with such Settlement Class commencing on June 1, 2006.

24.    As set forth in the Settlement Agreement, within five business days of the Effective Date, the Debtors or the Reorganized Debtors, as applicable, shall transfer or cause to be transferred by wire transfer $2,500,000 (the "**Settlement Cash Proceeds**") into the Naylor

Settlement Account for the benefit of the Settlement Class.  In addition, the Settlement Agreement provides for the payment of Class Fees and Expenses (which includes Settlement Class Counsel's attorneys' fees and the Class Representative's contribution award) in the amount of $1,000,000.  The Settlement Proceeds shall be distributed by the Settlement Administrator to the Settlement Class Members in accordance with the Plan of Allocation and Distribution attached to the Settlement Agreement as **Exhibit A**.  The material terms of the Settlement Agreement are as follows:[6]

a. <u>Allowance of the 2016 Class Proof of Claim</u>:  The Debtors and the Class Representative agree to allow the 2016 Class Proof of Claim in an aggregate amount of $45,000,000, subject to the conditions set forth in the Agreement.

b. <u>Certification of the Class for Settlement Purposes Only</u>:  The Settlement Class shall be certified for settlement purposes only, pursuant to Civil Rule 23(b)(3) as made applicable to these proceedings by Bankruptcy Rule 7023.

c. <u>Appointment of a Settlement Administrator</u>:  JND Legal Administration shall be appointed as Settlement Administrator.

d. <u>Designation of Class Representative</u>:  Naylor Farms, Inc. shall be designated as the Class Representative.

e. <u>Appointment of Settlement Class Counsel</u>:  Conner L. Helms of the Helms Law Firm and representative of Helms & Underwood, previously known as Helms, Underwood & Cook shall be appointed as Settlement Class Counsel.

f. <u>Stipulations</u>:  Two business days after the filing of the Joint Motion, the Parties will stipulate to the administrative closing of the Royalty Class Action Lawsuit.  Following the Effective Date, the Parties will stipulate to the dismissal with prejudice of the Royalty Class Action Lawsuit and the Third Circuit Appeal.

---

[6]    This summary of the Settlement Agreement is qualified in its entirety by the terms and provisions of the Settlement Agreement.  To the extent that there are any inconsistencies between the description of the Settlement Agreement contained herein and the terms and provisions of the Settlement Agreement, the Settlement Agreement shall control.

g.  <u>Establishment of Settlement Account</u>:  Three business days after entry of the Preliminary Approval Order, the Settlement Administrator will establish the Naylor Settlement Account for the benefit of the Settlement Class.

h.  <u>Payments by Debtors</u>:  Within five business days of the Effective Date, the Debtors or the Reorganized Debtors, as applicable, shall transfer or cause to be transferred by wire transfer the Settlement Cash Payments to the Naylor Settlement Account.

i.  <u>Taxation of Settlement Distributions</u>:   Neither the Debtors nor the Reorganized Debtors nor the Defendant nor any Affiliate shall have any duties, obligations, or liabilities with regard to any income tax, gross production tax, severance tax, petroleum excise tax, or similar tax filings or payments that the members of the Settlement Class and/or Settlement Class Counsel may be required to make with respect to their respective shares of the Settlement Proceeds.

j.  <u>Administration Expenses</u>:   The Administration Expenses shall include costs, fees and/or expenses incurred or charged in connection with the following: (a) efforts to obtain current and accurate information regarding the identities and addresses of Settlement Class members; (b) preparation, mailing, and publication of all notices required to be sent to Settlement Class Members; (c) maintenance of the dedicated website to facilitate communications with Settlement Class Members and their access to information; (d) responding to telephone and electronic inquiries regarding the settlement by Settlement Class Members; (e) implementation of the Plan of Allocation and Distribution (including, but not limited to, the cost to print and mail Distribution Checks, and the cost of experts to calculate the allocation and distribution); (f) fees and expenses associated with the establishment and maintenance of the Naylor Settlement Account referenced below; (g) fees and expenses of the Settlement Administrator; and (h) costs of preparing and mailing Distribution Checks and tax documentation to members of the Settlement Class at the time specified in this Agreement.

k.  <u>Issuance of Notice of Settlement</u>:  The Settlement Administrator will send the Notice of Settlement, attached to the Preliminary Approval Order as **Exhibit 2**, by mail to the putative members of the Settlement Class for whom a mailing address can be found in Defendant's and the Debtors' current electronic databases containing the last-known addresses of royalty payees.   The Settlement Administrator will publish the Notice of Settlement attached to the Preliminary Approval Order as **Exhibit 3** in (i) *The Daily Ardmoriete*, (ii) *Fairview Republican*, (iii) *Hughes County Tribune*, (iv) *McAlester News-Capital*, (v) *The Oklahoman*, (vi) *Tulsa World*, (vii) *Clinton Daily News*, and (viii) *Elk City Daily News*.

l.   Releases:  Each Settlement Class Member will grant releases for, among other things, all claims within the production periods of the Class Wells prior to the 2020 Petition Date for greater, additional, unpaid, late paid, or overpaid amounts of royalty and/or interest arising from any alleged breach or breaches of express royalty clauses or implied covenants in oil and gas leases, alleged failure to obtain the highest or best price; alleged violations or breaches of the Oklahoma Production Revenue Standards Act; alleged improper or unlawful deductions (of any kind) of/for production and postproduction costs from royalty (and/or based upon the direct and/or indirect factoring of such costs into the computation of royalties), including without limitation, use of gas for fuel, line loss, shrinkage, compression, use of gas for processing or compression, gathering, dehydration, blending, treating, fractionation, transportation, and storage fees, alleged claims for royalty or other payments for or based on Btu content of gas, natural gas liquids, casinghead gas, residue gas, helium, sulfur, and all other substances found in, or extracted or manufactured from, natural gas.

m.  Released Parties:   Released Parties include (a) the Defendant, the Affiliates of the Defendant, including those named on **Exhibit F** to the Settlement Agreement, and the Reorganized Debtors, and shall also include the respective past, present and future Affiliates, employees, officers, directors, limited partners, general partners, shareholders, managers, members, attorneys, agents and/or other representatives of such entities; and (b) other working interest owners in Class Wells, who shall also constitute Released Parties, but only to the extent the Defendant and/or the Affiliates of the Defendant marketed gas or gas constituents and paid royalty on behalf of such other working interest owners prior to the date on which the Judgment is entered.

n.   Covenant Not to Sue:  Except as otherwise provided in the Settlement Agreement, each Settlement Class Member agrees that, having received the benefits of the Settlement Consideration as consideration for releasing the Released Claims, under no circumstances will he/she/it seek to recover or receive, directly or indirectly, any further amount of money from the Defendant or any of the other Released Parties for any of the Released Claims during the Released Period.  Each Settlement Class Member covenants not to sue any of the Released Parties for any of the Released Claims while Defendant pays royalty on the Class Wells.

o.   Effect of Excessive Opt-Out:  The Defendant has the right and option, in its sole discretion, to terminate the Settlement Agreement if members of the Settlement Class who have claims which, in the aggregate, exceed ten percent (10%) of the Settlement Proceeds, elect to opt-out of the Settlement.

p.  Procedure for Approval of Fees and Expenses:  Settlement Class Counsel and the Class Representative will file a motion seeking approval of the Class Fees and Expenses (the "**Fees and Expenses Motion**").  The Fees and Expenses Motion will be filed no later than 14 days before the objection deadline set forth in the Preliminary Approval Order. Settlement Class Counsel will request that the Fees and Expenses Motion be heard at the Settlement Fairness Hearing.

## BASIS FOR RELIEF

**I.    The Bankruptcy Court Has Jurisdiction Over this Matter and Should Direct the Application of Bankruptcy Rule 7023 and Civil Rule 23**

25.    The Settlement will allow the Parties to avoid expensive and costly litigation and the uncertainty of litigating the Royalty Class Action Lawsuit to judgment. Because it is reasonably foreseeable that the Class Representative would object to a confirmation of the Debtors' restructuring plan absent the Settlement, and because there continue to be pending proceedings concerning the 2016 Class Proof of Claim in the Prior Bankruptcy Cases, Bankruptcy Rule 9014, governing contested matters, applies.  *See* Fed. R. Bankr. P. 9014 advisory cmte. note (1982) ("Whenever there is an actual dispute, other than an adversary proceeding before the bankruptcy court, the litigation to resolve that dispute is a contested matter."); *see also* Fed. R. Bankr. P. 3020(b)(1) ("An objection to confirmation is governed by Rule 9014."); *In re Spring Ford Indus.*, No. 02-15015DWS, 2004 WL 231010, at *2 n.6 (Bankr. E.D. Pa. Jan. 20, 2004) ("While Rule 9014 does not define 'contested matter,' the advisory notes make clear that the term encompasses any actual dispute, other than an adversary proceeding . . . .").

26.    Under Bankruptcy Rule 9014, a court may "direct that one or more of the other rules in Part VII shall apply."  Fed. R. Bankr. P. 9014(c).  Rule 7023, which is contained in Part VII, "expressly allows class certification in adversary actions . . . .  Rule 9014 expands that Rule to contested matters, at the court's discretion."  *In re Kaiser Grp. Int'l, Inc.*, 278 B.R. 58,

62 (Bankr. D. Del. 2002); *see also In re Zenith Labs., Inc.*, 104 B.R. 659, 663 (D.N.J. 1989) ("Thus, Rule 9014 permits the application of Rule 7023 and with it the latter's inclusion of Fed. R. Civ. P. 23."). The Parties agree that it is appropriate for the Bankruptcy Court to direct the application of Bankruptcy Rule 7023—and, by extension, Civil Rule 23—because the Settlement Agreement seeks to release claims.

## II. The Bankruptcy Court Should Certify the Class, Designate a Class Representative, and Appoint Class Counsel Pursuant to Civil Rule 23[7]

### a. The Bankruptcy Court Should Certify the Class

27. "Class actions serve an important function in our system of civil justice," *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981), and "[t]he Third Circuit has held that class actions should be looked upon favorably." *In re United Cos. Fin. Corp.*, 277 B.R. 596, 601 (Bankr. D. Del. 2002) (citing *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985)).

28. To certify a class for settlement purposes, a court must determine that Civil Rule 23(a), as well as Civil Rule 23(b)(1), (b)(2), or (b)(3), are satisfied. *Amchem Prods. v. Windsor*, 521 U.S. 591, 613-14 (1997); *In re Google, Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 320 (3d Cir. 2019). The merits of the claims need not be adjudicated beyond what is necessary to determine whether the class satisfies these requirements. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 316-17 (3d Cir. 2008).

29. Certification is warranted because the requirements of Civil Rules 23(a) and 23(b)(3) are easily satisfied. Indeed, the Oklahoma District Court previously certified a class for trial of similarly situated royalty owners, and that decision was upheld by the United States Court of Appeals for the Tenth Circuit. *See Naylor Farms, Inc. v. Chaparral Energy, LLC*, No.

---

[7] The positions expressed in this Section II are those of the Class Representative only and not of the Debtors. The Debtors do not dispute these positions solely for the purposes of the proposed Settlement.

civ-11-0634-HE, 2017 WL 187542 (W.D. Okla. Jan. 17, 2017), *aff'd*, 923 F.3d 779 (10th Cir. 2019).[8]  As discussed below, the reasoning in those decisions amply supports certification of the Settlement Class that is proposed here.

i.       Rule 23(a) is Satisfied

30.      Civil Rule 23(a) includes four requirements for certification:  (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  Fed. R. Civ. P. 23(a); *see also Amchem*, 521 U.S. at 613; *Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 183 (3d Cir. 2001).

31.      *Numerosity*.  Civil Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable . . . ."  Fed. R. Civ. P. 23(a)(1).  Joinder is impracticable when it would be "inefficient, costly, time-consuming, and probably confusing." *United Cos. Fin. Corp.*, 277 B.R. at 603 (quoting *Ardrey v. Fed. Kemper Ins. Co.*, 142 F.R.D. 105, 111 (E.D. Pa. 1992)).  Courts can make common sense assumptions when making a finding of numerosity.  *Id.* (quoting *Snider v. Upjohn Co.*, 115 F.R.D. 536, 539 (E.D. Pa. 1987)); *see also Johnston*, 265 F.3d at 184 (finding that "thousands of potential class members" would make joinder impracticable).  Satisfaction of this requirement does not require a specific minimum number of class members; however, generally, if there are over forty members of the potential class, the numerosity requirement is satisfied.  *See, e.g.*, *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) ("[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.").  The numerosity requirement

---

[8]      The Oklahoma District Court held that the class in the Royalty Class Action Lawsuit would be limited to include those "leases with *Mittelstaedt* Clauses."  *Naylor Farms*, 2017 WL 187542, at *9.  The proposed Settlement Class here is likewise limited to leases with *Mittelstaedt* Clauses—i.e., certain royalty provisions containing language that does not negate the implied duty of marketability.  *See Mittelstaedt v. Santa Fe Minerals, Inc.*, 954 P.2d 1203, 1206 (Okla. 1998).

is easily satisfied here because the Settlement Class encompasses approximately 6,500 leases and more than 10,000 class members, rendering joinder impractical.

32.      *Commonality.*  Civil Rule 23(a)(2) requires that there be "questions of law or fact common to the class . . . ."  Fed. R. Civ. P. 23(a)(2); *see also Walmart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("That common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").  The commonality requirement is satisfied where "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)).  Further, "[c]ommonality does not require an identity of claims or facts among the class members." *Johnston*, 265 F.3d at 184.  Factual differences among the claims of the prospective class members do not preclude a finding of commonality.  *See Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283, 310 (3d Cir. 1998) ("A finding of commonality does not require that all class members share identical claims, and indeed 'factual differences among the claims of the putative class members do not defeat certification.'" (quoting *Baby Neal*, 43 F.3d at 56)).

33.      As the Oklahoma District Court and the Tenth Circuit both concluded with respect to a class that is materially identical to the Settlement Class proposed by the Parties here, individual factual differences regarding oil and gas lease language, well location, or producing formations do not preclude a finding of commonality. *Naylor Farms*, 2017 WL 187524, at *5 (citations omitted) (because a majority of putative class members had leases that contained provisions known under Oklahoma state law as *Mittelstaedt* clauses, plaintiffs could "affirmatively demonstrate commonality on the implied duty of marketability," even "given

known variations in lease language"); *Naylor Farms,* 923 F.3d at 795-98 (same); *see also Naylor Farms v. Anadarko OGC Co.*, No. civ-08-668-R, 2009 WL 8572026, at *5 (W.D. Okla. Aug. 26, 2009) (concluding that "differing language of the leases is not an impediment to certification of the class on the basis of commonality").  The common questions among the Settlement Class Members include, among other things, "whether all classes leases contain the [implied duty of marketability]."  *Naylor Farms*, 2017 WL 187524, at *3.  For settlement purposes, the common questions raised in the Amended Class Complaint—including whether the leases contain the implied duty of marketability—generate common answers that would drive resolution of these claims, and therefore the commonality requirement is satisfied.

34.      *Typicality.*  Civil Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class . . . ."  Fed. R. Civ. P. 23(a)(3).  In evaluating typicality, courts look to "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class."  *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (quoting *Baby Neal*, 43 F.3d at 55).   A court must determine whether the named plaintiffs' personal circumstances are notably different, or if the legal theory underlying the named plaintiffs' claims is different, from those of the class members.  *Johnston*, 265 F.3d at 184 (citing *Eisenberg*, 766 F.2d at 786).  As long as the claims of the named plaintiffs and the claims of the prospective class members involve the same conduct by the defendant, the typicality requirement is satisfied, regardless of any factual differences between the claims.  *Id.*

35.      As the Oklahoma District Court concluded, varied language in the royalty agreements does not destroy typicality; the alleged practices at issue here (i.e., underpayment of royalties) could exist regardless of the amount of service gas needed to become marketable; and

specific defenses that the Defendant might raise against certain plaintiffs are insufficient to render the named plaintiffs unable to "prosecute the [actions] vigorously on behalf of the class." *Naylor Farms*, 2017 WL 187524, at *6-7 (quoting *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002)).  Because the claims of the Class Representative and the Settlement Class Members share the same essential characteristics (i.e., they all involve allegations concerning Defendant's method of calculating royalty), and the Class Representative does not allege that it was singled out in any respect, the typicality requirement is satisfied.

36.    *Adequacy of Representation*. Civil Rule 23(a)(4) requires that the representative parties "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy inquiry includes two components: (1) the qualifications of the counsel to represent the class, and (2) any potential conflicts of interest between the named parties and the class they are seeking to represent.  *Schering*, 589 F.3d at 602.  The first component requires class counsel to be qualified and to serve the interests of the entire class.  *Georgine v. Amchem Prods.*, 83 F.3d 610, 630 (3d Cir. 1996).  The second requires the interests of the named plaintiffs be "sufficiently aligned" with those of the other class members.  *Id.*

37.    Here, the Class Representative and the Settlement Class Members are fully aligned for settlement purposes, and the Class Representative understands its duties as class representative.  Further, Settlement Class Counsel is experienced in the field of oil and gas law and capable of ably representing the Settlement Class.    The adequacy of representation requirement is therefore satisfied.

ii.    <u>Rule 23(b)(3) is Satisfied</u>

38.    Under Civil Rule 23(b)(3), class certification is proper where common questions of law or fact predominate over the questions affecting individual members of the

class, and where a class action is superior to any other potential methods to fairly and efficiently adjudicate the issue.  Fed. R. Civ. P. 23(b)(3).

39.    The predominance requirement incorporates the Rule 23(a) commonality requirement, although the predominance requirement is more demanding.  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004).  To predominate, "the common issues must constitute a 'significant part' of the individual cases."  *In re Chiang*, 385 F.3d 256, 273 (3d Cir. 2004) (quoting *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986)).  The inquiry focuses on "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) (quoting *In re Ins. Broker Antitrust Litig.*, 579 F.3d 241, 266 (3d Cir. 2009)).  It additionally requires a court to assess whether a class action can "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated."  *Id.* (quoting Fed. R. Civ. P. 23(b)(3) advisory cmte. note (1966)).  Further, the presence of individual questions for each class member does not mean that the common questions of law and fact do not predominate over those individual questions.  *Chiang*, 385 F.3d at 273 (quoting *Eisenberg*, 766 F.2d at 786).  Predominance does not require that each element of plaintiffs' claim is susceptible to class-wide proof, or that the common questions will be answered in favor of the class on the merits.  *Amgen Inc. v. Conn. Ret. Plans*, 568 U.S. 455, 468-69 (2013).

40.    The superiority requirement asks the court to balance, considering "fairness and efficiency," the merits of a class action as compared to the merits of other adjudicative methods. *Georgine*, 83 F.3d at 632.  The rule provides courts with a list of relevant factors to consider: (1) the interest of class members in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of litigation regarding the controversy

already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation in the particular forum; and (4) the difficulties likely to be encountered in managing a class action.  Fed. R. Civ. P. 23(b)(3).

41.    With respect to predominance, the Oklahoma District Court concluded that the class was "sufficiently cohesive to warrant adjudication by representation" because plaintiffs provided evidence that their expert could determine damages on a class wide basis "through use of a model which permits well by well calculations."  *Naylor Farms*, 2017 WL 187524, at *7-8.  Predominance is satisfied for settlement purposes because all of the claims relate to whether Defendant took improper deductions from royalty owed to the Settlement Class Members, thereby breaching its duties under the leases.

42.    With respect to superiority, the Oklahoma District Court concluded that "[b]ecause the amount an individual royalty owner would recover in this type of lawsuit would be dwarfed by the costs of bringing it," the superiority requirement was met.  *Id.* at *9.  That same rationale applies here.  It would be inefficient for the judicial system as a whole—and economically infeasible for the Settlement Class Members—to bring individual suits outside of the class context.  There are also no manageability concerns here with respect to the Settlement Class because, unlike a class that is certified for trial, the purpose of the Settlement Class is to settle the claims and avoid a trial altogether.  *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

43.    For these reasons, the Settlement Class should be certified for settlement purposes under Civil Rule 23.

### III.    The Bankruptcy Court Should Preliminarily Approve the Settlement.

44.    Under Civil Rule 23(e), the settlement of a class action requires court approval based on a finding that the settlement is "fair, reasonable, and adequate . . . ." Fed. R. Civ. P. 23(e)(2).  Judicial review of a proposed class action settlement typically proceeds in two stages: a preliminary fairness evaluation by the court, and a formal fairness hearing where the class members may object to the proposed settlement.  *In re Nat'l Football League Players Concussion Injury Litig.*, 775 F.3d 570, 582-83 (3d Cir. 2014), *dismissing appeal from* 301 F.R.D. 191 (E.D. Pa. 2014); *Enteromedics, Inc. v. Blackford*, No. 17-cv-194, 2018 WL 4691046, at *2-3 (D. Del. Sept. 28, 2018).

45.    At the preliminary approval stage, "counsel submit the proposed terms of the settlement to the court, and the court makes a 'preliminary fairness evaluation'" of the settlement's terms and evaluates the parties' proposed plan for notifying members of the settlement and their right to opt-out.  *In re Wilmington Tr. Sec. Litig.*, No. 10-cv-0990, 2018 WL 3369674, at *4 (D. Del. July 10, 2018); *see also Harlan v. Transworld Sys, Inc.*, 302 F.R.D. 319, 324 (E.D. Pa. 2014).  As to the merits of the settlement, "the court is required to determine only whether 'the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies . . . and whether it appears to fall within the range of possible approval.'"  *Silvis v. Ambit Energy L.P.*, No. 14-5005, 2018 WL 1010812, at *6 (E.D. Pa. Feb. 22, 2018) (quoting *Nat'l Football League*, 301 F.R.D. at 198).  "A settlement falls within the 'range of possible approval,' if there is a conceivable basis for presuming that the standard applied for final approval—fairness, adequacy, and reasonableness—will be satisfied."  *Wilmington*, 2018 WL 3369674, at *4 (quoting *Mehling v. N.Y. Life Ins.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007)); *see also Gates v. Rohm & Haas, Co.*, 248 F.R.D. 434, 438-39 (E.D. Pa. 2008) ("Preliminary approval . . .

is granted unless a proposed settlement is obviously deficient." (quotations and citation omitted)).  The purpose of the inquiry is primarily to detect any issues with the settlement "that would risk making notice to the class, with its attendant expenses, and a hearing . . . futile gestures." *In re Nat'l Football League Players Concussion Injury Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) (quotations and citation omitted).

46.    Some courts in the Third Circuit have looked to four factors in determining whether an "initial presumption of fairness" has been established: whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."  *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995); *see also Harlan*, 302 F.R.D. 319, 324 (E.D. Pa. 2014) (same).  Each factor counsels in favor of preliminary approval here or is otherwise neutral.

47.    *First*, the negotiations occurred at arm's length.  The Settlement was the product of four years of negotiation, with both sides ably represented by competent counsel who understood the nature of the claims that were asserted as well as the respective strengths and weaknesses of the Parties' positions in the event the claims were litigated to trial.

48.    *Second*, there was sufficient discovery.  The Royalty Class Action Lawsuit had already survived a class certification motion, pursuant to which the plaintiffs' claims were thoroughly analyzed and considered by both the Parties and the Oklahoma District Court following rigorous discovery related to class certification.

49.    *Third*, the proponents of the settlement are experienced in litigation concerning royalty payments in the oil and gas context.

50.     *Fourth*, all Settlement Class Members have the ability to opt-out of the Settlement prior to the Settlement Fairness Hearing, and therefore this factor does not counsel against preliminary approval.

51.     At bottom, the Settlement—which is the product of good faith, arm's length negotiations between the Parties—provides certain and swift recovery to the Settlement Class Members, who otherwise face the prospect of years of expensive litigation and the possibility of no recovery at all.  *See infr*a ¶¶ 40-41.  It therefore falls well "within the range of reasonableness" sufficient to grant preliminary approval.  *Gates*, 248 F.R.D. at 436.

## IV.     The Bankruptcy Court Should Approve the Form and Manner of the Proposed Notice of the Settlement and Approve the Retention of JND as the Settlement Administrator

52.     Under Civil Rule 23(e)(1), a court must "direct notice in a reasonable manner to all class members who would be bound" by the settlement in question.  Fed. R. Civ. P. 23(e)(1)(B).  The notice pursuant to Civil Rule 23(e) is "designed to summarize the litigation and the settlement and to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation."  *Prudential*, 148 F.3d at 327 (internal quotations and citations omitted).  In general, "the notice should contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class."  *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 435 (3d Cir. 2016) (quoting *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013)).

53.     Upon this Court's approval, the Settlement Administrator will mail the Notice of Settlement, substantially in the form attached to the Preliminary Approval Order as

**Exhibit 2**, to each Settlement Class Member for whom the Debtors provide a mailing address.[9] The Parties propose that within ten (10) business days following the entry of the Preliminary Approval Order, the Settlement Administrator will service the Notice of Settlement upon each Settlement Class Member at the last known address of each Settlement Class Member according to the Debtors' electronic databases.

54.    In addition, the Settlement Administrator will publish the Notice of Settlement, substantially in the form attached to the Preliminary Approval Order as **Exhibit 3**, in (i) *The Daily Ardmoriete*, (ii) *Fairview Republican*, (iii) *Hughes County Tribune*, (iv) *McAlester News-Capital*, (v) *The Oklahoman*, (vi) *Tulsa World*, (vii) *Clinton Daily News*, and (viii) *Elk City Daily News*.

55.    The Notice of Settlement outlines the terms of the Settlement Agreement, notifies the Settlement Class of the anticipated motion for Class Fees and Expenses and Administration Expenses, and describes how each Settlement Class Member may obtain a copy of the Settlement Agreement.

56.    Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(b), which requires a defendant to serve notice of a class action settlement upon the appropriate state and federal officials, the Settlement Administrator will serve notice, substantially in the form of that attached to the Preliminary Approval Order as **Exhibit 4,** upon the appropriate officials.

---

[9]    In addition to notifying the Settlement Class Members of the Settlement and providing instructions on how to opt out, the Notice of Settlement also contains details concerning the releases under the 2020 Plan and the instructions and election form to opt out of those releases (as certain of the Settlement Class Members may be entitled to a distribution under the 2020 Plan, in accordance with the Plan of Allocation and Distribution, on account of the allowed 2016 Class Proof of Claim). The Debtors propose to include that opt-out information as part of the Notice of Settlement in order to minimize confusion and eliminate the cost and burden of a separate mailing.

57.     As demonstrated by the Declaration of Jennifer M. Keough, Chief Executive Officer of JND Legal Administration (the "**Keough Declaration**"), JND possesses the requisite qualifications and experience to administer the Settlement Agreement and the Plan of Allocation and Distribution.   An illustrative budget for providing the required notice to the Settlement Class and administering the Settlement is included as **Exhibit B** to the Keough Declaration.  The Class Representative and the Debtors believe that JND should be appointed the Settlement Administrator for the reasons set forth therein, including the fact that JND currently serves as the settlement administrator for a comparable class action settlement involving oil and gas royalty deficiency claims in *In re Sheridan Holding Co. I, LLC, et al.*, No. 20-31844 (S.D. Tex.).

58.     As attested to in the Keough Declaration, JND is a disinterested party in the 2020 Bankruptcy Cases.  Although the Debtors do not propose to retain JND under section 327 of the Bankruptcy Code, JND has submitted the names of all known potential parties in interest (the "**Potential Parties in Interest**") in the 2020 Bankruptcy Cases for review.  The list of Potential Parties in Interest was provided by the Debtors and included, among other things, the Debtors, significant equity holders, the Debtors' current and former directors and officers, secured creditors, top 30 unsecured creditors, vendors, and other parties.  The results of the conflict check were compiled and reviewed by JND professionals and did not reveal any relationships that would present a disqualifying conflict of interest.

## V.    The Bankruptcy Court Should Schedule a Settlement Fairness Hearing

59.     Following a preliminary approval and prior to final approval, Civil Rule 23 requires that courts hold a fairness hearing to allow objectors to submit briefs and present arguments against the settlement.  Fed. R. Civ. P. 23(e)(1)(C); *see also GMC Pick-Up Truck*, 55

F.3d at 778, 781 (court reviewing terms of proposed class action settlement must hold a fairness hearing before formally certifying the class).   It is at this stage of the process at which proponents of the agreement must show that the settlement is "fair, reasonable, and adequate." *Prudential*, 148 F.3d at 316 (quoting *GMC Pick-Up Truck*, 55 F.3d at 785); *see also* Annotated Manual for Complex Litigation, Fourth § 21.634 (at fairness hearing, parties may present experts, witnesses, and objectors may appear and testify).

60.    In accordance with the 90-day notice requirement under the Class Action Fairness Act, *see* 28 U.S.C. § 1715(d), the Parties propose that the Bankruptcy Court schedule the Settlement Fairness Hearing no less than 90 days from the entry of the Preliminary Approval Order.

## VI.    After the Fairness Hearing, the Bankruptcy Court Should Approve the Settlement Agreement and Grant Related Relief on a Final Basis

### a.    The Settlement Satisfies the Requirements of Bankruptcy Rule 9019 and Section 363(b) of the Bankruptcy Code

61.    This Court should finally approve the Settlement Agreement following the Settlement Fairness Hearing.   Bankruptcy Rule 9019(a) provides that, "after notice and a hearing, the court may approve a compromise or settlement."   Fed. R. Bankr. P. 9019(a).   As courts routinely recognize, "[c]ompromises are favored in bankruptcy" in order to "minimize litigation and expedite the administration of a bankruptcy estate[.]"   *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996) (citing 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); *In re Novapro Holdings, LLC*, No. 14-10895-LSS, 2019 WL 1324950, at *4 (D. Del. Mar. 25, 2019) (quoting *Martin*, 91 F.3d at 393).   The decision of whether to approve the settlement is "within the sound discretion of the [c]ourt."   *In re Managed Storage*, No. 09-10368 (MWF), 2020 WL 1532390, at *4 (Bankr. D. Del. Mar. 31, 2020) (citing *In re Nortel Networks, Inc.*, 522 B.R. 491, 510 (Bankr.

D. Del. 2014)).  In evaluating a settlement, the role of the court is to "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal."  *Martin*, 91 F.3d at 393.  The settlement need not be the "best possible compromise" available to the debtor.  *Managed Storage*, 2020 WL 1532390, at *4 (citing *Nortel*, 522 B.R. at 510).  Rather, "the court need only conclude that the settlement falls within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness."  *Id.*

   62. At the core of the court's evaluation of the settlement is a determination of whether or not the settlement is "fair and equitable."  *In re Energy Future Holdings Corp.*, 648 F. App'x 277, 281 (3d Cir. 2016) (citing *In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006)); *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).  In order to make that determination, the Bankruptcy Court "need not conduct a mini-trial or a full evidentiary hearing," *Managed Storage*, 2020 WL 1532390, at *4 (citing *In re Capmark Fin. Grp. Inc.*, 438 B.R. 471, 515 (Bankr. D. Del. 2010)), and the Bankruptcy Court does not require "all of the information necessary to resolve the factual dispute, for by doing so, there would be no need of settlement."  *NovaPro*, 2019 WL 1324950, at *4 (citing *In re Key3Media Grp. Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005)).  The Third Circuit has set forth four criteria to consider when determining whether to approve a proposed settlement under Bankruptcy Rule 9019: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."  *Martin*, 91 F.3d at 393; *see also Nutraquest,* 434 F.3d at 644-45 (applying the *Martin* factors); *NovaPro*, 2019 WL 1324950, at *5-6 (same).

63.     Although the Bankruptcy Code generally restricts the ability of a trustee to sell an estate's assets outside the ordinary course of business, section 363(b) of the Bankruptcy Code provides that the "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  The purpose of section 363 is "to allow a trustee (or debtor-in-possession) the flexibility to engage in ordinary transactions without unnecessary creditor and bankruptcy oversight, while protecting creditors . . . when transactions are not ordinary."  *In re Roth Am. Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) (citations omitted).  Where there is a legitimate business justification for the use of assets outside the ordinary course of business, courts will defer to the debtor's judgment.  *Martin*, 91 F.3d at 395 ("[U]nder normal circumstances the court would defer to the trustee's judgment so long as there is a legitimate business justification."); *see also In re Filene's Basement, LLC*, No. 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. April 29, 2014) ("Transactions under [section] 363 must be based upon the sound business judgment of the debtor or trustee . . . . [W]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." (citations and quotations omitted)).[10]

64.     The Settlement Agreement satisfies the standards for approval under both Bankruptcy Rule 9019 and section 363(b) of the Bankruptcy Code, and it should be approved pursuant to both of those provisions.

65.     *First*, the Defendant's probability of success in litigating the Royalty Class Action Lawsuit is uncertain.  Although the Defendant continues to adamantly deny the claims

---

[10]   The Parties additionally seek relief from the 14-day stay applicable under 11 U.S.C. § 6004(h) so that the Settlement Agreement may be effectuated expeditiously.

asserted against it, it cannot be certain that it would succeed in defending the Royalty Class

Action Lawsuit if the lawsuit were to be litigated to judgment.  Indeed, the Oklahoma District

Court already ruled in favor of plaintiffs' class certification motion, and that decision was upheld

by the Tenth Circuit Court of Appeals.  *See Naylor Farms*, 2017 WL 187542, *aff'd*, 923 F.3d 779

(10th Cir. 2019).  Further, the Bankruptcy Court previously overruled an objection to the 2016

Class Proof of Claim filed in the Prior Bankruptcy Cases, and that decision was upheld by the

Delaware District Court.  *See In re Chaparral Energy, Inc.*, 571 B.R. 642 (Bankr. D. Del. 2017),

*aff'd*, 2019 WL 4643849 (D. Del. Sept. 24, 2019).  The Settlement Agreement was also

negotiated at arm's length between the Debtors and plaintiffs' Class Counsel, and it reflects the

parties' shared understanding that the proposed resolution of plaintiffs' claims is fair and

equitable in light of the parties' respective positions in the litigation.  Accordingly, the

Defendant's probability of successfully defending against the claims asserted against it is

uncertain, and the Settlement Agreement is fair and reasonable in the context of that

uncertainty.[11]

66.    *Second*, litigation of the Royalty Class Action Lawsuit would necessarily

give rise to expense, inconvenience, and delay for all parties involved.  The Debtors have already

expended considerable resources in litigating these claims, which have now been pending for

nearly nine years.  The claims that are asserted against the Defendant are complex, and

resolution through litigation would undoubtedly require extensive merits discovery and expert

witness testimony, along with the attendant costs—not only in dollars, but also in time and

attention from the Reorganized Debtors' management.  Further, the Debtors are litigating on

---

[11]    In the event that the Settlement Agreement is not approved by the Bankruptcy Court or the Settlement
Agreement does not become binding and enforceable for any reason, the Parties reserve all of their rights.

multiple tracks.  In addition to the proceedings before the Oklahoma District Court, an appeal remains pending before the Third Circuit concerning the objection to the 2016 Class Proof of Claim.  The Settlement Agreement would resolve both of these matters and avoid extensive legal fees and other associated costs and expenses that the Debtors would incur if they were required to litigate these claims to judgment.

67.    *Third*, the Settlement is in the paramount interest of the creditors.  The Settlement Agreement is supported by the Ad Hoc Group of Senior Noteholders represented by Stroock & Stroock & Lavan LLP, who have an interest in ensuring that the Settlement Agreement maximizes the value available to the Debtors' estates.  The Settlement provides creditors with certainty, as it conclusively resolves plaintiffs' claims and avoids the potential for a much larger judgment against Chaparral as well as the legal costs and expenses associated with continued litigation.  It also serves as a keystone of the 2020 Plan, as the certainty that it provides is important to maintaining creditor support; and further, the Settlement provides the basis for the 2016 Class Claimants' recoveries under the 2020 Plan.[12]

68.    For these reasons, the Parties respectfully submit that the Settlement Agreement satisfies the required standards for approval under applicable law and that as such, the Bankruptcy Court should accordingly approve the Settlement Agreement pursuant to Bankruptcy Rule 9019 and section 363 of the Bankruptcy Code.

**b.    The Settlement Satisfies the Requirements of Civil Rule 23**

69.    Federal Rule of Civil Procedure 23(e) requires that "[t]he claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only

---

[12]    The second factor, ease of collection, is not relevant here, and it therefore does not counsel against approval of the Settlement.

with the court's approval." Fed. R. Civ. P. 23(e).  Thus, a class action may be settled "only after a hearing and only on finding that [the settlement] is fair, reasonable, and adequate[.]"  Fed. R. Civ. P. 23(e)(2); *see also Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 488 (3d Cir. 2017) ("[A] class action cannot be settled without the approval of the court and a determination that the proposed settlement is fair, reasonable, and adequate." (quoting *Prudential*, 148 F.3d at 316)); *Nat'l Football League*, 821 F.3d at 436 ("A class action cannot be settled without court approval based on a determination that the proposed settlement is fair, reasonable, and adequate.").  The purpose of the fairness inquiry under Civil Rule 23(e) is to protect "unnamed class members from unjust or unfair settlements affecting their rights when the representatives become faint hearted before the action is adjudicated."  *Nat'l Football League*, 821 F.3d at 436 (quoting *Amchem*, 521 U.S. at 623).  "In deciding the fairness of a proposed settlement . . . 'the evaluating court must, of course, guard against demanding too large a settlement based on its views of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.'"  *Prudential*, 148 F.3d at 316-17 (quoting *GMC Pick-Up Truck*, 55 F.3d at 806 (citations omitted)).

70.     Courts in the Third Circuit consider the nine non-exclusive factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 156-57 (3d Cir. 1975) in determining whether to approve a proposed class action settlement: "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action throughout the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement

fund to a possible recovery in light of all the attendant risks of litigation." *Halley*, 861 F.3d at 488 (quotations and alterations omitted) (quoting *Girsh*, 521 F.2d at 156-57); *see also Google, Inc.*, 934 F.3d at 322 (same).

71.    Courts also consider, where relevant, the following additional factors set forth in the Third Circuit's decision in *Prudential*: "(1) the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits of liability and individual damages; (2) the existence and probable outcome of claims by other classes and subclasses; (3) the comparison between the results achieved by the settlement for individual or subclass members and the results achieved—or likely to be achieved—for other claimants; (4) whether class or subclass members are accorded the right to opt-out of the settlement; (5) whether any provisions for attorney's fees are reasonable; and (6) whether the procedure for processing individual claims under the settlement is fair and reasonable." *Halley*, 861 F.3d at 488-89 (quoting *Prudential*, 148 F.3d at 323); *see also Nat'l Football League*, 821 F.3d at 437 ("Unlike the *Girsh* factors, each of which the district court must consider before approving a class settlement, the *Prudential* considerations are just that, prudential." (quoting *Baby Prods.*, 708 F.3d at 174)).  Both the *Girsh* and *Prudential* factors strongly favor approval of the Settlement.

72.    *First*, as described above, the subject matter of the litigation is complicated and technical, involving thousands of different leases and wells and a class period spanning more than a decade.  The litigation was initiated nearly nine years ago, and the Settlement would resolve cases that are pending in two different forums—the Royalty Class Action Lawsuit before the Oklahoma District Court, and Chaparral's appeal in connection with the 2016 Class Proof of Claim in the Third Circuit.  Continued litigation would likely require

years before the Settlement Class Members would face any prospect of a meaningful recovery, whereas the Settlement provides certain and immediate value.  Litigation would also undoubtedly consume substantial resources—including attorneys' fees, expert fees, and other costs—on both sides.  Thus, the "probable costs, in both time and money, of continued litigation" weigh heavily in favor of approval.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001) (quoting *GMC Pick-Up Truck*, 55 F.3d at 812).

73.    *Second*, the Settlement is supported by the Class Representative and Class Counsel, who negotiated at arm's length with Defendant for over four years, and all Settlement Class Members will be afforded the opportunity to opt-out of the Settlement[13] and object to any of its terms at the Settlement Fairness Hearing.  If objections are raised, the Bankruptcy Court and the Parties may address them as appropriate.

74.    *Third*, the litigation is sufficiently advanced such that "counsel had an adequate appreciation of the merits of the case before negotiating."  *Cendant*, 246 F.3d at 235 (quoting *GMC Pick-Up Truck*, 55 F.3d at 813).  The parties have already litigated a class certification motion and completed discovery in connection with that motion.

75.    *Fourth* and *fifth*, the plaintiffs face meaningful risks in establishing liability and damages.  Defendant has denied (and continues to deny) liability, and there is a real possibility that the Settlement Class Members would receive nothing if they litigated the Royalty Class Action Lawsuit to judgment.  Potential barriers to establishing liability and/or damages include, among other things, the express terms of the leases; custom and usage in the industry regarding the interpretation of lease provisions, including how that custom changed over time;

---

[13]    To avoid the unnecessary cost and administrative burden of multiple mailings to the class action plaintiffs, the Debtors will also provide the plaintiffs with the opportunity to opt-out of the voluntary releases contained in Article VIII of the Plan in connection with the settlement of the claims related to the Class Action Lawsuit.

differences in the quality of gas from one well to another; the place at which gas from specific wells first becomes a marketable product; changes in the marketing arrangements for gas for particular wells over time; and the difficulty in distinguishing between costs necessary to transform gas into a marketable product and costs that enhance the value of gas that is already marketable. Thus, the Settlement Class Members would have to confront significant obstacles before they could obtain any meaningful recovery if the litigation were to proceed to trial, as set forth in more detail under the eighth factor below.

76.    *Sixth*, there is a possibility that the class could not be maintained through trial, including because of potential manageability concerns. But even if that were not the case, this factor should be afforded minimal weight, especially given the risks that the class would face in obtaining any recovery even if the class could be maintained.

77.    *Seventh*, there is no evidence that Defendant has any ability to withstand a judgment in an amount greater than the value provided to the Settlement Class Members under the Settlement. To the contrary, the Debtors have faced a historic decline in oil and natural gas prices in recent months, which has been exacerbated by the COVID-19 pandemic and other macroeconomic conditions. Though the Debtors presently lack the ability to "withstand a judgment for an amount significantly greater than the [s]ettlement[,]" *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) (quoting *Cendant*, 264 F.3d at 240), confirmation of the 2020 Plan (in conjunction with approval of the Settlement Agreement, which is closely tied to the 2020 Plan) will permit the Debtors to emerge from bankruptcy as a stronger and more viable enterprise.

78.    *Eighth* and *ninth*, the settlement is reasonable "in light of the best possible recovery" and "in light of the risks the parties would face if the case went to trial." *Id.* Even if

plaintiffs could establish liability in the Royalty Class Action Lawsuit (which Defendant has adamantly denied and continues to deny) or defeat the Debtors' Third Circuit Appeal, there are significant risks that the Settlement Class Members' recovery would be minimal at best.

79.     With respect to the Third Circuit Appeal, the best possible outcome for the 2016 Class Claimants is that the 2016 Class Proof of Claim is allowed in amount of $90 million (as opposed to $45 million under the Settlement Agreement).  Since that claim would be equitized pursuant to the Prior Bankruptcy Plan, the equity issued on account of that claim would entitle the class to $112,784 of value under the 2020 Plan—added value of only $55,353 compared to the value that the class will be entitled to receive if the 2016 Class Proof of Claim if allowed in an amount of $45 million.  Moreover, since the Settlement Class Members' claims arising on or prior to the date on which the Prior Bankruptcy Cases were commenced were discharged and barred as a result of the Bankruptcy Court's confirmation of the Prior Bankruptcy Plan, Settlement Class Members would have no recourse outside of the Settlement to obtain any recovery on account of those claims above and beyond what may be provided for on account of the 2016 Class Proof of Claim.

80.     In addition, the relevant *Prudential* factors counsel in favor of approval. The underlying dispute is nearly nine years old, and the Parties' understandings with respect to the merits of the claims is well-developed; all Settlement Class Members have the opportunity to opt-out of the settlement if they choose; the provision for attorney's fees is reasonable in light of the complexity and duration of the litigation, among other things; and the procedure for processing individuals claims under the Settlement is reasonable.

81.     At bottom, the Settlement provides the Settlement Class Members with certain and immediate value.  Considered in light of the cost and risk of protracted litigation, the

Settlement is "fair, reasonable, and adequate" as to the Settlement Class, *Halley*, 861 F.3d at 488, and it should therefore be approved pursuant to Civil Rule 23(e).

### NOTICE

82.     The Debtors will provide notice of this motion to: (a) the U.S. Trustee for the District of Delaware; (b) the holders of the 20 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Ad Hoc Group of Senior Noteholders represented by Stroock & Stroock & Lavan LLP; (d) the RBL Lender Group represented by Vinson & Elkins LLP; (e) the United States Attorney's Office for the District of Delaware; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (i) the state attorneys general for states in which the Debtors conduct business; and (j) any party that requests service pursuant to Bankruptcy Rule 2002.

WHEREFORE, the Class Representative and the Debtors respectfully request that the Bankruptcy Court enter the Preliminary Approval Order and the Judgment, granting the relief requested herein and such other relief as the Bankruptcy Court deems appropriate under the circumstances.

Dated: August 16, 2020
        Wilmington, Delaware

/s/  Seth A. Niederman
Seth A. Niederman (No. 4588)
FOX ROTHSCHILD LLP
919 N. Market Street, Suite 300
Wilmington, DE 19801-3046
Telephone: 302-654-7444
Fax: 302-656-8920
Email: sniederman@foxrothschild.com

- and -

Conner L. Helms (*pro hac vice* pending)
HELMS LAW FIRM
1 NE 2nd Street, Suite 202
Oklahoma City, OK 73104
Telephone: 405-379-0700
E-mail: conner@helmslegal.com

*Proposed Settlement Class Counsel*

/s/ Amanda R. Steele
John H. Knight (No. 3848)
Amanda R. Steele (No. 5530)
Brendan J. Schlauch (No. 6115)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King St.
Wilmington, Delaware 19801
Telephone: 302-651-7700
Fax: 302-651-7701
E-mail: knight@rlf.com
      steele@rlf.com
      schlauch@rlf.com
*Proposed Counsel for Debtors and Debtors in Possession and Counsel to the Reorganized Debtor*

- and -

Damian S. Schaible (*pro hac vice* pending)
James I. McClammy (*pro hac vice* pending)
Angela M. Libby (*pro hac vice* pending)
Jacob S. Weiner (*pro hac vice* pending)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone:  212-450-4000
Fax:  212-701-5800
Email: damian.schaible@davispolk.com
      james.mcclammy@davispolk.com
      angela.libby@davispolk.com
      jacob.weiner@davispolk.com
*Proposed Counsel for Debtors and Debtors in Possession*